**BAKER & HOSTETLER LLP**
David H. Stern (SBN 196408)
Alex E. Spjute (SBN 229796)
Kamran B. Ahmadian (SBN 314566)
1900 Avenue of the Stars | Suite 2700
Los Angeles, CA 90067-4508
Telephone: 310.820.8800
Facsimile: 310.820.8859
*dstern@bakerlaw.com*
*aspjute@bakerlaw.com*
*kahmadian@bakerlaw.com*

*Attorneys for Defendant*
THE CAPITAL GROUP COMPANIES, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

IWAN NYOTOWIDJOJO, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

THE CAPITAL GROUP COMPANIES, INC.,

Defendant.

Case No.: 8:25-cv-01816-JWH-JDE

*[Assigned to Hon. John W. Holcomb]*

**DEFENDANT THE CAPITAL GROUP COMPANIES, INC.'S:**

**(1) NOTICE OF MOTION AND MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S CLASS ACTION COMPLAINT; AND**

**(2) MEMORANDUM OF POINTS AND AUTHORITIES**

*[Filed concurrently with Declaration of Kamran B. Ahmadian and [Proposed] Order]*

**Date:** December 12, 2025
**Time:** 9:00 a.m.
**Dept:** Courtroom 9D

Case Filed: August 15, 2025

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HON. JOHN W. HOLCOMB AND TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 12, 2025, at 9:00 a.m., or as soon thereafter as the matter may be heard, Defendant The Capital Group Companies, Inc. ("Capital Group" or "Defendant") will and hereby does move for an order dismissing and/or striking Plaintiff Iwan Nyotowidjojo's ("Plaintiff") Class Action Complaint ("Motion"). This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) on the grounds that Plaintiff lacks Article III standing and and 12(b)(6) because the Complaint otherwise fails to state a claim against Capital Group upon which relief can be granted. Capital Group further seeks the striking of certain allegations in the Complaint pursuant to Federal Rule of Civil Procedure 12(f), including Plaintiff's claim for punitive damages and his class allegations, as impermissibly overbroad and imprecise.

Capital Group bases its Motion on this Notice, the accompanying Memorandum of Points and Authorities and declarations, the pleadings, papers and records on file in this action, and such oral argument as may be presented at the time of the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 10, 2025. (*See* Declaration of Kamran B. Ahmadian, Esq. ("Ahmadian Decl.") ¶¶ 2-3.) Having exhausted all attempts at resolution, Capital Group has proceeded with the filing of this Motion.

Dated: October 17, 2025 **BAKER & HOSTETLER LLP**

By: */s/ Kamran B. Ahmadian*
David H. Stern
Alex E. Spjute
Kamran B. Ahmadian

*Attorneys for Defendant*
THE CAPITAL GROUP COMPANIES, INC.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 9
II. BACKGROUND .......... 11
III. LEGAL STANDARD .......... 12
IV. ARGUMENT .......... 13
A. Plaintiff Lacks Concrete Injury to Establish Article III Standing. .......... 13
B. Plaintiff's Federal Wiretap Act Claim Fails. .......... 16
1. Plaintiff's Wiretap Act Claim Is Barred By Consent And Cannot Be Saved By The Crime-Tort Exception. .......... 17
2. Capital Group Did Not Intercept The "Contents" Of Plaintiff's Communications .......... 19
C. Plaintiff's CIPA Claims Fail For Lack of Scienter .......... 21
D. Plaintiff's CIPA Section 631(a) Claim Should be Dismissed .......... 21
1. Plaintiff Cannot Establish a Predicate CIPA Violation .......... 22
2. Plaintiff's "Aiding And Abetting" Claim Otherwise Fails .......... 24
E. Plaintiff's CIPA Section 632 Claim Fails .......... 25
F. Plaintiff Has Not Alleged an Invasion of Privacy Claim .......... 26
G. Plaintiff's Class Allegations Should Be Stricken .......... 28
H. Plaintiff's Claim for Punitive Damages Must Be Dismissed .......... 29
V. CONCLUSION .......... 31

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274 (C.D. Cal. 2024) .......... 28

*Allen v. Cnty. of Sonoma*, 2017 WL 3593340 (N.D. Cal. Aug. 18, 2017) .......... 28

*Am. Bankers Mgmt. Co., Inc. v. Heryford*, 885 F.3d 629 (9th Cir. 2018) .......... 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 13, 30

*B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 12, 30

*Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699 (S.D. Cal. 2016) .......... 29

*Bouncing Angels, Inc. v. Burlington Ins. Co.*, 2017 WL 1294004 (C.D. Cal. Mar. 20, 2017) .......... 30

*Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 14

*Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) .......... 26

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010) .......... 12

*Clausing v. S.F. Unified Sch. Dist.*, 221 Cal. App. 3d 1224 (Cal. Ct. App. 1990) .......... 28

*Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 24


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Diaz v. Bank of Am. Home Loan Servicing, L.P.*,
2011 WL 13046844 (C.D. Cal. July 8, 2011) .................................................... 31

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .................................................... 21

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) .................................................... 17

*Duran v. Maxim Healthcare Servs. Inc.*,
2018 WL 5915644 (C.D. Cal. Mar. 9, 2018) .................................................... 28

*Esparza v. Gen Digital Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) .................................................... 24

*Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922, 935 (N.D. Cal. 2015) .................................................... 20

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017) .................................................... 16

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .................................................... 24, 26

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................... 26

*In re Google Generative AI Copyright Litig.*,
2025 WL 1159998 (N.D. Cal. Apr. 21, 2025) .................................................... 29

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .................................................... 25

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) .................................................... 22

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................................................... 27

*Hartley v. Urb. Outfitters, Inc.*,
740 F. Supp. 3d 410 (E.D. Pa. 2024) .................................................... 16

*Heiting v. athenahealth, Inc.*,
2024 WL 3761294 (C.D. Cal. July 29, 2024) .................................................... 25

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ........ 21

*Herzer v. Redstone*,
2018 WL 5094933 (C.D. Cal. July 10, 2018) ........ 20

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024) ........ 14, 16

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 27

*Jones v. Tonal Sys., Inc.*,
2024 WL 4357558 (S.D. Cal. Sept. 30, 2024) ........ 22

*Kamm v. Cal. City Dev. Co.*,
509 F.2d 205 (9th Cir. 1975) ........ 28

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 18

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ........ 16

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012) ........ 20

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ........ 22, 23

*L.B. et al. v. LinkedIn Corporation et al.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ........ 24

*Lau v. Gen Digit. Inc.*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ........ 22

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ........ 22

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) ........ 14

*Logue v. Curtis Mgmt. Co., Inc.*,
2019 WL 2249981 (S.D. Cal. 2019) ........ 30

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................................ 28

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................................................................ 12

*Martin v. Cty. of San Diego*,
2011 WL 1775691 (S.D. Cal. 2011) .............................................................. 30

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ........................................ 24, 30

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016)................................................ 22

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011)......................................................................... 16

*Mazur v. eBay Inc.*,
257 F.R.D. 563 (N.D. Cal. 2009) ................................................................... 29

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) ............................................................ 20

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ............................................................ 16

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)...................................................... 18

*O'Flynn v. PHH Mortg. Corp.*,
2024 WL 4553116 (S.D. Ind. Oct. 23, 2024).................................................. 29

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) .......................................................... 18

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022)........................................................................... 17

*Popa v. Microsoft Corp.*,
2025 WL 2448824 (9th Cir. Aug. 26, 2025)............................................. 13, 14

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)............................................................. 23

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 26

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 19

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. 2022) .......... 23

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) .......... 18

*Rosenow v. Facebook, Inc.*,
2020 WL 1984062 (S.D. Cal. 2020) .......... 23

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 25

*Torres v. Wells Fargo Bank*,
2018 WL 6137126 (C.D. Cal. Aug. 28, 2018) .......... 28

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 13

*Turner v. Nuance Commc'ns, Inc.*,
735 F.Supp.3d 1169 (N.D. Cal. May 28, 2024) .......... 25

*United States v. Bowen*,
127 F.3d 9 (1st Cir. 1997) .......... 19

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 23

*Wazana Bros. Int'l, Inc. v. Int'l Laser Grp., Inc.*,
2013 WL 12124386 (C.D. Cal. Mar. 25, 2013) .......... 13

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010) .......... 30

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 22

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
62 F.4th 517 (9th Cir. 2023) .......... 14

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Yagman v. Allianz Ins.*,
2015 WL 5553460 (C.D. Cal. May 11, 2015) ........ 28

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........ 26

*Zarif v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ........ 18

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 19, 20

**Statutes**

15 U.S.C. § 6802(b) ........ 17, 18

18 U.S.C. § 2510(8) ........ 19

18 U.S.C. § 2511 *et seq.* ........ *passim*

Cal. Civ. Code § 3294(a) ........ 30

Cal. Fin. Code § 4053(b)(1) ........ 18

Cal. Penal Code § 20 ........ 21

Cal. Penal Code § 631 *et seq.* ........ *passim*

**Rules**

L.R. 79-5.2.1 ........ 6

**Other Authorities**

California Constitution ........ *passim*

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

## I. INTRODUCTION

Plaintiff Iwan Nyotowidjojo ("Plaintiff") brings this putative class action against Defendant The Capital Group Companies, Inc. ("Defendant" or "Capital Group") on the flawed premise that Capital Group's use of Google Analytics—a widely adopted and standard website technology—constitutes an illegal wiretap. Plaintiff alleges that when he visited Capital Group's website, www.capitalgroup.com (the "Website"), to manage his employer-sponsored retirement account, Capital Group used the Google Analytics cookie ("GA Cookie") to transmit his "nonpublic personal information" to Google without his consent. While Plaintiff's novel application of decades-old wiretapping statutes to modern internet technology is plainly absurd on its own, the Complaint itself suffers from even more fundamental and concerning defects. Plaintiff's entire claim is based on information allegedly collected during a single visit to the Website that took place over a year before filing suit—around the time he closed and transferred his account to another investment firm. Yet, Plaintiff provides virtually no factual detail about that interaction. More critically, Plaintiff fails to allege any actual harm *he suffered* resulting from the purported misconduct—no identity theft, no fraud, no financial loss, and no concrete damages of any kind. Given these deficiencies, the Complaint lacks merit and should be dismissed as a matter of law for the following reasons:

*First*, Plaintiff has not alleged a concrete injury sufficient to establish Article III standing. The Complaint does not plausibly demonstrate that any actionable disclosure of personal information occurred, nor does it show that any alleged injury is traceable to Capital Group's conduct. Plaintiff's deliberate omission of factual details—purportedly for privacy reasons—renders his claims speculative at best. Without specific allegations regarding his interaction with the Website, the Complaint fails to meet basic pleading standards. And because a concrete injury is a necessary element of each cause of action asserted, the absence of any such injury is fatal to Plaintiff's claims.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Second*, Plaintiff's Wiretap Act claim fails because Capital Group was a party to the alleged communications and thus exempt under the statute's one-party consent rule. Nor does the Complaint allege facts that would support application of the crime-tort exception, which demands a separate unlawful purpose beyond the alleged interception.

*Third*, Plaintiff's CIPA claim under Section 631(a) fails because it is based on an aiding-and-abetting theory requiring a predicate violation by a third party—here, Google—which Plaintiff does not plausibly allege. The Complaint lacks specific facts showing that Google intercepted the "contents" of any communication while it was "in transit," as required under the statute. Plaintiff's vague assertions about Google's use of data for marketing purposes are insufficient to overcome the well-established exemption for vendors acting as tools or extensions of the company.

*Fourth,* Plaintiff's CIPA claim under Section 632 fails because he does not plausibly allege he had an objectively reasonable expectation of privacy in his communications.

*And fifth,* Plaintiff's constitutional invasion of privacy claims fail because he does not plausibly allege a reasonable expectation of privacy or a highly offensive intrusion. Further, Plaintiff's request for monetary damages under Article I, Section 1 of the California Constitution, is legally barred.

For these reasons, and as further explained below, this Court should grant Capital Group's Motion and dismiss Plaintiff's Complaint with prejudice. If the Complaint is not dismissed in its entirety, Plaintiff's class allegations should be stricken pursuant to Fed. R. Civ. P. 12(f) due to the Complaint's impermissibly broad, vague, and inapplicable class definitions. Also, given the lack of factual allegations to justify such an award, Plaintiff's request for punitive damages should be dismissed.

\\

\\

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## II. BACKGROUND

Capital Group is a privately held holding company for a variety of investment management and financial services companies that provide investment products, risk management, and advisory services to financial professionals and individual investors, including employer-sponsored retirement plans. Capital Group maintains a website, www.capitalgroup.com (the "Website"), where visitors can create and access an online account to manage their retirement and investment accounts. (*See* Compl. ¶¶ 31-32.) Plaintiff alleges that Capital Group embeds the Google Analytics cookie ("GA Cookie") on its Website "to assist with its marketing efforts." (*Id.* ¶ 31.) Plaintiff further alleges that when a visitor creates an account or manages their retirement and investment accounts on the Website, Google—through the GA Cookie—collects "nonpublic personal information" such as information "related to their employer-sponsored plan" including their investment decisions and the total value of their investment account. (*Id.* ¶¶ 31-35.)

Plaintiff alleges that "on or around September 2024" he visited the Website and created a "Capital Group account" for his employer sponsored retirement plan.[1] (Compl. ¶ 5.) Plaintiff does not allege any facts describing this *lone* visit—he does not allege what pages he viewed, what specific information he entered into the Website, or what (if any) disclosures he may have seen. These omissions were purposeful. Plaintiff admits he excluded factual allegations about his Website interactions—despite them being central to his claims—in order to "protect his privacy." (*Id.* ¶ 5 n.1.) The Complaint only identifies *two* vague actions Plaintiff allegedly took during his visit to the Website: he "set his contribution limits" and, in general terms, "selected the assets to fund his retirement account." (*Id.* ¶ 5.) The Complaint does not include any facts describing how Plaintiff completed these

[1] According to Capital Group's internal records, however, Plaintiff's Capital Group employer-sponsored retirement account was closed (and the funds transferred to another institution) ***in July 2024***—over a year before he filed this Complaint.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

tasks—e.g., what pages Plaintiff viewed, what (if anything) Plaintiff had to do (either click or input) to make these selections, etc. Finally, without alleging any facts to explain how such a disclosure could have occurred, Plaintiff alleges that Capital Group "disclosed the total value" of his retirement account to Google. (*Id.* ¶ 7.)

Based on these clearly insufficient allegations, Plaintiff filed this putative class action lawsuit against Capital Group asserting four causes of action: (1) Violation of Electronic Communications Privacy Act ("Wiretap Act"), 18 U.S.C. § 2511; (2) Violation of California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a); (3) Violation of CIPA, Cal. Penal Code § 632; and (4) Invasion of Privacy under California's Constitution. (Compl. ¶¶ 72-136.) Plaintiff seeks to represent two patently overbroad classes—a Nationwide Class and California Subclass—of individuals who "managed their retirement or investment accounts through the Website." (*Id.* ¶ 65.)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## III. <u>LEGAL STANDARD</u>

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of an action for lack of subject-matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The plaintiff bears the burden of establishing standing under Article III of the Constitution, which requires an "injury in fact" that is both "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (int. cit. omitted). The injury must be "fairly traceable to the challenged action of the defendant," and it must be likely "that the injury will be redressed by a favorable decision." *Id.* at 560-61.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. *See* Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief

above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and ***a formulaic recitation of the elements of a cause of action will not do.***" *Id.* (emph. added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To that point, pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" that would be otherwise applicable on a motion to dismiss. *Id.* at 679. Thus, the Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wazana Bros. Int'l, Inc. v. Int'l Laser Grp., Inc.*, 2013 WL 12124386, at *2 (C.D. Cal. Mar. 25, 2013).

## IV. ARGUMENT

### A. Plaintiff Lacks Concrete Injury to Establish Article III Standing.

To establish Article III standing, Plaintiff must show he "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 426 (2021) ("Article III standing requires a concrete injury even in the context of a statutory violation.") (quoting *Spokeo*, 578 U.S. at 341)); *see also Popa v. Microsoft Corp.*, 2025 WL 2448824, at *7 (9th Cir. Aug. 26, 2025) (confirming *Spokeo* and *Transunion* require "a plaintiff to demonstrate more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury"). The Supreme Court "has rejected the proposition that a plaintiff 'automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 594 U.S. at 426. In other words, "***an injury in law is not an injury in fact***." *Id.* at 427 (emph. added). A harm is "concrete" only if the injury bears a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit. *Id.* at 425. Naked assertions of harm that is "traditionally recognized



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

as providing a basis for American courts," is not enough. *Id.* at 417.

Accordingly, to establish Article III standing in privacy cases, Plaintiff must not only "identify [the] specific personal information" that he alleges was allegedly intercepted by or improperly disclosed to a third party, but how the alleged interception "implicates a protectable privacy interest[.]" *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023); *Popa, supra*, 2025 WL 2448824, at *7; *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) ("Plaintiff has failed to adequately allege that she suffered any concrete harm that bears a close relationship to the right to control personal information, meaning Plaintiff has failed to establish an injury in fact."); *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024), adopted, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) (motion to dismiss granted for lack of injury-in-fact from defendant's use of "TikTok Software" on its website).

Plaintiff's sparse factual allegations are insufficient to establish he suffered ***any harm***—let alone a concrete injury to his substantive privacy rights—during his single visit to the Website. As an initial matter, Plaintiff's intentional withholding of relevant facts regarding his "use" of the Website for "privacy" reasons is inappropriate and cannot be used to defeat a pleadings challenge. (Compl. ¶ 5 n.1.) If Plaintiff genuinely harbors privacy concerns regarding specific allegations, the appropriate course is not to exclude essential facts, but to seek to file the Complaint—or the entire case—under seal pursuant to Local Rule 79-5.2.1. In any event, Plaintiff could have easily described his interactions with the Website in sufficient detail—such as the types of pages visited, the nature of any inputs or selections made, and the general categories of information provided to the Website (if any)—without disclosing sensitive personal data. His failure to do so not only undermines the plausibility of his claims but also deprives the Court (and Capital Group) with the factual context necessary to assess whether any alleged disclosure was "highly offensive." *See Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(9th Cir. 2023) ("[P]laintiffs must . . . show that they ***personally have been injured***.") (emph. added).

The allegations related to Plaintiff's visit that are actually included in the Complaint fail to establish a concrete injury. (*See* Compl. ¶ 5 ("Plaintiff set his contribution limits and selected the assets to fund his retirement account.").) These assertions are both vague and conclusory, lacking any factual context regarding how this information was provided—such as what pages Plaintiff accessed, what inputs were required, or how the Website processed his selections. The Complaint is devoid of any explanation as to how this information—to the extent it was even collected by Google—could be attributable to Plaintiff. Moreover, Plaintiff asserts—without factual support—that Capital Group intercepted "the total value" of his retirement account. (*See* Compl. ¶¶ 7, 86.) Yet the Complaint fails to describe *how* this alleged interception occurred. Notably, Plaintiff's account balance is information that was already present on the Website, not something he affirmatively provided during his visit. Without any allegations explaining how this preexisting data was transmitted, it remains unclear how—if at all—such information could have been intercepted.

The remaining allegations in the Complaint are entirely unrelated to Plaintiff and his lone interaction with the Website. Although the Complaint includes undated screenshots purportedly showing Website code taken at an *unknown* date and time, by an *unidentified* visitor, they otherwise fail to identify the specific webpage from which the code was allegedly taken or adequately explain what the code signifies. (*See* Compl. ¶¶ 55-57.) One screenshot is heavily redacted, with no explanation as to what was removed or why. (*Id.* ¶ 56.) More importantly, Plaintiff does not allege that the code corresponds or even resembles *his* interactions with the Website.

Instead, Plaintiff relies heavily upon broad generic allegations about Google and the GA Cookie, including how the GA cookie allegedly functions and what data it *might be capable* of collecting. (*See* Compl. ¶¶ 36-50, 53, 55-60.) General allegations about what the GA Cookie ***may be capable*** of collecting do not

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

sufficiently establish what the GA Cookie ***actually collected*** from Plaintiff (if anything) during his visit. Courts routinely reject such vague and conclusory allegations, holding that far more detail than Plaintiff provided in the Complaint is required to determine whether a protectable privacy interest has been alleged. *See e.g., Hartley v. Urb. Outfitters, Inc.*, 740 F. Supp. 3d 410, 422 (E.D. Pa. 2024) ("[A]llegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected."); *Vivint, Inc.*, 2024 WL 5179916, at *4 (finding no standing where plaintiff did not specify the actual information collected and only alleged what information software "could" capture); *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) ("Plaintiffs also allege that Defendant disclosed their 'browser and device data' and 'other identifying information' . . . but fail to provide any more detail. Those allegations are ***too vague to assert a protectable privacy interest***.") (emph. added); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) ("[C]onclusory allegation that she disclosed 'personal information' does not allow the Court to determine whether [she] has a protectable privacy interest in that information.").

Because Plaintiff has not alleged concrete harm to his privacy, he has not satisfied the injury in fact requirement for Article III standing. The Court must dismiss Plaintiff's claims for lack of subject matter jurisdiction. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of Article III standing requires dismissal for lack of subject matter jurisdiction").

### B. Plaintiff's Federal Wiretap Act Claim Fails.

To state a claim under the Wiretap Act, Plaintiff must allege facts showing that Capital Group "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017) (int. quot. omitted). Plaintiff's Wiretap Act claim must be dismissed for several reasons.





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### 1. *Plaintiff's Wiretap Act Claim Is Barred By Consent And Cannot Be Saved By The Crime-Tort Exception.*

The Wiretap Act is a one-party consent statute. This means that it is not unlawful for a person to intercept electronic communications if that person is a party to the communication. 18 U.S.C. § 2511(2)(d). Here, Plaintiff affirmatively alleges that all communications were transmitted from Plaintiff to Capital Group through the Website. (*See* Compl. ¶¶ 77–85.) As such, Capital Group was a party to the communications and cannot be held liable for intercepting them. *See Am. Bankers Mgmt. Co., Inc. v. Heryford*, 885 F.3d 629, 636 (9th Cir. 2018) (Wiretap Act "allows a private person to record conversations surreptitiously *if one party* to the conversation consents[.]") (emph. added); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 514 (S.D.N.Y. 2001) (finding website owners are parties to the digital communications sent by users of their website).

Plaintiff attempts to invoke the "crime-tort exception," which applies only where the interception was made for the purpose of committing a criminal or tortious act. (Compl. ¶¶ 89–90.) But the Complaint fails to allege facts sufficient to support this exception. As the Ninth Circuit explained, in order for the crime-tort exception to apply a defendant must have acted "for the purpose of facilitating ***some further impropriety***, such as blackmail," that was unlawful "separate and independent from the act of recording." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135-36 (9th Cir. 2022) (emph. added). Here, Plaintiff does not allege any such separate unlawful purpose. Instead, Plaintiff broadly asserts—without factual support—that the crime-tort exception applies because ***the same interception*** also violated various laws, including the Gramm-Leach-Bliley Act ("GLBA") and California Financial Information Privacy Act ("CalFIPA"). (*See* Compl. ¶¶ 89, 130.)

Plaintiff's conclusory allegations that Capital Group violated the GLBA and CalFIPA are unavailing. (*See* Compl. ¶ 90.) Both statutes expressly permit the disclosure of nonpublic personal information by financial institutions under specific



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

circumstances—most notably, when prior notice and an opportunity to opt out have been provided. *See* 15 U.S.C. § 6802(b); Cal. Fin. Code § 4053(b)(1). The GLBA further clarifies that it does not prohibit financial institutions from sharing nonpublic personal information with nonaffiliated third parties to perform services or functions on their behalf, including marketing their own products or services. 15 U.S.C. § 6802(b)(2). Plaintiff does not allege any facts regarding the notice or opt-out opportunities provided by Capital Group, nor does he plead facts that would plausibly establish a violation of either statute. (*See generally*, Compl.) Accordingly, Plaintiff cannot rely on these alleged statutory violations to invoke the crime-tort exception.

Nevertheless, Courts consistently refuse to apply the crime-tort exception where the complaint fails to allege an intent to commit tortious conduct ***that is separate and beyond the alleged wiretapping itself***. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095-96 (W.D. Wash. 2024) (concluding crime-tort exception did not apply a because plaintiff failed to "plead a tortious or criminal use" of communications, "separate from the recording, interception, or transmission"); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1119 (S.D. Cal. 2023) ("[P]laintiffs point to no legal authority providing that the [crime-tort] exception . . . is triggered when, as here, the tortious conduct is the alleged wiretapping itself.") (quoting *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015)).

Moreover, Plaintiff concedes that Capital Group's use of Google technology was motivated by marketing and advertising purposes. (*See* Compl. ¶ 130.) Where a defendant's primary motivation is to make money, ***not*** to tortiously injure plaintiffs, the crime-tort exception does not apply. *See Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *9 (S.D. Cal. Feb. 13, 2025) (citing cases); *see also, Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (finding allegations that Defendant's "motivations were to improve their marketing and advertising efforts" precluded the crime-tort exception); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (concluding crime-tort exception did not apply because



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

although plaintiffs alleged defendant "engaged in the allegedly illegal interception of their . . . information" for commercial advantage); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (same); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) (finding exception did not apply where defendant's alleged interceptions were financially motivated).[2]

Because Plaintiff fails to allege that Capital Group intercepted communications for the purpose of committing a separate tortious or criminal act—or that the intercepted communications were used in a tortious or criminal manner—the crime-tort exception does not apply. Accordingly, Plaintiff's Wiretap Act claim must be dismissed.

### ***2. Capital Group Did Not Intercept The "Contents" Of Plaintiff's Communications.***

Even assuming, arguendo, that Capital Group could be held liable under the Wiretap Act (it cannot), Plaintiff's claim still fails because he has not plausibly alleged that the "contents" of *his communications* were intercepted or disclosed to Google. The Wiretap Act defines "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). This is distinct from non-content or "record" information—such as a user's name, IP address, or browser metadata—which merely reflects characteristics of the communication rather than its substance. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014) ("[T]he term 'contents' refers to the intended message conveyed by the communication.").

[2] Furthermore, because the Wiretap Act imposes criminal penalties, it must be construed narrowly. Under the rule of lenity, any ambiguity in the statute must be resolved in Capital Group's favor. *See United States v. Bowen*, 127 F.3d 9, 13-14 (1st Cir. 1997) ("[T]he rule of lenity means that 'the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.'") (quoting *Ladner v. United States*, 358 U.S. 169, 178 (1958)).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The Complaint fails to allege any facts demonstrating that the substance or content of Plaintiff's communications—rather than mere metadata or transactional information—was intercepted or disclosed. As noted, Plaintiff vaguely asserts he "set his contribution limits" and "selected the assets to fund his retirement account" during his visit to the Website. (*See* Compl. ¶ 5.) Yet the Complaint offers no detail regarding how these actions were performed—whether Plaintiff typed information into the Website, clicked buttons, or made selections from dropdown menus remains entirely unclear. The screenshots included in the Complaint, which are not tied to Plaintiff's specific visit, purport to show data that could be transmitted to Google via the GA Cookie. (*See id*. ¶¶ 55–59.) But the depicted information—such as URLs, HTTP requests, button clicks, and page navigation—falls squarely within the category of record information, not the "contents" of a communication. *See In re Zynga*, 750 F.3d at 1107 (holding that URLs function like addresses and do not constitute "contents"); *Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015) (finding that URL does not qualify as "contents" because it is nothing more than "record information regarding the characteristics of the message that is generated in the course of the communication") (cit. omitted); *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (holding that "button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, [and] page navigation" are record information, not contents).

For all of these reasons, Plaintiff's Wiretap Act claim fails as a matter of law and should be dismissed with prejudice.[3]

[3] To the extent Plaintiff's Wiretap Act claim relies on the theory that Capital Group "procured" an alleged interception by Google, it fails as a matter of law. The Wiretap Act does not recognize secondary liability for procurement, and courts have consistently held that civil liability under the statute applies only to the party that actually intercepts, discloses, or uses the communication. S*ee, e.g.*, *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246–47 (10th Cir. 2012); *Herzer v. Redstone*, 2018 WL 5094933, at *7 (C.D. Cal. July 10, 2018) (agreeing "that secondary liability is not recognized under the [Wiretap Act]" and finding plaintiff had failed to state a claim).

**C. Plaintiff's CIPA Claims Fail For Lack of Scienter.**

Because CIPA is a criminal statute, to establish liability, Plaintiff must establish the scienter element. *See* Cal. Penal Code § 20 ("In every crime or public offense there must exist a union, or joint operation of act and intent"). Similar to the crime-tort exception to the Wiretap Act, to be liable under either Section 631(a) or 632 of CIPA, Capital Group must have installed the GA Cookie ***with knowledge and intent that*** it read or eavesdrop on Website visitors.

Here, Plaintiff has not alleged (nor can he) that Capital Group had any such intent or knowledge. Plaintiff's inability to allege that Capital Group possessed the requisite scienter is dispositive of his claim. *See, e.g.*, *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (dismissing CIPA complaint where plaintiff did "not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet [a third party's] purported CIPA violation."). Without factual allegations demonstrating the necessary criminal intent, Plaintiff's purported criminal violation fails, and must be dismissed with prejudice. *See, e.g., Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024) ("CIPA liability only extends to willful or intentional conduct, so even if some private health information is inadvertently sent to Google—and subsequently gets integrated into the reports—the plaintiffs fail to plausibly allege Google is intentionally reading or learning the contents of the plaintiffs' private health communications.").

**D. Plaintiff's CIPA Section 631(a) Claim Should be Dismissed.**

California Penal Code Section 631(a) prohibits a defendant from engaging in one of three activities: (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," or (3) using or "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." Cal. Penal Code § 631(a). Section 631(a) also includes a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

any of the other three bases for liability." *Id.* Plaintiff appears to assert his CIPA wiretapping claim under the fourth aiding and abetting prong. (*See* Compl. ¶ 104.) To establish liability under this theory, Plaintiff must first plausibly allege that a third party (Google) committed an underlying violation of one of the first three clauses of § 631(a). *See Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (an aiding-and-abetting defendant's liability is "based entirely on whether [a third party] violated Section 631(a) in some way."). Here, Plaintiff fails to allege a predicate violation under Section 631(a).

### ***1. Plaintiff Cannot Establish a Predicate CIPA Violation.***

Plaintiff cannot assert a predicate violation of Clause One because it does not apply to internet connections—only telephones and telegraphs. *See Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (affirming summary judgment where no evidence the defendant "made an unauthorized connection through a telephone wire"); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1104 (C.D. Cal. 2023) ("Courts have consistently interpreted this clause as applying only to communications over telephones and not through the internet.") (citing cases). While Plaintiff cites cases in his Complaint purportedly applying Section 631(a) to "new technologies" (*see* Compl. ¶ 99), these cases only apply to the ***second clause*** of § 631(a), not the first. *See, e.g., Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016).

The second clause of Section 631(a) is violated only where a third party "***reads, or attempts to read, or to learn the contents*** or meaning of any message, report, or communication while the same ***is in transit***." *Jones v. Tonal Sys., Inc.*, 2024 WL 4357558, at *4 (S.D. Cal. Sept. 30, 2024) (emph. added); *see also Lau v. Gen Digit. Inc.*, 2024 WL 1880161, at *1 (N.D. Cal. Apr. 3, 2024) (wiretapping concerns "the unauthorized *interception* of communications, not any subsequent storage and/or use") (emph. in original). Put simply, the alleged third-party eavesdropper must: (1) read or learn the content of communications; (2) while it is *en route* to the intended



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

recipient. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Plaintiff fails to allege both of these essential elements.

For the same reasons Plaintiff fails to allege sufficient facts showing that the contents of his communications were intercepted or disclosed in violation of the Wiretap Act (*see* § IV.B.2), he likewise fails to satisfy the "contents" requirement under CIPA. *See R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (analysis for "contents" same under both CIPA and Wiretap Act).

Even if Plaintiff did allege content (which he does not), Plaintiff otherwise fails to plausibly allege that any communication was intercepted while "in transit." As the Ninth Circuit has made clear, interception under § 631(a) requires acquisition of the communication *during transmission*. *See Konop*, 302 F.3d at 878 ("This conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'"). The Complaint contains no factual allegations explaining how Google acquired, let alone read or attempted to read, any of Plaintiffs' "communications" *during transmission*. Instead, Plaintiff relies on conclusory assertions that an instantaneous interception occurred. (*See* Compl. ¶¶ 87-88, 105.) Courts consistently hold such boilerplate allegations insufficient. *See, e.g.*, *Rodriguez v. Google LLC*, 2022 WL 214552, at *1–2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit."); *Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (dismissing wiretap claim where allegations of interception "in transit" were conclusory); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing wiretap claim where "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'" was supported by "vague allegations about how Vizio's data collection occurs in real-time.").

In fact, Plaintiff's allegations make clear that Google ***does not*** read or attempt to read anything while the communication is in transit. (*See* Compl. ¶ 45 ("Once



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Google's software code collects the data, it packages the information and sends it to Google Analytics for processing."); ¶ 46 ("After the data has been processed and stored in the database, Google uses this data to generate reports to help analyze the data from the webpages.").) Instead, based on Plaintiff's own allegations, any data collected by the GA Cookie is immediately packaged and stored so it can be processed for reporting purposes at a ***later time***. These allegations are insufficient. *See L.B. et al. v. LinkedIn Corporation et al.*, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) ("To meet the 'in transit' requirement, Plaintiffs must allege that LinkedIn read their communications during their transmission, as opposed to once the communications were placed in electronic storage."). That is, Plaintiff must plead specific facts about "*when* the interception occurs." *Id.* (cit. omitted); *see also Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) (dismissing CIPA claims where "Plaintiff fail[ed] to allege specific facts about . . . when the interception took place, and how the interception took place").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

A violation under the third clause of § 631(a) is contingent on a finding of a predicate violation under one of the first two clauses. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024) (holding that because Plaintiffs "failed to allege . . . violation of the first or second clauses, [they have] also failed to plead a violation of the third clause."). Because Plaintiff fails to sufficiently allege an underlying violation of § 631(a) as to the alleged third-party eavesdropper (Google), Plaintiff's derivative aiding and abetting claim against Capital Group fails. Accordingly, Plaintiff's CIPA § 631(a) claim should be dismissed with prejudice.

***2. Plaintiff's "Aiding And Abetting" Claim Otherwise Fails.***

Just like the Wiretap Act, CIPA contains an "exemption from liability for a person who is a 'party' to the communication." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). This exemption has been routinely extended to software vendors. *See, e.g., Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*,

2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (holding third-party vendor is "an extension of the company"). As the Court explained in *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021), "a vendor provides a software service that captures its clients' data, hosts it on [the vendor's] servers, and allows the clients to analyze their data" is simply "an extension" of the "client" and therefore "not a third-party eavesdropper" subject to liability under the CIPA. In other words, a company's use of a website vendor does not constitute eavesdropping under Section 631 where the vendor is a tool, agent, or extension of the company. *Id.* at 832.

To overcome this exemption at the pleading stage, a plaintiff must allege specific, non-conclusory facts showing that the vendor acted independently and used the data for its own purposes. *See Heiting v. athenahealth, Inc.*, 2024 WL 3761294, at *4 (C.D. Cal. July 29, 2024) (finding that conclusory allegations that the third party could use communications to collect information about a specific user and create a transcript to enhance its own business were "too general and conclusory to support a reasonable inference that [the third party] had the capability to use the communications for any purpose beyond providing it to" the defendant). Here, Plaintiff's vague assertion that Google could use data for targeted marketing is insufficient to establish that Google was a third-party eavesdropper. Accordingly, Plaintiff's derivative CIPA claim fails and should be dismissed.

### E. <u>**Plaintiff's CIPA Section 632 Claim Fails.**</u>

To state a claim under § 632, Plaintiff must show there was (1) an electronic recording of (2) a confidential communication and (3) all parties did not consent. *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1177-78 (N.D. Cal. May 28, 2024). Plaintiff's claim under § 632 fails for several reasons.

*First*, as outlined above, Plaintiff has not adequately alleged sufficient facts to establish derivative liability against Capital Group. Indeed, Plaintiff has not pled any facts, let alone enough facts to give rise to a plausible inference, that Capital Group "had knowledge of [Google's] conduct ***violating the statute***, let alone had an intent





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

or purpose of aiding it substantially." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 944 (N.D. Cal. 2024) (emph. added) (dismissing § 632 claim).

*Second*, Plaintiff's § 632 claim fails because he has not plausibly alleged his communications on the Website were "confidential." A conversation is deemed to be "'confidential' under § 632 'if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded.'" *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) (quoting *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117 n.7 (2006)). And in California, courts have "developed a presumption that ***Internet communications do not*** reasonably give rise to that expectation." *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (emph. added); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632 . . . ."). Nothing about Plaintiff's limited and vague allegations warrants a deviation from this general rule. As such, Plaintiff's § 632 claim should be dismissed. *In re Google Assistant Priv. Litig.*, 457 F. Supp. at 828 (dismissing § 632 claim where plaintiff failed to adequately plead confidential communications).

**F. <u>Plaintiff Has Not Alleged an Invasion of Privacy Claim</u>**

To state a claim for constitutional invasion of privacy under California law, "Plaintiffs must show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is so serious . . . as to constitute an egregious breach of the social norms such that the breach is highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601. As courts have recognized, "[t]he California Constitution [and the common law] set[] a high bar for an invasion of privacy claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014). Plaintiff fails to meet either prong.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*First*, Plaintiff appears to rely on the GLBA and CalFIPA to assert a reasonable expectation of privacy in any "nonpublic personal information" allegedly provided to Capital Group via its Website. (*See* Compl. ¶¶ 20–30.) But as defined under those statutes, "nonpublic personal information" is limited to ***personally identifiable*** financial data. (*Id.* ¶¶ 21–22.) The Complaint fails to allege any facts showing Google collected financial information that could independently be linked to Plaintiff. Simply labeling data as "nonpublic personal information" does not make it so. As discussed above, the Complaint is intentionally vague about what *specific* information was allegedly collected. Without identifying the precise information provided and how it was provided, Plaintiff cannot plausibly claim a reasonable expectation of privacy in that information. Even assuming, for purposes of this Motion, that Google collected Plaintiff's "contribution limits" and the "assets" used to fund his retirement account during a single Website visit (Compl. ¶ 5), the Complaint does not allege that this data—standing alone—was or could be personally attributable to Plaintiff. Accordingly, Plaintiff has not adequately pled a reasonable expectation of privacy.

*Second*, even assuming Plaintiff could establish a reasonable expectation of privacy, the common law invasion of privacy claim still fails because the Complaint lacks allegations showing that any data collection was "highly offensive." Courts consistently hold that data collection and disclosure to third parties that constitutes "routine commercial behavior" does not rise to the level of a "highly offensive" intrusion. *E.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022), *aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024) (collection of sensitive personal data from applications on smartphones not highly offensive); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding no egregious breach of social norms "[e]ven assuming this information was transmitted ***without Plaintiffs' knowledge and consent***") (emph. added). Indeed, courts have found that unless the information is particularly intimate or sensitive, even the





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"routine collection of *personally identifiable information* as part of electronic communications is generally insufficient to state a claim for invasion of privacy." *Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274, 1283 (C.D. Cal. 2024) (int. cit. and quot. omitted) (emph. added). But even the disclosure of highly personal information—such as social security numbers—has been held not to constitute a sufficiently egregious breach of social norms. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Given the sparse factual allegations in the Complaint, Plaintiff cannot plausibly plead that any information collected during their visit to the Website was "highly offensive."

Moreover, Plaintiff's claim for monetary damages under Article I, Section 1 of the California Constitution fails as a matter of law. (*See* Compl. ¶ 133.) Courts have consistently held that this provision does not support a private right of action for damages—only injunctive relief is available. *See, e.g., Clausing v. S.F. Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1238 (1990); *Allen v. Cnty. of Sonoma*, 2017 WL 3593340, at *5 (N.D. Cal. Aug. 18, 2017) (granting motion to dismiss California constitutional privacy claim for lack of damages remedy). Accordingly, Plaintiff's constitutional privacy claim should be dismissed on this independent ground.

### G. <u>Plaintiff's Class Allegations Should Be Stricken.</u>

Pursuant to Rule 12(f), "[t]he court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see Yagman v. Allianz Ins.*, 2015 WL 5553460, at *4 (C.D. Cal. May 11, 2015). This Court has the inherent authority to dismiss or strike improper or legally insufficient class allegations. *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975). Where a complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery. *See Yagman*, 2015 WL 5553460, at *4 (dismissing class allegations where the face of the complaint shows conclusively that the proposed class cannot be certified); *Torres v. Wells Fargo Bank*, 2018 WL 6137126, at *2 (C.D. Cal. Aug. 28,

2018) ("Class allegations can be stricken at the pleading stage."); *see also Duran v. Maxim Healthcare Servs. Inc.*, 2018 WL 5915644, at *7 (C.D. Cal. Mar. 9, 2018) (dismissing "Plaintiffs' class allegations on the grounds that they are not plausibly alleged, as they are imprecise, overbroad, and unascertainable").

Here, Plaintiff's purported nationwide class definition and California subclass definition should be stricken (or dismissed) because they are impermissibly overbroad, imprecise, and inapplicable. *First*, the nationwide class should be dismissed because Plaintiff's only federal claim, the Wiretap Act claim, fails and should be dismissed with prejudice. *Second*, the class definitions are overbroad and imprecise in that they fail to define the class period, instead encompassing all natural persons who accessed accounts through the Website "during the class period." (Compl. ¶ 64.) As such, Plaintiff's putative class allegations, which are derived from the impermissibly vague, overbroad, and imprecise class definitions, should be stricken from the Complaint. *See, e.g., O'Flynn v. PHH Mortg. Corp.*, 2024 WL 4553116, at *12 (S.D. Ind. Oct. 23, 2024) (noting class definitions must "identify a particular group, harmed during a particular time frame, in a particular location, in a particular way.") (quoting *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 659 (7th Cir. 2015)); *accord Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) ("Because the class as currently defined would include these non-harmed [people], this portion of the class definition is both imprecise and overbroad."); *In re Google Generative AI Copyright Litig.*, 2025 WL 1159998, at *3 (N.D. Cal. Apr. 21, 2025) ("Because Plaintiffs' fail-safe class definition is defective as a matter of law, it is appropriate to strike it at the pleading stage.").

**H. <u>Plaintiff's Claim for Punitive Damages Must Be Dismissed.</u>**

To the extent Plaintiff's Complaint is not dismissed in its entirety, Plaintiff's request for punitive damages also must be dismissed and/or stricken from the Complaint. (*See* Compl., Prayer for Relief.) For starters, CIPA does not explicitly authorize punitive damages, and Capital Group is unaware of any cases

where punitive damages have been awarded under CIPA. *See Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *10 (S.D. Cal. 2016) (acknowledging lack of authority and dismissing punitive damages under CIPA); *Sephora USA, Inc.*, 2023 WL 2717636, at *17 n.13 ("[T]he Court's independent research, appears to support a finding that ***punitive damages are unavailable*** for violations of CIPA.") (emph. added). Thus, punitive damages are not available for Plaintiff's CIPA claims.

To the extent punitive damages are available for Plaintiff's other claims, Plaintiff alleges no plausible factual support to suggest he is entitled to punitive damages as required by California law. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010) (explaining that Rule 12(b)(6) is the appropriate mechanism for seeking dismissal of an improper prayer for relief). Where the basis of a request to strike punitive damages is the lack of factual allegations to support such a claim, the "proper medium for challenging the sufficiency of factual allegations in a complaint is through Rule 12(b)(6) not Rule 12(f)." *Martin v. Cty. of San Diego*, 2011 WL 1775691, at *5 (S.D. Cal. 2011).

Oppressive, fraudulent, or malicious conduct is a *prerequisite* for any punitive damages claim. *See* Cal. Civ. Code § 3294(a) (emphasis added). In the wake of *Twombly* and *Iqbal*, conclusory allegations of malice, fraud, or oppression are insufficient to state a prayer for punitive damages. *Bouncing Angels, Inc. v. Burlington Ins. Co.*, 2017 WL 1294004, at *4 (C.D. Cal. Mar. 20, 2017); *Logue v. Curtis Mgmt. Co., Inc.*, 2019 WL 2249981, at *3 (S.D. Cal. 2019) ("The bare conclusory assertion that Defendants acted 'intentionally and recklessly' is insufficient."). Here, Plaintiff fails to even offer conclusory allegations to support a claim for punitive damages. In fact, the words "malice", "fraud", or "oppression" are not used once in the Complaint. Because Plaintiff has not stated a plausible claim for punitive damages against Capital Group, his request must be dismissed from the Complaint. *See Bouncing Angels, Inc.*, 2017 WL 1294004 at *4; *Logue*, 2019 WL

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2249981 at *3; *Diaz v. Bank of Am. Home Loan Servicing, L.P.*, 2011 WL 13046844, at *5 (C.D. Cal. July 8, 2011) (rejecting Plaintiff's conclusory allegations that defendants were "reckless, willful and wanton," where Plaintiff failed to allege any facts in support).

## V. **CONCLUSION**

For all of the foregoing reasons, Capital Group respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated: October 17, 2025 **BAKER & HOSTETLER LLP**

By: */s/ Kamran B. Ahmadian*
David H. Stern
Alex E. Spjute
Kamran B. Ahmadian

*Attorneys for Defendant*
THE CAPITAL GROUP COMPANIES, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES