**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
Email: pfraietta@bursor.com
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IWAN NYOTOWIDJOJO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE CAPITAL GROUP COMPANIES, INC.,<br><br>Defendant. | Case No. 8:25-cv-01816-JWH-JDE<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE**<br><br>Date: December 19, 2025<br>Time: 9:00 a.m.<br>Ctrm: 9D<br>Judge: Hon. John W. Holcomb |

# TABLE OF CONTENTS

PAGE

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. PLAINTIFF HAS ESTABLISHED ARTICLE III STANDING ........ 2

A. Plaintiff Suffered A Concrete Injury When Defendant Unlawfully Disclosed His Private Financial Information........ 2

B. Plaintiff's Factual Allegations Of His Harms Are Sufficient Under Fed. R. Civ. P. 8 ........ 4

II. PLAINTIFF SUFFICIENTLY PLEADS HIS CLAIM UNDER THE FEDERAL WIRETAP ACT ........ 7

A. Defendant Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose........ 7

B. Defendant Intercepted The Contents Of Plaintiff's Communications ........ 10

III. PLAINTIFF STATES A CLAIM UNDER CIPA § 631 AND § 632........ 12

A. Defendant's Conduct Was Intentional ........ 12

B. Plaintiff States A CIPA § 631 Claim ........ 14

1. Plaintiff Establishes A Predicate CIPA § 631(a) Claim........ 14

2. Plaintiff Sufficiently Alleges Defendant Aided Google........ 16

C. Plaintiff States A CIPA § 632 Claim ........ 17

IV. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY ........ 19

V. DEFENDANT'S ATTEMPT TO STRIKE CLASS ALLEGATIONS IS PREMATURE AND DISFAVORED........ 22

VI. PLAINTIFF SUFFICIENTLY STATES A CLAIM FOR PUNITIVE DAMAGES ........ 23

CONCLUSION........ 24

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ahringer v. LoanDepot, Inc.*,
715 F. Supp. 3d 1274 (C.D. Cal. 2024)....................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5

*AV Builder Corp. v. Houston Cas. Co.*,
2021 WL 9474017 (S.D. Cal. Apr. 28, 2021)....................24

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023)....................22

*Bergstein v. Parmar*,
2014 WL 12586073 (C.D. Cal. June 23, 2014)....................13

*Bernstein v. United Collection Bureau, Inc.*,
2013 WL 5945056 (S.D. Cal. Nov. 5, 2013)....................18

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....................10, 13, 14, 22

*Brown v. DIRECTV, LLC*,
2014 WL 12599363 (C.D. Cal. May 27, 2014)....................22

*Brown v. Google, LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023)....................17

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023)....................5, 16

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023)....................4

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020)....................2

*Clark v. Allstate Ins. Co.*,
106 F. Supp. 2d 1016 (S.D. Cal. 2000)....................23, 24

*Conohan v. Rad Power Bikes Inc.*,
2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) .......... 13

*Cooper v. Mount Sinai Health Sys., Inc.*,
2024 WL 3586357 (S.D.N.Y. July 30, 2024) .......... 10

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......... 6

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 6, 16

*Dep't of Just. v. Reporters Comm. for Freedom of Press*,
489 U.S. 749 (1989) .......... 3

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 9

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 3

*Esparza v. Gen Digital Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) .......... 16

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .......... 20

*Ewing v. Flora*,
2015 WL 12564225 (S.D. Cal. Mar. 25, 2015) .......... 18

*Fernandez v. CoreLogic Credco, LLC.*,
593 F. Supp. 3d 974 (S.D. Cal. 2022) .......... 23

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) .......... 3

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Mar. 2, 2025) .......... 5, 6

*Garcia v. Build.com, Inc.*,
2023 WL 4535531 (S.D. Cal. July 13, 2023) .......... 3

*Gladstone v. Amazon Web. Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) .......... 18

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 3

*Guardant Health, Inc. v. Natera, Inc.*,
580 F. Supp. 3d 691 (N.D. Cal. 2022) .......... 22

*Hammerling v. Google LLC*,
615 F.Supp.3d 1069 (N.D. Cal. July 18, 2022) .......... 20

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) .......... 21

*Hartley v. Urb. Outfitters, Inc.*,
740 F. Supp. 3d 410 (E.D. Pa. 2024) .......... 7

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 17

*Hernandez v. Hillsides, Inc.*,
211 P.3d 1063 (2009) .......... 21

*Hughes v. Vivant, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024) .......... 4

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 11, 15

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... passim

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 12, 13, 14

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 20

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 10, 11, 18

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .......... 12

*In re Trilegiant Corp., Inc.*,
11 F. Supp. 3d 132 (D. Conn. 2014) .......... 10

*In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) ... 19

*India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347 (S.D. Cal. 2024) ... 20

*Iniguez v. The CBE Grp.*, 969 F. Supp. 2d 1241 (E.D. Cal. 2013) ... 22

*Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198 (C.D. Cal. 2004) ... 8

*James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023) ... 3, 11

*Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023) ... 17, 23

*Kane v. University of Rochester*, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ... 10

*Katzberg v. Regents of Univ. of California*, 58 P.3d 339 (2002) ... 21

*Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983) ... 24

*Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174 (N.D. Cal. 2025) ... 7

*Kurowski v. Rush Sys. for Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ... 10

*L.B. v. LinkedIn Corp.*, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ... 16

*Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823 (S.D. Cal. June 12, 2023) ... 4

*Lomeli v. Jackson Hewitt, Inc.*, 2018 WL 1010268 (C.D. Cal. Feb. 20, 2018) ... 22

*Lonegan v. Hasty*, 436 F. Supp. 2d 419 (E.D.N.Y. 2006) ... 10

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................21

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ....................16

*Mawardi v. Equilon Enters., LLC*,
34 F. App'x 533 (9th Cir. 2002) ....................22

*Mekhail v. N. Mem'l Health Care*,
2024 WL 1332260 (D. Minn. Mar. 28, 2024)....................10

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023)....................7

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024)....................17

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)....................9, 13, 17

*R.S. v. Prime Healthcare Srvs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ....................9

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 19, 2019)....................20

*Riganian v. LiveRamp Holdings, Inc.*,
2025 WL 2021802 (N.D. Cal. July 18, 2025)....................9

*Robinson v. Managed Accounts Receivables Corp.*,
654 F. Supp. 2d 1051 (C.D. Cal. 2009)....................23

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025)....................5

*S.D. v. Hytto Ltd.*,
2019 WL 8333519 (N.D. Cal. May 15, 2019) ....................13

*Shah v. Capital One Financial Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ....................passim

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ....................7, 18

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 20

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 7, 10

*Tavernetti v. Superior Ct.*,
22 Cal. 3d 187 (1978) .......... 14

*Taylor v. ConverseNow Techs., Inc.*,
2025 WL 2308483 (N.D. Cal. Aug. 11, 2025) .......... 13

*TransUnion LLC v. Ramirez*,
594 U.S. 412 (2021) .......... 3

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 6, 15, 16

*Washington Env'l Council v. Bellon*,
732 F.3d 1131 (9th Cir. 2013) .......... 5

*WhatsApp Inc. v. NSO Grp. Techs., Ltd.*,
472 F. Supp. 3d 649 (N.D. Cal. 2020) .......... 13

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) .......... 6

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 17

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) .......... 10, 11

**STATUTES**

15 U.S.C. § 6802(b) .......... 8

18 U.S.C. 2511 .......... 1, 10

18 U.S.C. § 2511(2)(d) .......... 7

Article I, Section 1 of the California Constitution .......... 21

Cal. Fin. Code § 4050 .......... 2

Cal. Fin. Code § 4051 .......... 1, 13

Cal. Fin. Code § 4053(b)(1).......... 8

**RULES**

Fed. R. Civ. P. 8.......... i, 4, 24

Fed. R. Civ. P. 9(b) .......... 24

**REGULATIONS**

16 C.F.R. § 313.......... 1, 13

16 C.F.R. § 313.3.......... 2

**INTRODUCTION**

Congress and the California legislature recognize the importance of maintaining the privacy of consumers' sensitive personal and financial information when applying for financial products and services. *See* 16 C.F.R. § 313; Cal. Fin. Code § 4051. California courts have refused to dismiss cases where consumers seek to enforce these protections. *See Shah v. Capital One Financial Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) (finding that the defendant financial institution violated the Electronic Communications Privacy Act, 18 U.S.C. 2511, *et seq*. ("ECPA") and the California Invasion of Privacy Act ("CIPA") §§ 631 and 632 by intercepting and unlawfully disclosing the plaintiffs' personal and financial information). Despite such duties to prevent consumers' private information from disclosure, The Capital Group Companies, Inc. ("Defendant") unlawfully intercepts and discloses its consumers' personal and financial information to a third party when consumers manage their financial accounts on www.capitalgroup.com (the "Website"). Such disclosures are not made for the benefit of consumers, but rather for the benefit of Defendant and Google.

Plaintiff is a resident of California and managed the funding of his employment sponsored retirement account on Defendant's Website. Class Action Complaint ¶ 5 (ECF No. 1) ("Compl."). Unbeknownst to Plaintiff, the confidential information he provided on the Website, including his contribution limits and asset selections, were intercepted by Defendant through its use of Google, LLC's ("Google") tracking pixel and SDK, and simultaneously disclosed to Google. *Id.* ¶¶ 5-7. This included private information related to Plaintiff's identity, financial investment decisions, and the total value of his financial account. *Id.* ¶¶ 1-3, 55-60. Such disclosures were not made to provide Plaintiff with services, but rather, to bombard him with harassing targeted advertising. *Id.* ¶¶ 53, 63. Such conduct is unlawful under both state and federal law.

When Defendant enabled Google to illegally intercept users' communications in violation of the CIPA and the ECPA, it enabled a third party to collect and use this

private information, thus depriving users of the right to control same. Compl. ¶¶ 1-3, 5-7, 48, 51-63. Defendant's conduct here was not an accident. Instead, Defendant deliberately employed Google to bolster its advertising revenue by allowing it to harvest information, build robust consumer profiles, and enable advertisers like Defendant to better target users for advertising purposes. *See id.* ¶¶ 6, 47, 62. The Ninth Circuit recognized the harm this conduct caused five years ago (*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020)), and that harm has only been amplified by the confidential nature of the financial information at issue here.

Rather than cure its privacy violations, Defendant now moves to dismiss Plaintiff's Complaint. *See* Defendant's Motion to Dismiss Plaintiff's Class Action Complaint (ECF No. 13) ("Motion" or "MTD"). However, each argument raised by Defendant is without merit, and its Motion should be denied.

## ARGUMENT

### I. PLAINTIFF HAS ESTABLISHED ARTICLE III STANDING

#### A. Plaintiff Suffered A Concrete Injury When Defendant Unlawfully Disclosed His Private Financial Information

Defendant briefly argues that Plaintiff lacks standing because he did not adequately allege a concrete injury arising out of a protectable privacy interest. MTD at 13-14. That is wrong.

Under state and federal law, financial service providers—including Defendant—are prohibited from disclosing nonpublic personal information to third parties. 16 C.F.R. § 313.3; Cal. Fin. Code § 4050, *et seq*. Courts have long recognized that consumers who have had their private information disclosed in violation of a privacy statute (including the CIPA) have suffered concrete harms actionable under law. *In re Facebook Internet Tracking Litig.*, 956 F.3d at 598 (violations of privacy rights have long been actionable at common law and "encompass[] the individual's control of information concerning his or her person") (cleaned up); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117-19 (9th Cir. 2020) (The harms protected by [the ECPA and CIPA] bear a close relationship to ones that have traditionally

been regarded as providing a basis for a lawsuit. . . and one of the several privacy torts historically recognized was unreasonable intrusion upon the seclusion of another.") (internal citations omitted); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023) (finding that "intrusions into privacy can constitute injury in fact"); *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *3 (S.D. Cal. July 13, 2023) ("Plaintiff responds that a CIPA violation is a violation of privacy rights and is a sufficiently concrete injury-in-fact. The Court agrees.").

This is because privacy statutes codify the common law right to privacy. "The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others." *Dep't of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763 n.15 (1989). To that end, the "right to privacy encompasses the individual's control of information concerning his or her person." *In re Facebook Internet Tracking Litig.*, 956 F.3d at 598 (cleaned up). And it is this privacy right that Defendant deprived Plaintiff of by causing his private financial information to be intercepted by Google without his consent. *See Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 580 (N.D. Cal. 2025) ("Put in terms of standing, the loss of control over one's personal information is the 'concrete' harm, whether from stealing access to a personal diary in 1916 or obtaining user information in a healthcare app in 2016."); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 949 (N.D. Cal. 2023), *cert. denied*, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) (same). Indeed, "privacy torts do not always require additional consequences to be actionable." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017). For instance, in the tort of intrusion upon seclusion, "the intrusion itself makes the defendant liable." *Id.*

Thus, Plaintiff clearly alleges a concrete harm that "bears a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit." MTD at 13 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 412, 425 (2021)). Plaintiff does not allege an injury stemming from a bare statutory violation, as Defendant claims.

Rather, Plaintiff specifically alleges that he "managed his retirement account" through Defendant's Website, where he "set his contribution limits and selected the assets to fund his retirement account." Compl. ¶ 5. However, "[u]nbeknownst to Plaintiff, Defendant disclosed his personally identifiable information ('PII') to Google—including communications that contained Plaintiff's confidential, 'nonpublic personal information' as defined by the GLBA and CalFIPA. Such disclosures include the total value of Plaintiff's retirement account. Neither Defendant nor Google procured Plaintiff's prior consent to share his private and protected information." *Id.* ¶ 7. Such disclosures were not made to facilitate his loan application, but rather, were made for the purposes of targeted advertising without Plaintiff's consent. *See id*. ¶¶ 63, 86, 93. Defendant deprived Plaintiff his right to control his private financial information, which "gives rise to a concrete injury sufficient to confer standing." *In re Facebook*, 956 F.3d at 598.

The authority relied upon by Defendant is inapposite, as it does not concern the disclosure of protected information. *See Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) ("Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest. She therefore has not identified any harm to her privacy."); *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (same); *Hughes v. Vivant, Inc.*, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024) (same).

### B. Plaintiff's Factual Allegations Of His Harms Are Sufficient Under Fed. R. Civ. P. 8

Defendant next contends that Plaintiff's allegations fail to establish a concrete injury to his substantive privacy rights because courts routinely hold "that far more detail than Plaintiff provided in the Complaint is required to determine whether a protectable privacy interest has been alleged." MTD at 14-16. This argument both ignores Plaintiff's allegations and overstates his burden at the pleading stage.

Plaintiff's complaint contains sufficient detail to put Defendant on notice as to Plaintiff's claims.

The Federal Rules require that a complaint contain a "short and plain statement" of the facts showing that "the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quotation omitted). Courts "must accept the allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 925 (C.D. Cal. 2025) (quotation omitted). At the pleading stage, a plaintiff's "general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing. *Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, at *2 (C.D. Cal. Mar. 2, 2025) (cleaned up); *see also Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) ("Moreover, there is no requirement that Byars specifically allege the exact contents of her communications with Goodyear."). It is not until the summary judgment stage where a plaintiff must set forth more specific proof of injury. *See Washington Env'l Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013).

Defendant's attempt to label Plaintiff's Complaint as "speculative at best[]" fails for this reason. MTD at 9. Plaintiff plainly alleges that Defendant utilized Google's pixel and SDK to share its account users' protected information, including information related to the total value of the individual's assets, the specific employer-sponsored account being accessed, their contribution rates, and the specific investments they select. Compl. ¶¶ 3, 5-7, 84-85. Such allegations clearly define Plaintiff's own activity within his private investment account, which included "set[ting] his contribution limits and select[ing] the assets to fund his retirement account." *Id.* ¶ 5. Plaintiff further describes how Google matches this data to its own account holders. *Id.* ¶¶ 6, 50. Plaintiff even provides both visual and descriptive allegations that elaborate on the type of information being disclosed. *Id.* ¶¶ 51-63; Fig. 2-6. Plaintiff also details why the intercepted information is legally protected. *Id.*

¶¶ 20-30. These allegations are more than sufficient to satisfy the injury requirement for standing at this stage of litigation.[1] *See Gaige*, 2025 WL 559719, at *2.

Defendant also wrongly claims that "[g]eneral allegations about what [Google] ***may be capable*** of collecting do not sufficiently establish what [Google] ***actually collected from*** Plaintiff (if anything) during his visit." MTD at 15-16 (emphasis in original). Again, this is not what is required to state a plausible claim. *See*, *e.g.*, *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 977 (C.D. Cal. 2023) ("Although Valenzuela has not alleged specifically that she used the chat feature . . . this is not fatal to her claim . . . [it] is a plausible inference from her allegations."); *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 952 (N.D. Cal. 2024) ("Because Plaintiffs have properly alleged that Salesforce has the ability . . . the Court finds that Plaintiffs have alleged sufficient facts to meet the plausibility requirement."); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1199 (S.D. Cal. 2024) ("These allegations, when accepted as true, support a plausible inference that Plaintiffs used the chat feature within the relevant statutory time period.").

This is especially applicable to wiretapping cases, where relevant information is often unreachable prior to discovery. *See D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023) ("[A] pleading standard to the contrary would require the [wiretapping] plaintiff to engage in a one-sided guessing game because the relevant information . . . typically resides uniquely in the custody and control of . . . defendant and its third-party recorder."). This is in stark contrast to the authority relied

[1] Defendant attempts to argue that because Plaintiff's total account balance was already present on the Website, "[w]ithout any allegations explaining how this preexisting data was transmitted, it remains unclear how–if at all–such information could have been intercepted." Motion at 15. This ignores Plaintiff's allegations, which include various figures how Plaintiff's total account balance was intercepted in real time, along with other personally sensitive information pertaining to his financial decisions, as he actively accessed his account, changed his contribution amount, and changed his investment portfolio. *See* Compl. ¶¶ 51-62.

upon by Defendant, where the plaintiffs did not provide any information regarding their own activity. *See Hartley v. Urb. Outfitters, Inc.*, 740 F. Supp. 3d 410, 422 (E.D. Pa. 2024) (allegations not specific enough to implicate privacy concerns); *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (same); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (same). Therefore, Plaintiff provides sufficient factual allegations describing how Defendant caused him a concrete harm through the disclosure of his private financial information at this point in the litigation. *See* Compl. ¶¶ 3, 5-7, 84-85, 91. Accepting Defendant's argument would require the Court to draw inferences against Plaintiff, which is not permitted. *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1194 (N.D. Cal. 2024) (a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.") (internal citations omitted).

## II. PLAINTIFF SUFFICIENTLY PLEADS HIS CLAIM UNDER THE FEDERAL WIRETAP ACT

### A. Defendant Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose

Defendant contends that Plaintiff's ECPA claim fails because the ECPA is a one-party consent statute and the crime-tort exception is inapplicable. MTD at 21. However, as conceded by Defendant, the party exception does not apply if the "communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). In other words, if Defendant intercepted Plaintiff's communications "for the purpose of committing any tortious or criminal act," it cannot escape liability. The crime-tort exception focuses on whether "the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (internal quotations and citations omitted).

*Shah v. Capital One Financial Corporation*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) is instructive. In *Shah*, the plaintiff alleged that the defendant installed third

party tracking software, including tracking software from Google, that intercepted private, financial information. *Id.* at 1041. The court denied the defendant's motion to dismiss, holding the defendant's actions of intercepting and disclosing communications without consent were allegedly tortious. *Id.* at 1053. The same result is warranted here, where Plaintiff alleges Defendant disclosed his personally identifiable information and sensitive financial information in violation of the Gramm-Leach-Bliley Act ("GLBA") and California Financial Information Privacy Act ("CalFIPA"). *See* Compl. ¶¶ 20-30.

Defendant claims that "Plaintiff cannot rely on . . . alleged statutory violations to invoke the crime-tort exception." MTD at 17. According to Defendant, the GLBA and the CalFIPA "expressly permit the disclosure of nonpublic personal information under specific circumstances." *Id.* But as Defendant notes, that disclosure is *only* allowed if the financial institution provides sufficient notice and an opportunity to opt out to the consumer. *See* 15 U.S.C. § 6802(b); Cal. Fin. Code § 4053(b)(1). Rather than support this affirmative defense, Defendant attempts to shift its burden onto Plaintiff, arguing he "does not allege any facts regarding the notice or opt-out opportunities provided by Capital Group." MTD at 18. Defendant ignores that Plaintiff repeatedly alleges that Defendant intercepted and disclosed his private information without consent. Compl. ¶¶ 7, 29, 93, 102, 105, 120. And it is not up to Plaintiff to establish Defendant's affirmative defense to its unlawful conduct. *See* *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1217 (C.D. Cal. 2004) ("Federal pleading rules generally do not require a plaintiff to anticipate and plead around an affirmative defense.").

Defendant further argues that Plaintiff does not "plead facts that would plausibly establish a violation of either statute." MTD at 18. To the contrary, Plaintiff describes with particularity how Defendant violated the GLBA, CalFIPA, and committed an invasion of privacy, via the secret installation of computer code on its Website. *See* Compl. ¶¶ 29-30, 32-35, 55-62, 89-92, 117-121, 124-136. At this stage, Plaintiff

plausibly alleges that Defendant acted with the requisite criminal or tortious intent. *See Shah*, 768 F. Supp. 3d at 1053 (finding that the party exemption did not apply when plaintiffs alleged that defendant intercepted contents "for an unauthorized purpose, which resulted in tortious acts"); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. 2024) (finding that plaintiffs stated a claim for invasion of privacy sufficient to plead defendant's tortious intent).

Defendant also argues that because its use of Google's pixel and SDK was "motivated by marketing and advertising purposes," the crime-tort exception does not apply. MTD at 18. Not so. In the Ninth Circuit, "the crime-tort exception ***may*** nonetheless apply" where a defendant is primarily motivated by monetary gain. *R.C.*, 733 F. Supp. 3d at 901 (emphasis added); *see also R.S. v. Prime Healthcare Srvs., Inc.*, 2025 WL 103488, at *7 (C.D. Cal. Jan. 13, 2025) ("The Court joins those courts that have held a monetary purpose does not insulate a party from liability under the ECPA."). This very argument has been consistently critiqued and rejected by courts within this Circuit and across the country. *See, e.g.*, *Riganian v. LiveRamp Holdings, Inc.*, 2025 WL 2021802, at *9 (N.D. Cal. July 18, 2025) ("[T]his Court is not persuaded that commercially exploiting unlawfully obtained information is 'licit' merely because it is profitable."); *R.C.*, 733 F. Supp. 3d at 901 ("But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims.").

Defendant's argument that Plaintiff has not alleged an act separate from the alleged wiretapping is also insufficient, as Plaintiff clearly alleges that Defendant violated the GLBA and CalFIPA by *disclosing* the information it intercepted to Google without consent. *See Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 849 (E.D. Cal. 2025) ("Courts have applied the ECPA's crime-tort exception where the intentional *disclosure* of private information constituted a further impropriety independent and separate from [the] *interception* of private information.") (internal

quotations omitted)*; see also Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ("Under section 2511, the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious.") (quotation marks and citation omitted); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (suggesting that in a motion to dismiss context, "[t]here is a not-insignificant chance ... that plaintiffs may be able to show that the crime-tort exception applies" where they allege that the defendant uses patient data for advertising); *Kurowski v. Rush Sys. for Health* (*Kurowski III*), 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023); *Kane v. University of Rochester*, 2024 WL 1178340, at *7–8 (W.D.N.Y. Mar. 19, 2024); *Mekhail v. N. Mem'l Health Care*, 2024 WL 1332260, at *5 (D. Minn. Mar. 28, 2024); *Cooper v. Mount Sinai Health Sys., Inc.*, 2024 WL 3586357, at *8 (S.D.N.Y. July 30, 2024).

In sum, Defendant cannot shield itself from Plaintiff's ECPA claim by relying on the party exemption; the crime-tort exception squarely applies.

### B. Defendant Intercepted The Contents Of Plaintiff's Communications[2]

Defendant next argues that Plaintiff "fails to allege any facts demonstrating that the substance or content of Plaintiff's communications—rather than mere metadata or transactional information—was intercepted or disclosed." MTD at 20. That is wrong.

Courts interpret "content" under the CIPA and the ECPA as "the intended message conveyed by the communication . . . [not] includ[ing] record information regarding the characteristics of the message that is generated in the course of the communication." *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal.

[2] Plaintiff brings his ECPA claims against Defendant under a theory of direct liability. However, a "procurer" is also liable under the statute. *See In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132, 148 n. 2 (D. Conn. 2014) ("We do not intend our definition of aider and abettor to cover a 'procurer' as used in the statute.") (citing *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427–28 (E.D.N.Y. 2006) ("A procurer is not an aider and abettor but one who violates the statute directly")).

Dec. 30, 2024) (internal citations omitted); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). Courts conduct a "case-specific" analysis to distinguish "content" from record information; this analysis focuses on "'how much information would be revealed' by the information's tracking and disclosure." *Yoon*, 2024 WL 5264041, at *5. Courts within the Ninth Circuit have agreed that "content" includes "the names of buttons clicked." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022); *see also Yoon*, 2024 WL 5264041, at *6 ("[T]he button click data associated with . . . titles are contents."). In addition, "content" may also include "full-string, detailed URLs" that include "the particular document within a website that a person views[.]" *In re Facebook*, 956 F.3d at 605; *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) ("URLs (to the extent the URLs contain a user's search terms) implicate 'content' under the Wiretap Act.") (internal citations omitted).

Here, Defendant asserts that "the depicted information—such as URLs, HTTP requests, button clicks, and page navigation—falls squarely within the category of record information, not the 'contents' of a communication." MTD at 20. This is misguided for two reasons.

*First*, as noted above, courts in this Circuit have found that button clicks and specific URLs *can be* considered "content" under the ECPA. *See James*, 701 F. Supp. 3d at 956 (finding contents were intercepted where "Plaintiffs have alleged that Oracle intercepted, e.g., information about the webpages they viewed and searches they conducted"); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1083 ("The parties agree that Plaintiffs' allegations that the Carrier IQ Software intercepted … URLs (to the extent the URLs contain a user's search terms) implicate 'content' under the Wiretap Act."); *see also* Compl. Fig. 5 (showing URL which specifies that Plaintiff was on the dashboard page viewing his retirement income). Plaintiff's allegations also describe

the various button names disclosed to Google based on the user-generated responses within the Website. *See* Compl. Figs. 5-6.

*Second*, Plaintiff alleges that Defendant disclosed more than just URLs and button clicks, but also specific private financial information input by Plaintiff as he navigated Defendant's Website. *See* Compl. Figs. 5-6; *see also In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1004 (N.D. Cal. 2024) (finding "contents" were intercepted where "[t]he financial information that was transmitted to Meta from the tax filing websites included form field information and/or information affirmatively provided by the website user to the website[.]"). This content allows Defendant to discern Plaintiff's identity, employment information, investment and retirement information, and other nonpublic personal information. This is "content" under the ECPA. *Shah*, 768 F.Supp.3d at 1054 ("In the complaint, Plaintiffs state that the 'contents' of their communication included Plaintiffs' personal information, which is a content under CIPA."). Defendant's argument that "the Complaint offers no detail regarding how these actions were performed—whether Plaintiff typed information into the Website, clicked buttons, or made selections," is without merit as *any* of these examples would be sufficient to establish that Defendant intercepted the content of Plaintiff's communications.

## III. PLAINTIFF STATES A CLAIM UNDER CIPA § 631 AND § 632

### A. Defendant's Conduct Was Intentional

Defendant argues that Plaintiff's CIPA § 631 and § 632 claims fail because "Plaintiff has not alleged (nor can he) that Capital Group had any such intent or knowledge" that Google would read or eavesdrop on Website visitors. MTD at 21. This is wrong and defies common sense. Indeed, the very purpose of the Google pixel and SDK are to intercept communications to help drive ad revenue. Compl. ¶¶ 38, 44; *see In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1010 (accepting plaintiffs' allegations that "the Pixel's design renders it primarily useful for electronic eavesdropping.").

Under the CIPA, "intent" may be demonstrated where an interception is "purposeful" and "deliberate," and not "a result of accident or mistake." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020) (internal citations omitted). Furthermore, "interceptions may be considered intentional where a defendant is aware of the defect causing interception and takes no remedial action." *Id.* The meaning of "intentionality" within CIPA is identical to the meaning within ECPA. *Taylor v. ConverseNow Techs., Inc.*, 2025 WL 2308483, at *6 (N.D. Cal. Aug. 11, 2025); *see also Brodsky*, 445 F. Supp. 3d at 127 ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.") (quotation omitted).

Here, Plaintiff has alleged in depth that Defendant intentionally intercepted Plaintiff's information because computer code does not get embedded on Defendant's Website by accident. *See* Compl. ¶¶ 31, 84, 131. And courts in the Ninth Circuit repeatedly recognize that purposefully embedding code on a consumer's device to collect and compile their personally identifiable information and financial information is an intentional act. *See, e.g.*, *Conohan v. Rad Power Bikes Inc*., 2025 WL 1111246, at *3 (C.D. Cal. Apr. 3, 2025) (finding the defendant's installation of the TikTok pixel was an intentional act); *WhatsApp Inc. v. NSO Grp. Techs., Ltd.*, 472 F. Supp. 3d 649, 661-62 (N.D. Cal. 2020) (sending code to servers and accessing them without authorization); *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *2-8 (N.D. Cal. May 15, 2019) (wiretapping); *Bergstein v. Parmar*, 2014 WL 12586073 at *3-4 (C.D. Cal. June 23, 2014) (telephone conversations).

Additionally, as the owner and operator of the Website, Plaintiff has established that "Defendant chose to embed the Google Analytics wiretap on its Website[.]" Compl. at ¶ 8. More importantly, the information unlawfully intercepted and disclosed by Defendant is protected by law. 16 C.F.R. § 313; Cal. Fin. Code § 4051. Therefore, as a financial institution, Defendant knew that it was unlawful to disclose Plaintiff's protected information to a third party. *See Shah*, 768 F. Supp. 3d at 1053; *R.C.*, 733

F. Supp. 3d at 901-02. But even if Defendant did not originally intend to unlawfully intercept interception, Defendant failed to take remedial action after becoming aware of the defect. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 815. That is sufficient to show intent.

**B. Plaintiff States A CIPA § 631 Claim**

CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Plaintiff alleges that Google violated the second and third clauses of CIPA § 631(a) by "reading" or "learning the contents" of Plaintiff's communications "in transit" (the second clause) and using that information for their own purposes (the third clause). Compl. ¶¶ 102-103. And Plaintiff alleges Defendant violated the fourth clause of CIPA § 631(a) by "aid[ing], agree[ing] with, employ[ing]" or otherwise enabling the third party's aforementioned CIPA violations. Compl. ¶ 104.

*1. Plaintiff Establishes A Predicate CIPA § 631(a) Claim*

Defendant contends that Plaintiff fails to allege facts to satisfy the "contents" and "in transit" elements of the second clause of CIPA § 631(a). Thus, Defendant contends that because Plaintiff cannot satisfy the "content" and "in transit" elements of the second clause of CIPA § 631(a), he cannot allege a claim against Defendant for a violation of CIPA § 631(a)'s fourth clause. MTD at 24.

As an initial matter, Plaintiff's allegations are sufficient to show that the contents of his communications were intercepted or disclosed under the ECPA *and* CIPA because they require the same analysis. *See Brodsky*, 445 F. Supp. at 127 ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). For the reasons stated *supra* § II.B, Plaintiff sufficiently alleges that Defendant intercepted the contents of his communications.

Separately, Defendant's argument that Plaintiff fails to "plausibly allege that any communication was intercepted while 'in transit'" is also misguided. MTD at 23.

Plaintiff details the exact way Google's tracking technology functions to intercept communications:

> Google Analytics is incorporated into third-party websites and apps, including the Website, by adding a small piece of JavaScript measurement code to each page on the site. This code immediately intercepts a user's interaction with the webpage every time the user visits it, including what pages they visit and what they click on. The code also collects PII, such as IP addresses and device information related to the specific computing device a consumer is using to access a website. The device information intercepted by Google includes the consumer's operating system, operating system version, browser, language, and screen resolution.

Compl. ¶ 44. Plaintiff even provides visual examples of Google's advertising technology learning the meaning of the communications it intercepts in real time. *Id.* Figures 2-4. Courts in the Ninth Circuit routinely find similar allegations satisfy the "in-transit" requirement. *See Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d at 978 ("[Plaintiff] did not simply recite that there was real time interception, she added detail on how it occurs. . ."); *Shah*, 768 F.Supp.3d at 1053-54 (same).

Defendant's remaining argument that Plaintiff's allegations are "insufficient" merely because he notes that Google "package[s] and store[s]" the information intercepted to be "processed for reporting purposes at a later time" also fails. MTD at 24. While Google may continue to utilize the data it intercepts, that does not mean that it did not read and learn the meaning of the communications intercepted while they were in transit. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1082 (finding the plaintiff's allegations satisfied the "in transit" requirement and noting that "even if the Defendants are factually correct that the communications at issue in this case were in transitory storage . . . when the Carrier IQ Software operated on them, it is not at all apparent why there was no 'captur[ing] or redirect[ing]' of these communications contemporaneous with their transmission.").

Here, Plaintiff makes detailed allegations showing his communications were intercepted "in transit" regardless of what Google does with the information after it is intercepted. The Complaint explains in detail how the Google pixel and SDK work. *See* Compl. ¶¶ 44-45. And the Complaint sets out the precise means and time by which the communications were intercepted while "in transit," prior to reaching their final destination. *See id.* ¶¶ 51-62. No additional allegations are required. *See, e.g.*, *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8; *Valenzuela*, 686 F. Supp. 3d at 978-79; *Byars*, 654 F. Supp. 3d at 1027.

Defendant's cases do not compel a different result. In *L.B. v. LinkedIn Corp.,* 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025), the court found that "Plaintiff[] need not prove [his] theory of interception to survive dismissal, but [he] must 'provide fair notice to [Google] of when they believe [Google] intercepts [his] communications.'" The court in *Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) further supports this point, dismissing the plaintiff's case for failing to allege "what was intercepted, when the interception took place, and how the interception took place." Plaintiff alleges the information, time, and process of the interception with specificity, and therefore satisfies the "in transit" element of the second clause of CIPA § 631(a) at the pleading stage.

2. *Plaintiff Sufficiently Alleges Defendant Aided Google*

Defendant's argument that CIPA's party exemption applies to Google, and therefore Capital Group did not "aid" a third-party, is also invalid. Defendant itself acknowledges that to "overcome this exemption at the pleading stage, a plaintiff must allege specific, non-conclusory facts showing that the vendor acted independently and used the data for its own purposes." MTD at 25. Unlike the plaintiff in *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *12 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023), who "provide[d] no description of what the third-party vendor does, what its relationship to Sephora is, how it intercepts Sephora's chat communications, or what it does with

that information[,]" Plaintiff alleges in detail that Google's pixel and SDK both provide marketing and analytics services to the client, but *also* improve Google's own ad targeting capabilities. *See* Compl. ¶¶ 6-7, 38 43, 47, 60. This is sufficient to show that Defendant aided and employed a third-party eavesdropper in violation of CIPA § 631(a). *See Yockey*, 688 F. Supp. 3d at 962 (finding that a plaintiff may satisfy the fourth prong of CIPA § 631(a) if he sufficiently alleges that a third-party software provider can use its records of the intercepted communications for any purpose other than providing them to the defendant); *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023) (finding that use of the third party is irrelevant); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1016 (C.D. Cal. 2023) (made finding on basis of "whether plaintiffs have alleged that the third-party had the *capability to use* the communications for any other purpose.").

**C. Plaintiff States A CIPA § 632 Claim**

Defendant next argues that Plaintiff fails to state a claim under CIPA § 632 for two reasons: (1) because Defendant failed to establish that Capital Group had the requisite knowledge or intent, and (2) because Plaintiff has not "plausibly alleged his communications on the Website were 'confidential.'" MTD at 25-26. Both arguments fail.

*First*, as noted *supra* § III.A, Plaintiff has established that as the owner of the Website, Defendant chose to input the Google pixel and SDK. Compl. at ¶ 8. As a financial institution, Defendant knew that it was unlawful to disclose Plaintiff's protected information to third parties. This is sufficient to show that Defendant had intent to disclose Plaintiff's private financial communications in violation of the statute, and also that it had knowledge that disclosing this private information was unlawful. *See Shah*, 768 F. Supp. 3d at 1054; *R.C.*, 733 F. Supp. 3d at 901-02.

*Second*, Plaintiff clearly and plainly alleges that his communications were "confidential." The "argument, that California courts have developed a presumption that users do not have an expectation of privacy over internet communications, fails

on examination." *Brown v. Google, LLC*, 685 F. Supp. 3d 909, 937 (N.D. Cal. 2023). "[T]here is no requirement that Plaintiff allege something 'unique' about [his] particular Internet communications in order to make them … confidential." *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, at *10 (C.D. Cal. Oct. 4, 2024), *adopted as modified*, 2024 WL 4474491 (C.D. Cal. Oct. 4, 2024).

In any event, courts have routinely recognized communications to be "confidential" under CIPA § 632 when shown to be sensitive under applicable laws, regulations, or industry norms. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799 (finding communications confidential when protected by federal law); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199-1200 (N.D. Cal. 2024) (finding that "sensitive financial information submitted to a tax preparation website[]" was confidential under section 632); *Bernstein v. United Collection Bureau, Inc.*, 2013 WL 5945056, at *4 (S.D. Cal. Nov. 5, 2013) ("The conversation allegedly included discussions protected by the attorney-client privilege, … as well as highly personal and private financial information[.] … Plaintiff has sufficiently alleged that he had a reasonable expectation the conversation would not be recorded.") (cleaned up); *Ewing v. Flora*, 2015 WL 12564225, at *4 (S.D. Cal. Mar. 25, 2015) ("Plaintiff [] alleges that due to the personal and financial nature of the conversations with Defendants, Plaintiff had a reasonable expectation of privacy … Plaintiff has adequately stated a CIPA claim."). That is the case here, where the California Legislature and Congress codified the right to privacy in consumer's personal financial information, in the GLBA and CalFIPA.

"Bearing in mind that a person's objectively reasonable expectation of confidentiality is generally a question of fact" (*Gladstone v. Amazon Web. Servs., Inc.*, 739 F. Supp. 3d 846, 859 (W.D. Wash. 2024) (cleaned up)), these laws support Plaintiff's reasonable expectation that Defendant, as an online financial service, would not enable massive technology companies like Google to collect Plaintiff's

private financial information for marketing and advertising without notice or consent. *See* Compl. ¶¶ 93, 119-120.

## IV. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY

To state a claim for invasion of privacy under the California Constitution, plaintiffs must plead (1) a legally protected privacy interest, (2) a reasonable expectation for privacy, and (3) that the intrusion is so serious as to amount to an egregious breach of the social norms. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601 (citation omitted). Defendant argues that Plaintiff has failed to "meet either prong."[3] MTD at 26. That is wrong.

*First*, Defendant argues that Plaintiff has not adequately pled a reasonable expectation of privacy under the GLBA and CalFIPA because the Complaint does not allege that Plaintiff's private financial data "was or could be personally attributable to Plaintiff." MTD at 27. This is false. Plaintiff directly alleges that "the information disclosed by Defendant allows Google to know the identities of specific individuals as well as information related to the private financial decisions they are making." Compl. ¶ 60.[4]

*Second*, Defendant contends that "the common law invasion of privacy claim still fails because the Complaint lacks allegations showing that any data collection was 'highly offensive.'" MTD at 27. This is also false. Although "routine collection of

---

[3] Notably, Defendant does not make an argument challenging the first requirement for an invasion of privacy claim–whether Plaintiff alleged a legally protected privacy interest.

[4] Not only does Plaintiff allege that Defendant allowed for the interception of private financial information that could be personally connected to him, but he further explains the process behind this. Plaintiff notes that "[d]ue to the vast network of consumer information held by Google, it is able to match the IP addresses, device information, and User-IDs it intercepts and link such information to an individual's specific identity." Compl. ¶ 50.

personally identifiable information as part of electronic communications" is unlikely to be highly offensive, the "collection of intimate or sensitive personally identifiable information may amount to a highly offensive intrusion." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017); *see also Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274, 1283 (C.D. Cal. 2024*)* (same); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (same). Even "routine data collection practices may be highly offensive if a defendant disregards consumers' privacy choices while simultaneously holding itself out as respecting them." *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d at 946 (cleaned up).

Whether a defendant has acted with a sufficient level of offensiveness requires a nuanced determination that courts are hesitant to make at the pleading stage. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d at 606 ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."); *Smith v. Rack Room Shoes, Inc*., 2025 WL 1085169, at *3 (N.D. Cal. Apr. 4, 2025) (explaining open factual questions pertaining to the degree of offensiveness such as "the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive" should not be resolved in a motion to dismiss); *Ahringer*, 715 F. Supp. 3d at 1283 (stating the decision is "generally a factual matter best determined after the pleading stage"); *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1362 (S.D. Cal. 2024) (same); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (same).

Defendant's case law is unpersuasive. Defendant relies on numerous cases that concern routine commercial behavior that is not legally protected (*see In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding that the disclosure of "unique device identifier number, personal data, and geolocation information" did not "constitute an egregious breach of social norms[]")) or cases that

contain insufficient information as to what was allegedly disclosed. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. July 18, 2022) ("The lack of details as to how Google could attain the intimate information renders implausible what might otherwise be the strongest allegation of highly offensive conduct."); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (same).

In contrast, Plaintiff sufficiently alleges that Defendant's disclosure goes beyond "routine commercial behavior" because Defendant surreptitiously shared sensitive and confidential information with Google while Plaintiff was managing his financial assets on Defendant's Website. Defendant intercepted communications including, at the least, Plaintiff's total dollar value of his retirement account, employer's name, and private investment decisions and contribution amounts. Id. ¶¶ 57-60. Here, contemporary social norms are far more likely to render the disclosure of private investment decisions, financial status, and employer information, for instance, as being highly offensive. *See* Compl. ¶ 63 ("Such disclosures are an invasion of privacy. . ."). Regardless, the nuances of this determination warrants dismissal as inappropriate at this stage.

Defendant also readily attempts to have Plaintiff's entire invasion of privacy claim dismissed because the "claim for monetary damages under Article I, Section 1 of the California Constitution fails as a matter of law." MTD at 18. Not so. California courts have held that whether the state constitutional privacy provision can "also provide direct and sole support for a damages claim" is an "open question[.]" *Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1072 (2009) (citing *Katzberg v. Regents of Univ. of California*, 58 P.3d 339, 347 (2002)); *see also Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 602 (N.D. Cal. 2021) (recognizing that the "California Supreme Court has subsequently described the availability of damages as 'an open question[]'" and refusing to rule without adequate briefing of the issue under the framework set out in *Katzberg*). For this reason, the Court should deny Defendant's Motion to Dismiss Plaintiff's invasion of privacy claim.

## V. DEFENDANT'S ATTEMPT TO STRIKE CLASS ALLEGATIONS IS PREMATURE AND DISFAVORED

"While some courts strike class allegations when it is ***abundantly clear*** that the class mechanism will not work, it is the exception, not the rule." *Lomeli v. Jackson Hewitt, Inc.*, 2018 WL 1010268, at *10 (C.D. Cal. Feb. 20, 2018) (emphasis added); *see also Brown v. DIRECTV, LLC*, 2014 WL 12599363, at *2 (C.D. Cal. May 27, 2014) ("motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle . . .") (cleaned up); *Iniguez v. The CBE Grp.*, 969 F. Supp. 2d 1241, 1248 (E.D. Cal. 2013) ("Dismissing class allegations at the pleading stage, however, is rare because the parties have not yet engaged in discovery and the shape of a class action is often driven by the facts of a particular case."). When a court reviews a motion to strike class allegations, they must "view the pleading in the light most favorable to the nonmoving party." *Guardant Health, Inc. v. Natera, Inc.*, 580 F. Supp. 3d 691, 700 (N.D. Cal. 2022).

Against this spate of authority, Defendant contends that "Plaintiff's purported nationwide class definition and California subclass definition should be stricken (or dismissed) because they are impermissibly overbroad, imprecise, and inapplicable." MTD at 29. *First*, Defendant argues that the nationwide class should be dismissed because Plaintiff's ECPA should be dismissed. Not so. As argued *supra* § II, Plaintiff has sufficiently alleged that Defendant tortiously intercepted the contents of Plaintiff's communications.

*Second*, Defendant argues that Plaintiff's class allegations are overbroad and imprecise as they "fail to define the class period." MTD at 29. This is also wrong. The statute of limitations under CIPA is one year. *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1082 (S.D. Cal. 2023) (citing *Brodsky*, 445 F. Supp. 3d at 134). Under California's discovery rule, the limitations period commences "when the

plaintiff suspects, or should suspect, that his or her injury was caused by wrongdoing." *Mawardi v. Equilon Enters., LLC*, 34 F. App'x 533, 535 (9th Cir. 2002). The question of when a plaintiff actually discovered or should have discovered the wrongdoing is typically a "question of fact unless the evidence can support only one reasonable conclusion." *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d at 901. Thus, "[a]t this stage of the proceedings, the court cannot resolve questions regarding when putative class members would have (or should have) discovered" the interception of their private communications. *Fernandez v. CoreLogic Credco, LLC.*, 593 F. Supp. 3d 974, 997 (S.D. Cal. 2022). Plaintiff plans to move for class certification when available, where he will then be able to determine the actual class period "after a period of reasonable discovery." *Id.* For these reasons, Defendant's attempt to strike class allegations is premature and should be denied.

## VI. PLAINTIFF SUFFICIENTLY STATES A CLAIM FOR PUNITIVE DAMAGES

Finally, Defendant argues that "Plaintiff's request for punitive damages also must be dismissed and/or stricken from the Complaint" because "the words 'malice', 'fraud', or 'oppression' are not used once in the Complaint." MTD at 30. Defendant once again misstates pleading requirements in making this argument.

While California courts may impose a heightened pleading requirement on claims for punitive damages, such a requirement conflicts with federal procedural law. *See Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1066 (C.D. Cal. 2009) (finding allegations that defendant acted with knowledge and intent to cause harm "more than meet the minimal requirement of conclusory assertions" required under federal law); *Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016, 1020 (S.D. Cal. 2000) (rejecting California's heightened pleading standard for punitive damages as a court sitting in diversity because the plaintiff's complaint "clearly requested punitive damages and made conclusory assertions of intentional and malicious misconduct."). And while some district courts have rejected the *Clark*

analysis after *Twombly* and *Iqbal* like Defendant suggests, "there continues to be a substantial and growing number of district courts that have refused to apply a heightened-pleading standard to requests for punitive damages in light of Federal Rules of Civil Procedure 8 and 9." *AV Builder Corp. v. Houston Cas. Co.*, 2021 WL 9474017, at *3 (S.D. Cal. Apr. 28, 2021). Thus, under federal law and Ninth Circuit precedent, Federal Rule of Civil Procedure 9(b) does "not require '*any* particularity in connection with an averment of intent, knowledge or conditions of mind.'" *Clark*, 106 F. Supp. 2d at 1019 (cleaned up) (emphasis in original).

Nevertheless, Plaintiff *does* sufficiently plead facts that show Defendant acted with knowledge and intent to invade Plaintiff's privacy interests under both pleading standards. *See* Compl. ¶ 91 ("Defendant specifically used the tracking technology provided by Google to track and utilize Plaintiff's and Class Members' PII for financial gain.); *see also id.* ¶ 128 ("Defendant's willful and intentional disclosure of Plaintiff's and California Subclass members' PII constitutes an intentional interference with Plaintiff's and California Subclass members' interest in solitude and/or seclusion . . ."); *id.* ¶ 130 ("Defendant failed to protect Plaintiff's and California Subclass members' PII and financial information and acted knowingly when it installed the tracking technology onto the Website because the purpose of said technology is to track and disseminate users' communications on the Website for marketing and advertising."); *id.* ¶ 131 (Because Defendant intentionally and willfully incorporated the tracking technology onto the Website and encouraged individuals to use and interact with the Website and the services thereon, Defendant had notice and knew that this practice would cause injury to Plaintiff and the California Subclass."). Thus, the Court should not strike Plaintiff's claim for punitive damages at this stage in the litigation.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendant's Motion in its entirety. If, however, the Court dismisses any part of the Complaint, Plaintiff

respectfully requests leave to amend to cure any such deficiencies. *See, e.g.*, *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983).

Dated: November 26, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354765)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

*Attorney for Plaintiff*