**BAKER & HOSTETLER LLP**
David H. Stern (SBN 196408)
Alex E. Spjute (SBN 229796)
Kamran B. Ahmadian (SBN 314566)
1900 Avenue of the Stars | Suite 2700
Los Angeles, CA 90067-4508
Telephone: 310.820.8800
Facsimile: 310.820.8859
*dstern@bakerlaw.com*
*aspjute@bakerlaw.com*
*kahmadian@bakerlaw.com*

*Attorneys for Defendant*
THE CAPITAL GROUP COMPANIES, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

IWAN NYOTOWIDJOJO and VU NGUYEN, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

THE CAPITAL GROUP COMPANIES, INC.,

Defendant.

Case No.: 8:25-cv-01816-JWH-JDE

*[Assigned to Hon. John W. Holcomb]*

**DEFENDANT THE CAPITAL GROUP COMPANIES, INC.'S:**

**(1) NOTICE OF MOTION AND MOTION TO DISMISS AND/OR STRIKE PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; AND**

**(2) MEMORANDUM OF POINTS AND AUTHORITIES**

*[Filed concurrently with Declaration of Kamran B. Ahmadian and [Proposed] Order]*

**Date:** February 27, 2026
**Time:** 11:00 a.m.
**Dept:** Courtroom 9D

Case Filed: August 15, 2025

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HON. JOHN W. HOLCOMB AND TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 27, 2026, at 11:00 a.m., or as soon thereafter as the matter may be heard, Defendant The Capital Group Companies, Inc. ("Capital Group" or "Defendant") will and hereby does move for an order dismissing and/or striking Plaintiff Iwan Nyotowidjojo's and Plaintiff Vu Nguyen's (collectively, "Plaintiffs") First Amended Class Action Complaint ("Motion"). This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) on the grounds that Plaintiffs lack Article III standing and 12(b)(6) because the First Amended Complaint otherwise fails to state a claim against Capital Group upon which relief can be granted. Capital Group further seeks the striking of certain allegations in the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f), including Plaintiffs' claim for punitive damages and their class allegations, as impermissibly overbroad and imprecise.

Capital Group bases its Motion on this Notice, the accompanying Memorandum of Points and Authorities and declarations, the pleadings, papers and records on file in this action, and such oral argument as may be presented at the time of the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 23, 2025. (*See* Declaration of Kamran B. Ahmadian, Esq. ("Ahmadian Decl.") ¶¶ 2-3.) Having exhausted all attempts at resolution, Capital Group has proceeded with the filing of this Motion.

Dated: January 23, 2026 **BAKER & HOSTETLER LLP**

By: */s/ Kamran B. Ahmadian*
David H. Stern
Alex E. Spjute
Kamran B. Ahmadian

*Attorneys for Defendant*
THE CAPITAL GROUP COMPANIES, INC.

# TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. LEGAL STANDARD ........ 3

IV. ARGUMENT ........ 4

A. Plaintiffs Lack Concrete Injury to Establish Article III Standing. ........ 4

B. Plaintiffs' Federal Wiretap Act Claim Fails. ........ 8

1. Plaintiffs' Wiretap Act Claim Is Barred By Consent And Cannot Be Saved By The Crime-Tort Exception. ........ 8

2. Capital Group Did Not Intercept The "Contents" Of Plaintiffs' Communications ........ 11

C. Plaintiffs' CIPA Claims Fail For Lack of Scienter ........ 12

D. Plaintiffs' CIPA Section 631(a) Claim Should be Dismissed ........ 13

1. Plaintiffs Cannot Establish a Predicate CIPA Violation ........ 13

2. Plaintiffs' "Aiding And Abetting" Claim Otherwise Fails ........ 16

E. Plaintiffs' CIPA Section 632 Claim Fails ........ 17

F. Plaintiffs Have Not Alleged an Invasion of Privacy Claim ........ 18

G. Plaintiffs' Class Allegations Should Be Stricken ........ 19

H. Plaintiffs' Claim for Punitive Damages Must Be Dismissed ........ 21

V. CONCLUSION ........ 22


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahringer v. LoanDepot, Inc.*,
715 F. Supp. 3d 1274 (C.D. Cal. 2024) .... 19

*Allen v. Cnty. of Sonoma*,
2017 WL 3593340 (N.D. Cal. Aug. 18, 2017) .... 19

*Am. Bankers Mgmt. Co., Inc. v. Heryford*,
885 F.3d 629 (9th Cir. 2018) .... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 4, 21

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .... 4, 21

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
2016 WL 3543699 (S.D. Cal. 2016) .... 21

*Bouncing Angels, Inc. v. Burlington Ins. Co.*,
2017 WL 1294004 (C.D. Cal. Mar. 20, 2017) .... 21, 22

*Byars v. Goodyear Tire and Rubber Co.*,
654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) .... 11

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) .... 17

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) .... 3

*Clausing v. S.F. Unified Sch. Dist.*,
221 Cal. App. 3d 1224 (Cal. Ct. App. 1990) .... 19

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .... 16

*de Ayora v. Inspire Brands, LLC*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) .......... 15

*Diaz v. Bank of Am. Home Loan Servicing, L.P.*,
2011 WL 13046844 (C.D. Cal. July 8, 2011) .......... 22

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 13

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) .......... 8

*Duran v. Maxim Healthcare Servs. Inc.*,
2018 WL 5915644 (C.D. Cal. Mar. 9, 2018) .......... 20

*Esparza v. Gen Digital Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) .......... 15

*Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922, 935 (N.D. Cal. 2015) .......... 12

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017) .......... 8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 16, 18

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 17, 18

*In re Google Generative AI Copyright Litig.*,
2025 WL 1159998 (N.D. Cal. Apr. 21, 2025) .......... 20

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 16

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) .......... 13

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 19

*Hartley v. Urb. Outfitters, Inc.*,
740 F. Supp. 3d 410 (E.D. Pa. 2024) .......... 7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Heiting v. athenahealth, Inc.*,
2024 WL 3761294 (C.D. Cal. July 29, 2024) .......... 16

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 12

*Herzer v. Redstone*,
2018 WL 5094933 (C.D. Cal. July 10, 2018) .......... 12

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024) .......... 7

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 19

*Jones v. Tonal Sys., Inc.*,
2024 WL 4357558 (S.D. Cal. Sept. 30, 2024) .......... 14

*Kamm v. Cal. City Dev. Co.*,
509 F.2d 205 (9th Cir. 1975) .......... 20

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 10

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 7

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012) .......... 12

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 14

*L.B. et al. v. LinkedIn Corporation et al.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) .......... 15

*Lau v. Gen Digit. Inc.*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) .......... 14

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) .......... 14

*Logue v. Curtis Mgmt. Co., Inc.*,
2019 WL 2249981 (S.D. Cal. 2019) .......... 21, 22

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 19

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 3

*Martin v. Cty. of San Diego*,
2011 WL 1775691 (S.D. Cal. 2011) .......... 21

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) .......... 16, 21

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .......... 14

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .......... 8

*Mazur v. eBay Inc.*,
257 F.R.D. 563 (N.D. Cal. 2009) .......... 20

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 12

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 8

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .......... 9

*O'Flynn v. PHH Mortg. Corp.*,
2024 WL 4553116 (S.D. Ind. Oct. 23, 2024) .......... 20

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) .......... 9

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .......... 9

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 4, 5

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 14

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 17

*Rodriguez v. Brushfire Records*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ........ 7

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ........ 5

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ........ 10

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. 2022) ........ 15

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) ........ 10

*Rosenow v. Facebook, Inc.*,
2020 WL 1984062 (S.D. Cal. 2020) ........ 15

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 17

*Sussman v. Am. Broad Cos.*,
186 F.3d 1200, 1202 (9th Cir. 1999) ........ 4

*Torres v. Wells Fargo Bank*,
2018 WL 6137126 (C.D. Cal. Aug. 28, 2018) ........ 20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 4, 5

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. May 28, 2024) ........ 17

*United States v. Bowen*,
127 F.3d 9 (1st Cir. 1997) ........ 10

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 15

*Wazana Bros. Int'l, Inc. v. Int'l Laser Grp., Inc.*,
2013 WL 12124386 (C.D. Cal. Mar. 25, 2013) ........ 4

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010) .......... 21

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 13

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
62 F.4th 517 (9th Cir. 2023) .......... 6

*Yagman v. Allianz Ins.*,
2015 WL 5553460 (C.D. Cal. May 11, 2015) .......... 20

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 18

*Zarif v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025) .......... 10

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 11

**Statutes**

15 U.S.C. § 6802(b) .......... 10

18 U.S.C. § 2510(8) .......... 11

18 U.S.C. § 2511 *et seq.* .......... *passim*

Cal. Civ. Code § 3294(a) .......... 21

Cal. Fin. Code § 4052(f) .......... 10

Cal. Fin. Code § 4053(b)(1) .......... 10

Cal. Penal Code § 20 .......... 12

Cal. Penal Code § 631 *et seq.* .......... *passim*

**Rules**

L.R. 79-5.2.1 .......... 6

**Other Authorities**

California Constitution .......... *passim*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' Iwan Nyotowidjojo and Vu Nguyen (collectively, "Plaintiffs") First Amended Complaint ("FAC") is every bit as defective as their original filing—resting on the same fundamentally flawed theory that Defendant The Capital Group Companies, Inc.'s ("Capital Group" or "Defendant") use of Google Analytics—a ubiquitous and standard website analytics tool—on Defendant's website, www.capitalgroup.com (the "Website") constitutes an illegal wiretap. The FAC reiterates the same deficient allegations that when Plaintiffs visited the Website to manage their employer-sponsored retirement accounts, Capital Group used the Google Analytics cookie ("GA Cookie") to transmit their "nonpublic personal information" to Google without their consent.

But just like the original complaint, the FAC lacks ***any factual details*** about Plaintiffs' visit or interactions with the Website. Both Plaintiff Nyotowidjojo's and newly added Plaintiff Vu Nguyen's claims rest entirely on a single Website visit and provide virtually no factual detail showing that any actionable disclosure of personal information occurred. Even more critically, Plaintiffs still do not allege that *they* suffered any *actual harm* sufficient to establish Article III standing, instead deliberately withholding basic factual details—purportedly for privacy reasons—necessary for alleging a concrete injury and for triggering the Wiretap Act's crime-tort exception. The crime-tort exception is Plaintiffs' only basis for their Wiretap Act claim because the claim otherwise fails under the statute's one-party consent rule.

Plaintiffs' CIPA Section 631(a) claim fails because it rests on an aiding and abetting theory that requires a predicate violation by a third party—here, Google—which Plaintiffs do not plausibly allege. Plaintiffs' CIPA Section 632 and constitutional invasion of privacy claims fail because Plaintiffs do not plausibly allege a reasonable expectation of privacy in their Website interactions, much less a highly offensive intrusion

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

For these reasons, and as explained below, this Court should grant Capital Group's Motion and dismiss the FAC with prejudice. If the FAC is not dismissed in its entirety, the Court should strike Plaintiffs' class under Rule 12(f) because the class definitions are impermissibly broad, vague, and disconnected from the alleged conduct. The Court should also dismiss Plaintiffs' request for punitive damages because the FAC alleges no facts that would support such an award.

## II. BACKGROUND

Capital Group is a privately held holding company for a variety of investment management and financial services companies that provide investment products, risk management, and advisory services to financial professionals and individual investors, including employer-sponsored retirement plans. Capital Group maintains a website, www.capitalgroup.com (the "Website"), where visitors can create and access an online account to manage their retirement and investment accounts. (*See* FAC ¶¶ 36-37.) Plaintiffs allege that Capital Group embeds the Google Analytics cookie ("GA Cookie") on its Website "to assist with its marketing efforts." (*Id.* ¶ 36.) Plaintiffs further allege that when a visitor creates an account or manages their retirement and investment accounts on the Website, Google—through the GA Cookie—collects "nonpublic personal information" such as information "related to their employer-sponsored plan," including their investment decisions. (*Id.* ¶¶ 36-40.)

Plaintiff Nyotowidjojo alleges that "on or around July 2024" he visited the Website and created a "Capital Group account" for his employer sponsored retirement plan.[1] (FAC ¶ 5.) Plaintiff does not allege any facts describing this *lone* visit—he does not allege what pages he viewed, what specific information he entered into the Website, or what (if any) disclosures he may have seen. Plaintiff Nguyen alleges that "on or around August 2025" he visited the Website and created a "Capital

[1] According to Capital Group's internal records, however, Plaintiff's Capital Group employer-sponsored retirement account was closed (and the funds transferred to another institution) ***in July 2024***—over a year before he filed the initial Complaint.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Group account" for his employer sponsored retirement plan. (FAC ¶ 6.) Just like Plaintiff Nyotowidjojo, Plaintiff Nguyen does not allege any facts describing this lone visit—he does not allege what pages he viewed, what specific information he entered into the Website, or what (if any) disclosures he may have seen.

These omissions were purposeful. Plaintiffs admit they excluded factual allegations about their Website interactions—despite them being central to their claims—in order to "protect their privacy." (*Id.* ¶ 5 n.1.) The FAC only identifies *two* vague actions Plaintiffs allegedly took during their respective visits to the Website: they "set [their] contribution limits" and, in general terms, "selected the assets to fund [their] retirement account[s]." (*Id.* ¶¶ 5, 6.) The FAC does not include any facts describing how Plaintiffs completed these tasks—e.g., what pages Plaintiffs viewed, what (if anything) Plaintiffs had to do (either click or input) to make these selections, etc.

Based on these clearly insufficient allegations, Plaintiffs filed this putative class action lawsuit against Capital Group asserting four causes of action: (1) Violation of Electronic Communications Privacy Act ("Wiretap Act"), 18 U.S.C. § 2511; (2) Violation of California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a); (3) Violation of CIPA, Cal. Penal Code § 632; and (4) Invasion of Privacy under California's Constitution. (FAC ¶¶ 83-147.) Plaintiffs seek to represent two patently overbroad classes—a Nationwide Class and California Subclass—of individuals who "managed their retirement or investment account[s] through the Website." (*Id.* ¶ 75.)

## III. LEGAL STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of an action for lack of subject-matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The plaintiff bears the burden of establishing standing under Article III of the Constitution, which requires an "injury in fact" that is both "concrete and particularized" as well as "actual or



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (int. cit. omitted). The injury must be "fairly traceable to the challenged action of the defendant," and it must be likely "that the injury will be redressed by a favorable decision." *Id.* at 560-61.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. *See* Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and ***a formulaic recitation of the elements of a cause of action will not do***." *Id.* (emph. added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To that point, pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" that would be otherwise applicable on a motion to dismiss. *Id.* at 679. Thus, the Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wazana Bros. Int'l, Inc. v. Int'l Laser Grp., Inc.*, 2013 WL 12124386, at *2 (C.D. Cal. Mar. 25, 2013).

## IV. ARGUMENT

### A. Plaintiffs Lack Concrete Injury to Establish Article III Standing.

To establish Article III standing, Plaintiffs must show they "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 426 (2021) ("Article III standing requires a concrete injury even in the context of a statutory violation.") (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016))); *see also Popa v. Microsoft Corp.*, 153 F.4th 784, 793

(9th. Cir. 2025) (confirming *Spokeo* and *Transunion* require "a plaintiff to demonstrate more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury"). The Supreme Court "has rejected the proposition that a plaintiff 'automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion*, 594 U.S. at 426. In other words, "***an injury in law is not an injury in fact***." *Id.* at 427 (emph. added). A harm is "concrete" only if the injury bears a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit. *Id.* at 425. Naked assertions of harm that is "traditionally recognized as providing a basis for American courts," is not enough. *Id.* at 417.

Accordingly, to establish Article III standing in privacy cases, Plaintiffs cannot rely on general and vague privacy injuries or simply assert Capital Group violated a statute designed to protect their substantive privacy rights. *Popa*, 153 F.4th at 792 (finding vague allegations insufficient because it "reverts to a pre-TransUnion . . . approach that favors a legislative body's views in the aggregate over a plaintiff's individual circumstances."). "Rather than propose a 'one-size-fits-all approach' under a 'general right to privacy,' the [Ninth] Circuit explained, the plaintiff must identify 'a harm that [they] experienced that is remotely similar' to the harms protected by the four 'discrete' torts traditionally recognized in American courts." *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *3 (C.D. Cal. Dec. 29, 2025) (quoting *Popa*, 153 F.4th at 792); *see also Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *3 (S.D. Cal. Nov. 3, 2025) ("Instead of pointing to any specific tort, [the plaintiff] broadly contends that any invasion of a statutorily recognized privacy interest is sufficient to constitute an Article III injury. This is not enough."). Here, as in *Popa*, the FAC's sparse allegations do not establish that Plaintiffs suffered ***any injury*** during their visits to the Website, let alone a concrete injury to their substantive privacy rights.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

As an initial matter, Plaintiffs have intentionally withheld relevant facts regarding their "use" of the Website, claiming "privacy" concerns. (FAC ¶ 5 n.1.) This tactic is improper and does not shield them from a pleadings challenge. If Plaintiffs truly believed that specific factual allegations raised privacy issues, their remedy was to seek permission to file the FAC—or the entire action—under seal under Local Rule 79-5.2.1, not to omit essential facts. In any event, Plaintiffs could have easily described their interactions with the Website—such as the types of pages they viewed, whether they made any selections or inputs, and the general categories of information they provided (if any)—without disclosing sensitive data. The Court gave them a second opportunity to supply these details when it permitted the FAC. They again declined to do so. Plaintiffs' refusal to plead these foundational facts undermines the plausibility of their claims and deprives both the Court and Capital Group of the context needed to evaluate whether any alleged disclosure involved information in which Plaintiffs could hold a reasonable expectation of privacy, or whether any alleged disclosure was "highly offensive." *See Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) ("[P]laintiffs must . . . show that they ***personally have been injured***.") (emph. added).

The allegations Plaintiffs *actually include* regarding their Website visits do not establish any concrete injury. (*See* FAC ¶¶ 5-6 ("Plaintiff Nyotowidjojo set his contribution limits and selected the assets to fund his retirement account.") ("Plaintiff Nguyen set his contribution limits and selected the assets to fund his retirement account.").) These statements are both vague and conclusory. They provide no factual context about how Plaintiffs supposedly provided this information—such as which pages they accessed, what inputs they made, or how the Website processed any data. The FAC is devoid of any explanation as to how this information—to the extent it was even collected by Google—could be attributable to Plaintiffs based solely on the information collected on the Website. Plaintiffs further assert—without factual support—that Capital Group intercepted information "related to [their]





BAKER & HOSTETLER LLP ATTORNEYS AT LAW LOS ANGELES

specific retirement or investment decisions." (FAC ¶ 97.) But the FAC fails to describe *how* this alleged interception occurred.

The remaining allegations in the FAC are entirely unrelated to Plaintiffs and their minimal interactions with the Website. Although the FAC includes undated screenshots purportedly showing Website code taken at an *unknown* date and time, by an *unidentified* visitor, they otherwise fail to identify the specific webpage from which the code was allegedly taken or adequately explain what the code signifies. (*See* FAC ¶¶ 66-68.) One screenshot is heavily redacted, with no explanation as to what was removed or why. (*Id.* ¶ 67.) More importantly, Plaintiffs do not allege that the code corresponds to or even resembles *their* interactions with the Website.

Instead, Plaintiffs again rely heavily upon broad generic allegations about Google and the GA Cookie, including how the GA cookie allegedly functions and what data it *might be capable* of collecting. (*See* FAC ¶¶ 41-61, 64, 66-71.) General allegations about what the GA Cookie ***may be capable*** of collecting do not sufficiently establish what the GA Cookie ***actually collected*** from Plaintiffs (if anything) during their visits. Courts routinely reject privacy claims that rely on similar vague, conclusory allegations and fail to connect generalized descriptions of a technology's capabilities to the plaintiff's actual interactions with the website. *See Rodriguez v. Brushfire Records*, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ("Plaintiff's only allegation about her own interactions with defendant's website is that she visited the website in the last year . . . [t]he remainder of the FAC is filled with vague and generalized allegations of the type of data that the Magnite tracking pixel is capable of collecting from website visitors."); *see also, e.g.*, *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (finding allegations too vague to assert protectable privacy interest); *Hartley v. Urb. Outfitters, Inc.*, 740 F. Supp. 3d 410, 422 (E.D. Pa. 2024) ("[A]llegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected."); *Vivint, Inc.*, 2024 WL 5179916, at *4 (finding no standing



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

where plaintiff did not specify the actual information collected and only alleged what information software "could" capture); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (same).

Because Plaintiffs do not allege any concrete harm to their privacy, they fail to satisfy Article III's injury in fact requirement. As such, the Court must dismiss the FAC in its entirety for lack of subject matter jurisdiction. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of Article III standing requires dismissal for lack of subject matter jurisdiction").

**B. <u>Plaintiffs' Federal Wiretap Act Claim Fails.</u>**

To state a claim under the Wiretap Act, Plaintiffs must allege facts showing that Capital Group "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017) (int. quot. omitted). Plaintiffs' Wiretap Act claim must be dismissed for several reasons.

***1. Plaintiffs' Wiretap Act Claim Is Barred By Consent And Cannot Be Saved By The Crime-Tort Exception.***

The Wiretap Act is a one-party-consent statute, meaning it is not unlawful for a person to intercept electronic communications if that person is a party to the communication. 18 U.S.C. § 2511(2)(d). Plaintiffs affirmatively allege that all "communications" were transmitted from Plaintiffs to Capital Group through the Website. (*See* FAC ¶¶ 88–96.) Because Capital Group was a party to the communications it cannot be held liable for intercepting them. *See Am. Bankers Mgmt. Co., Inc. v. Heryford*, 885 F.3d 629, 636 (9th Cir. 2018) (Wiretap Act "allows a private person to record conversations surreptitiously *if one party* to the conversation consents[.]") (emph. added); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 514 (S.D.N.Y. 2001) (finding website owners are parties to the digital communications sent by users of their website).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

To circumvent the statute's single party consent rule, Plaintiffs attempt to invoke the statute's narrow "crime-tort exception," which applies only when a party intercepts a communication "for the purpose of committing [a] criminal or tortious act." 18 U.S.C. § 2511(2)(d). Plaintiffs do not allege that Capital Group had a separate criminal or tortious purpose. Instead, they assert that the exception applies because ***the same alleged interception*** purportedly violated other financial disclosure statutes—the Gramm-Leach-Bliley Act ("GLBA") and California Financial Information Privacy Act ("CalFIPA"). (*See* FAC ¶¶ 100, 141.)

Even assuming such violations were plausibly alleged (which they are not), these allegations fail to meet the requirements of the crime-tort exception. The Ninth Circuit has made clear the crime-tort exception requires a separate unlawful ***purpose***, such as extortion or bribery, that is ***wholly independent from the "act of recording" itself***. *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135-36 (9th Cir. 2022) (emph. added); *Sussman v. Am. Broad Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (explaining that "the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious"). Courts consistently refuse to apply the crime-tort exception where, as here, the complaint alleges no intent to commit harm beyond the alleged "interception" itself. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095-96 (W.D. Wash. 2024) (concluding crime-tort exception did not apply because plaintiff failed to "plead a tortious or criminal use" of communications, "separate from the recording, interception, or transmission"); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1119 (S.D. Cal. 2023) ("[P]laintiffs point to no legal authority providing that the [crime-tort] exception . . . is triggered when, as here, the tortious conduct is the alleged wiretapping itself.").

Further, Plaintiffs have not plausibly alleged that Capital Group violated (or even intended to violate) the GLBA and CalFIPA. (*See* FAC ¶ 101.) Both the GLBA and CalFIPA ***expressly permit*** financial institutions to disclose nonpublic personal



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

information under certain circumstances, including where consumers receive prior notice and an opportunity to opt out. *See* 15 U.S.C. § 6802(b); Cal. Fin. Code § 4053(b)(1). Plaintiffs do not allege any facts about the notices or opt-out opportunities that Capital Group provided—or failed to provide. The GLBA also allows institutions to share nonpublic personal information with nonaffiliated third parties to perform services or functions on the institution's behalf, including marketing its own products. 15 U.S.C. § 6802(b)(2). Plaintiffs' own allegations that their accounts were "employee-sponsored retirement plan[s]" places them entirely outside CalFIPA's scope. (FAC ¶¶ 5–6); *see* Cal. Fin. Code § 4052(f) (participants in employee benefit plans are not "consumers" under CalFIPA). Plaintiffs therefore cannot rely on these statutes to invoke the crime-tort exception.

Plaintiffs further concede that Capital Group used Google's tools for marketing and advertising purposes. (*See* FAC ¶ 141.) Courts routinely hold that financial or commercial motives defeat the crime-tort exception. *See Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *9 (S.D. Cal. Feb. 13, 2025) (citing cases); *see also, Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (finding allegations that Defendant's "motivations were to improve their marketing and advertising efforts" precluded the crime-tort exception); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (concluding crime-tort exception did not apply although plaintiffs alleged defendant "engaged in the allegedly illegal interception of their . . . information" for commercial advantage); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (same); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) (finding exception did not apply where defendant's alleged interceptions were financially motivated).[2]

Because Plaintiffs do not allege that Capital Group intercepted

[2] Furthermore, because the Wiretap Act imposes criminal penalties, it must be construed narrowly. Under the rule of lenity, any ambiguity in the statute must be resolved in Capital Group's favor. *See United States v. Bowen*, 127 F.3d 9, 13-14 (1st Cir. 1997).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

communications for a separate tortious or criminal purpose—or that it used any intercepted information in such a manner—the crime-tort exception does not apply. Plaintiffs' Wiretap Act claim therefore fails as a matter of law and must be dismissed.

### ***2. Capital Group Did Not Intercept The "Contents" Of Plaintiffs' Communications.***

Even assuming *arguendo* that Capital Group could be held liable under the Wiretap Act (it cannot), Plaintiffs' claim still fails because they do not plausibly allege that Google intercepted or received the "contents" of *their communications*. The Wiretap Act defines "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). This excludes non-content or "record" information—such as a user's name, IP address, or browser metadata—which reflects only the characteristics of a communication, not its substance. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014) ("[T]he term 'contents' refers to the intended message conveyed by the communication.").

The FAC alleges no facts showing that anyone intercepted or disclosed the substance or content of Plaintiffs' communications—as opposed to mere metadata or transactional information. *See Byars v. Goodyear Tire and Rubber Co.*, 654 F. Supp. 3d at 1027 (requiring factual allegations that the contents of communications with a website were disclosed). As noted, Plaintiffs assert only that they "set [their] contribution limits" and "selected the assets to fund [their] retirement account[s]" during visits to the Website. (FAC ¶¶ 5–6.) But they provide no detail about how they performed these actions—whether they typed information, clicked buttons, or selected items from menus. The FAC's screenshots, which are not linked to either Plaintiffs or their visit, purport to show data that the GA Cookie *might* transmit to Google. (*Id.* ¶¶ 66–70.) But the information depicted—URLs, HTTP requests, button clicks, and page-navigation data—constitutes record information, not communication contents. *See In re Zynga*, 750 F.3d at 1107 (holding that URLs

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

function like addresses and do not constitute "contents"); *Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015) (finding that URL does not qualify as "contents" because it is nothing more than "record information regarding the characteristics of the message that is generated in the course of the communication") (cit. omitted); *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (holding that "button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, [and] page navigation" are record information, not contents).

For these reasons, Plaintiffs' Wiretap Act claim fails as a matter of law and should be dismissed with prejudice.[3]

### C. Plaintiffs' CIPA Claims Fail For Lack of Scienter.

Because CIPA is a criminal statute, Plaintiffs must plead scienter. *See* Cal. Penal Code § 20 ("In every crime or public offense there must exist a union, or joint operation of act and intent"). Like the crime-tort exception in the Wiretap Act, both Sections 631(a) and 632 require Plaintiffs to show that Capital Group installed the GA Cookie ***with knowledge and intent that*** it would read or eavesdrop on Website visitors.

Plaintiffs allege no facts—and cannot allege any—showing that Capital Group acted with such intent or knowledge. Their failure to plead the requisite scienter is dispositive. *See, e.g.*, *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (dismissing CIPA complaint where plaintiff did "not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet [a third party's] purported CIPA violation."). Without factual allegations showing

[3]To the extent Plaintiffs base their Wiretap Act claim on the theory that Capital Group "procured" Google's alleged interception, the claim fails as a matter of law. The Wiretap Act does not impose secondary liability for procurement, and courts consistently hold that civil liability applies only to the party that actually intercepts, discloses, or uses the communication. *See, e.g.*, *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246–47 (10th Cir. 2012); *Herzer v. Redstone*, 2018 WL 5094933, at *7 (C.D. Cal. July 10, 2018) (agreeing "that secondary liability is not recognized under the [Wiretap Act]" and finding plaintiff had failed to state a claim).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

the required criminal intent, Plaintiffs' theory of liability collapses and the Court must dismiss the claim with prejudice. *See, e.g.*, *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024) ("CIPA liability only extends to willful or intentional conduct, so even if some private health information is inadvertently sent to Google—and subsequently gets integrated into the reports—the plaintiffs fail to plausibly allege Google is intentionally reading or learning the contents of the plaintiffs' private health communications.").

**D. Plaintiffs' CIPA Section 631(a) Claim Should be Dismissed.**

California Penal Code Section 631(a) prohibits a defendant from engaging in one of three activities: (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," or (3) using or "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." Cal. Penal Code § 631(a). Section 631(a) also includes a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability." *Id.* Plaintiffs appear to assert their CIPA wiretapping claim under the fourth aiding and abetting prong. (*See* FAC ¶ 115.) To establish liability under this theory, Plaintiffs must first plausibly allege that a third party (Google) committed an underlying violation of one of the first three clauses of § 631(a). *See Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (an aiding-and-abetting defendant's liability is "based entirely on whether [a third party] violated Section 631(a) in some way."). Here, Plaintiffs fail to allege a predicate violation under Section 631(a).

***1. Plaintiffs Cannot Establish a Predicate CIPA Violation.***

Plaintiffs cannot assert a predicate violation of Clause One because it does not apply to internet connections—only telephones and telegraphs. *See Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (affirming summary judgment where no evidence the defendant "made an unauthorized connection





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

through a telephone wire"); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1104 (C.D. Cal. 2023) ("Courts have consistently interpreted this clause as applying only to communications over telephones and not through the internet.") (citing cases). The cases Plaintiffs cite in their FAC as applying Section 631(a) to "new technologies" (FAC ¶ 110), interpret only Clause Two—not Clause One. *See, e.g.*, *Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016).

The second clause of Section 631(a) applies only when a third party "***reads, or attempts to read, or to learn the contents*** or meaning of any message, report, or communication while the same ***is in transit***." *Jones v. Tonal Sys., Inc.*, 2024 WL 4357558, at *4 (S.D. Cal. Sept. 30, 2024) (emph. added); *see also Lau v. Gen Digit. Inc.*, 2024 WL 1880161, at *1 (N.D. Cal. Apr. 3, 2024) (wiretapping concerns "the unauthorized *interception* of communications, not any subsequent storage and/or use") (emph. in original). In other words, Plaintiffs must plead that a third party (1) read or learned the contents of their communications, and (2) did so while those communications were en route to their intended destination. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Plaintiffs plead neither element.

For the same reasons Plaintiffs fail to plausibly allege that anyone intercepted or disclosed the contents of their communications under the Wiretap Act (*see* § IV.B.2), they likewise fail to satisfy the "contents" requirement under CIPA. *See R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (analysis for "contents" same under both CIPA and Wiretap Act).

Even if Plaintiffs had alleged content—which they have not—they still fail to plausibly allege that any interception occurred while the communication was in transit. The Ninth Circuit holds that interception under § 631(a) requires acquisition *during transmission*. *See Konop*, 302 F.3d at 878 ("This conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'"). The FAC contains no facts explaining how Google acquired, let alone read or attempted to read, any "communication" *during*





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*transmission*. Instead, Plaintiffs rely on generic descriptions of how websites might intercept information and offer conclusory assertions about instantaneous interception. (*See* FAC ¶¶ 41-46, 98-99, 116.) Courts uniformly reject such boilerplate allegations. *See, e.g.*, *de Ayora v. Inspire Brands, Inc.,* 2025 WL 3707561 at *7 (N.D. Cal. Dec. 22, 2025) ("Plaintiffs' mere assertion that Defendants or third parties acquire the communications contemporaneously, without factual support, is insufficient to survive Defendants' motion to dismiss); *Rodriguez v. Google LLC*, 2022 WL 214552, at *1–2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit."); *Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (dismissing wiretap claim where allegations of interception "in transit" were conclusory); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing wiretap claim where "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'" was supported by "vague allegations about how Vizio's data collection occurs in real-time.").

In fact, Plaintiffs' own allegations foreclose any claim of interception in transit. They allege that Google's code collects data, *then* packages it and sends it to Google Analytics for later processing (FAC ¶ 56), and that Google uses the data to generate reports *after* the data has been processed and stored (FAC ¶ 57). These allegations concede that any data is stored before Google analyzes it—defeating any theory of contemporaneous interception. *See, e.g.*, *L.B. et al. v. LinkedIn Corporation et al.*, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) ("To meet the 'in transit' requirement, Plaintiffs must allege that LinkedIn read their communications during their transmission, as opposed to once the communications were placed in electronic storage."); *see also Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) (dismissing CIPA claims where "Plaintiff fail[ed] to allege specific facts about . . . when [and how] the interception took place").

Because Plaintiffs fail to allege a violation of either Clause One or Clause Two, their derivative aiding-and-abetting theory under Clause Three also fails. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024) (plaintiffs who fail to plead a violation under the first two clauses cannot establish a violation of the third). Plaintiffs have not alleged any predicate violation by the supposed third-party eavesdropper (Google), so their aiding-and-abetting claim against Capital Group necessarily fails. The Court should dismiss Plaintiffs' § 631(a) claim with prejudice.

***2. Plaintiffs' "Aiding And Abetting" Claim Otherwise Fails.***

Like the Wiretap Act, CIPA includes an exemption for any person who is a "party" to the communication. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). Courts routinely extend this exemption to software vendors. *See, e.g.*, *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (holding third-party vendor is "an extension of the company"). As the Court explained in *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021), "a vendor provides a software service that captures its clients' data, hosts it on [the vendor's] servers, and allows the clients to analyze their data" is simply "an extension" of the "client" and therefore "not a third-party eavesdropper" subject to liability under the CIPA. Put simply, a company does not "eavesdrop" under § 631(a) when it uses a website vendor that serves as its tool, agent, or extension. *Id.* at 832.

To overcome this exemption, plaintiffs must allege specific, non-conclusory facts showing that the vendor acted independently and used the data for its own purposes. *See Heiting v. athenahealth, Inc.*, 2024 WL 3761294, at 4 (C.D. Cal. July 29, 2024) (rejecting allegations as "too general and conclusory" to support a reasonable inference that the third party used communications for anything other than providing services to the defendant). Plaintiffs offer only a vague assertion that Google could use data for targeted marketing, which does not plausibly show that Google acted as a third-party eavesdropper rather than as Capital Group's tool or



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

service provider.

Because Plaintiffs fail to plead facts that overcome the party-exemption doctrine, their derivative CIPA claim fails.

### E. <u>Plaintiffs' CIPA Section 632 Claim Fails.</u>

To state a claim under § 632, Plaintiffs must allege: (1) an electronic recording of (2) a confidential communication (3) without the consent of all parties. *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1177-78 (N.D. Cal. May 28, 2024). Plaintiffs fail on multiple grounds.

<u>First</u>, as outlined above, Plaintiffs do not plead facts establishing derivative liability against Capital Group. They allege no facts—let alone facts supporting a plausible inference—that Capital Group knew of or intended to substantially assist any conduct by Google that violated § 632. *See Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 944 (N.D. Cal. 2024) (dismissing § 632 claim where plaintiff failed to allege the defendant had "knowledge of [the vendor's] conduct ***violating the statute***, let alone . . . intent or purpose of aiding it substantially") (emph. added) (dismissing § 632 claim).

<u>Second</u>, Plaintiffs fail to plausibly allege that any communication on the Website was "confidential." A communication qualifies as "confidential" under § 632 only if a party had an "objectively reasonable expectation that the conversation is not being overheard or recorded." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) (quoting *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117 n.7 (2006)). California courts, however, apply a "presumption that ***Internet communications do not*** reasonably give rise to that expectation." *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (emph. added); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632 . . . ."). Plaintiffs' vague and limited allegations provide no basis to depart from this well-established rule.

Because Plaintiffs fail to plead facts showing either confidential communications or derivative liability, their § 632 claim cannot stand. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 828 (dismissing § 632 claim where plaintiff failed to adequately plead confidentiality). The Court should dismiss Plaintiffs' § 632 claim with prejudice.

**F. Plaintiffs Have Not Alleged an Invasion of Privacy Claim.**

To state a claim for constitutional invasion of privacy under California law, "Plaintiffs must show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is so serious . . . as to constitute an egregious breach of the social norms such that the breach is highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601. Courts recognize that, "[t]he California Constitution [and the common law] set[] a high bar for an invasion of privacy claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014). Plaintiffs fail to meet that standard for multiple reasons.

First, Plaintiffs rely on the GLBA and CalFIPA to argue they had a reasonable expectation of privacy in unspecified "nonpublic personal information" they allegedly provided through Capital Group's Website. (FAC ¶¶ 21–35.) But those statutes define "nonpublic personal information" narrowly as ***personally identifiable*** financial information. (*Id.* ¶¶ 22–23.) The FAC contains no facts showing that Google collected financial information that could be linked to Plaintiffs. Calling data "nonpublic personal information" does not make it so. As discussed, Plaintiffs deliberately avoid identifying *what specific information* they provided or how they provided it. Without pleading what information was at issue and the manner in which they disclosed it, Plaintiffs cannot plausibly claim a reasonable expectation of privacy. Even assuming Google collected Plaintiffs' "contribution limits" or "assets" selected during a Website visit (FAC ¶¶ 5-6), the FAC never alleges that this information—standing alone—was personally attributable to either Plaintiff. Thus, Plaintiffs fail to plead a reasonable expectation of privacy.





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Second, even if Plaintiffs had pleaded such an expectation, their claim still fails because they do not allege any intrusion that is "highly offensive." Courts consistently hold that routine data collection and disclosure to service providers does not constitute an egregious breach of social norms. *See, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022), *aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024) (collecting sensitive data from smartphone applications not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (no egregious breach even "assuming [the] information was transmitted ***without Plaintiffs' knowledge and consent***") (emph. added). Courts also hold that the "routine collection of personally identifiable information as part of electronic communications is generally insufficient" to meet the high offensiveness standard. *Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274, 1283 (C.D. Cal. 2024) (internal citations omitted). Indeed, even the disclosure of highly sensitive information—such as social security numbers—has been found insufficiently egregious. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Given the FAC's sparse and vague allegations, Plaintiffs cannot plausibly claim that anything collected during their Website visits qualifies as "highly offensive."

Third, Plaintiffs' request for monetary damages under Article I, Section 1 of the California Constitution fails as a matter of law. (FAC ¶ 144.) California courts have long held that this provision does not support a private right of action for damages—only injunctive relief is available. *See, e.g.*, *Clausing v. S.F. Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1238 (1990); *Allen v. Cnty. of Sonoma*, 2017 WL 3593340, at *5 (N.D. Cal. Aug. 18, 2017) (granting motion to dismiss California constitutional privacy claim for lack of damages remedy). This independent defect requires dismissal.

### G. Plaintiffs' Class Allegations Should Be Stricken.

Under Rule 12(f), a court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

12(f); *see Yagman v. Allianz Ins.*, 2015 WL 5553460, at *4 (C.D. Cal. May 11, 2015). This Court has the inherent authority to dismiss or strike improper or legally insufficient class allegations. *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975). When the face of a complaint shows a class action cannot be maintained, a defendant may move to strike class allegations before discovery. *See Yagman*, 2015 WL 5553460, at *4 (dismissing class allegations where the face of the complaint shows conclusively that the proposed class cannot be certified); *Torres v. Wells Fargo Bank*, 2018 WL 6137126, at *2 (C.D. Cal. Aug. 28, 2018) ("Class allegations can be stricken at the pleading stage."); *see also Duran v. Maxim Healthcare Servs. Inc.*, 2018 WL 5915644, at *7 (C.D. Cal. Mar. 9, 2018) (dismissing "Plaintiffs' class allegations on the grounds that they are not plausibly alleged, as they are imprecise, overbroad, and unascertainable"). Plaintiffs' nationwide class and California subclass definitions suffer from those same defects and should be stricken (or dismissed).

First, the nationwide class fails because Plaintiffs' only federal claim—the Wiretap Act claim—fails as a matter of law and should be dismissed with prejudice.

Second, the class definitions are overbroad and imprecise in that they fail to define the class period, instead encompassing all natural persons who accessed accounts through the Website "during the class period." (FAC ¶ 75.) As such, Plaintiffs' putative class allegations, which are derived from the impermissibly vague, overbroad, and imprecise class definitions, should be stricken from the Complaint. *See, e.g.*, *O'Flynn v. PHH Mortg. Corp.*, 2024 WL 4553116, at *12 (S.D. Ind. Oct. 23, 2024) (noting class definitions must "identify a particular group, harmed during a particular time frame, in a particular location, in a particular way.") (quoting *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 659 (7th Cir. 2015)); *accord Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) ("Because the class [] would include [unharmed people], this portion of the class definition is both imprecise and overbroad."); *In re Google Generative AI Copyright Litig.*, 2025 WL 1159998, at *3

(N.D. Cal. Apr. 21, 2025) ("Because Plaintiffs' fail-safe class definition is defective as a matter of law, it is appropriate to strike it at the pleading stage.").

### H. Plaintiffs' Claim for Punitive Damages Must Be Dismissed.

If any portion of the FAC survives dismissal, the Court should still dismiss or strike Plaintiffs' request for punitive damages. (*See* FAC, Prayer for Relief.) CIPA does not explicitly authorize punitive damages, and courts have repeatedly recognized the absence of any authority awarding them. *See Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *10 (S.D. Cal. 2016) (acknowledging lack of authority and dismissing punitive damages under CIPA); *Sephora USA, Inc.*, 2023 WL 2717636, at *17 n.13 ("[T]he Court's independent research, appears to support a finding that ***punitive damages are unavailable*** for violations of CIPA.") (emph. added). Because the statute does not provide for punitive damages, Plaintiffs cannot recover them on their CIPA claims.

To the extent Plaintiffs seek punitive damages for any remaining causes of action, they likewise fail to plead a plausible basis under California law. Rule 12(b)(6) is the proper mechanism for dismissing an improper request for punitive damages. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010). Where the basis of a request to strike punitive damages is the lack of factual allegations to support such a claim, the "proper medium for challenging the sufficiency of factual allegations in a complaint is through Rule 12(b)(6) not Rule 12(f)." *Martin v. Cty. of San Diego*, 2011 WL 1775691, at *5 (S.D. Cal. 2011).

Oppressive, fraudulent, or malicious conduct is a *prerequisite* for any punitive damages claim. *See* Cal. Civ. Code § 3294(a) (emphasis added). In the wake of *Twombly* and *Iqbal*, conclusory allegations of malice, fraud, or oppression are insufficient to state a prayer for punitive damages. *Bouncing Angels, Inc. v. Burlington Ins. Co.*, 2017 WL 1294004, at *4 (C.D. Cal. Mar. 20, 2017); *Logue v. Curtis Mgmt. Co., Inc.*, 2019 WL 2249981, at *3 (S.D. Cal. 2019) ("The bare conclusory assertion that Defendants acted 'intentionally and recklessly' is

insufficient."). Here, Plaintiffs fail to even offer conclusory allegations to support a claim for punitive damages. In fact, the words "malice", "fraud", or "oppression" are not used once in the FAC.

Because Plaintiffs plead no facts that could entitle them to punitive damages, their punitive-damages request must be dismissed. *See Bouncing Angels, Inc.*, 2017 WL 1294004 at *4; *Logue*, 2019 WL 2249981 at *3; *Diaz v. Bank of Am. Home Loan Servicing, L.P.*, 2011 WL 13046844, at *5 (C.D. Cal. July 8, 2011) (rejecting Plaintiff's conclusory allegations that defendants were "reckless, willful and wanton," where Plaintiff failed to allege any facts in support).

## V. CONCLUSION

For all of the foregoing reasons, Capital Group respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety with prejudice.

Dated: January 23, 2026 **BAKER & HOSTETLER LLP**

By: */s/ Kamran B. Ahmadian*
David H. Stern
Alex E. Spjute
Kamran B. Ahmadian

*Attorneys for Defendant*
THE CAPITAL GROUP COMPANIES, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES