**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

IWAN NYOTOWIDJOJO and VU NGUYEN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

THE CAPITAL GROUP COMPANIES, INC.,

Defendant.

Case No. 8:25-cv-01816-JWH-JDE

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE THE FIRST AMENDED CLASS ACTION COMPLAINT**

Date: February 27, 2026
Time: 11:00 a.m.
Ctrm: 9D
Judge: Hon. John W. Holcomb

# TABLE OF CONTENTS

PAGE

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................. 2

I. PLAINTIFFS HAVE ESTABLISHED ARTICLE III STANDING ................ 2

A. Plaintiffs Suffered A Concrete Injury When Defendant Unlawfully Disclosed Their Private Financial Information .................. 2

B. Plaintiffs' Factual Allegations Of Their Harms Are Sufficient Under Fed. R. Civ. P. 8 ........................................................ 6

II. PLAINTIFFS STATE A CLAIM UNDER THE FEDERAL WIRETAP ACT .................................................................................................... 8

A. Defendant Intercepted Plaintiffs' Communications For A Criminal Or Tortious Purpose ................................................................ 8

B. Defendant Intercepted The Contents Of Plaintiffs' Communications ........................................................................... 12

III. PLAINTIFFS STATE A CLAIM UNDER CIPA § 631 AND § 632 ............ 14

A. Defendant's Conduct Was Intentional ............................................... 14

B. Plaintiffs State A CIPA § 631 Claim .................................................. 15

1. Plaintiffs Established A Predicate CIPA § 631(a) Claim ..................................................................................... 16

2. Plaintiffs Sufficiently Allege Defendant Aided Google ............................................................................................ 18

C. Plaintiffs State A CIPA § 632 Claim .................................................. 19

IV. PLAINTIFFS STATE A CLAIM FOR INVASION OF PRIVACY ............. 20

V. DEFENDANT'S ATTEMPT TO STRIKE CLASS ALLEGATIONS IS PREMATURE AND DISFAVORED ......................................................... 23

VI. PLAINTIFFS STATE A CLAIM FOR PUNITIVE DAMAGES .................. 24

CONCLUSION .......................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274 (C.D. Cal. 2024) ..... 21, 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..... 6

*AV Builder Corp. v. Houston Cas. Co.*, 2021 WL 9474017 (S.D. Cal. Apr. 28, 2021) ..... 25

*Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075 (S.D. Cal. 2023) ..... 24

*Bergstein v. Parmar*, 2014 WL 12586073 (C.D. Cal. June 23, 2014) ..... 15

*Bernstein v. United Collection Bureau, Inc.*, 2013 WL 5945056 (S.D. Cal. Nov. 5, 2013) ..... 20

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) ..... 12, 14, 16, 24

*Brown v. DIRECTV, LLC*, 2014 WL 12599363 (C.D. Cal. May 27, 2014) ..... 23

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) ..... 11

*Brown v. Google, LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ..... 19

*Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020 (C.D. Cal. 2023) ..... 6, 17

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) ..... 3

*Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016 (S.D. Cal. 2000) ..... 24, 25

*Conohan v. Rad Power Bikes Inc.*,
2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) ... 15

*Cooper v. Mount Sinai Health Sys., Inc.*,
2024 WL 3586357 (S.D.N.Y. July 30, 2024) ... 12

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ... 7

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ... 7, 17

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ... 4

*DellaSala v. Samba TV, Inc.*,
2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) ... 4

*Dep't of Just. v. Reporters Comm. for Freedom of Press*,
489 U.S. 749 (1989) ... 3

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ... 11

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ... 3

*Esparza v. Gen Digital Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) ... 18

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) ... 21

*Ewing v. Flora*,
2015 WL 12564225 (S.D. Cal. Mar. 25, 2015) ... 20

*Fernandez v. CoreLogic Credco, LLC.*,
593 F. Supp. 3d 974 (S.D. Cal. 2022) ... 24

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ... 3

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Jan. 30, 2025) ... 6, 7

*Garcia v. Build.com, Inc.*,
2023 WL 4535531 (S.D. Cal. July 13, 2023) .......... 3

*Gladstone v. Amazon Web. Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) .......... 20

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 3

*Guardant Health, Inc. v. Natera, Inc.*,
580 F. Supp. 3d 691 (N.D. Cal. 2022) .......... 23

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. July 18, 2022) .......... 22

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) .......... 23

*Hartley v. Urb. Outfitters, Inc.*,
740 F. Supp. 3d 410 (E.D. Pa. 2024) .......... 8

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 18

*Hernandez v. Hillsides, Inc.*,
211 P.3d 1063 (2009) .......... 23

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024) .......... 8

*Hughes v. Vivint, Inc.*,
2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) .......... 8

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 13, 17

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... passim

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 14, 15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 22

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................11, 12, 19

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ....................13, 14

*In re Trilegiant Corp., Inc.*,
11 F. Supp. 3d 132 (D. Conn. 2014) ....................12

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)....................21

*India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024)....................22

*Iniguez v. The CBE Grp.*,
969 F. Supp. 2d 1241 (E.D. Cal. 2013)....................23

*Jacobson v. Schwarzenegger*,
357 F. Supp. 2d 1198 (C.D. Cal. 2004)....................10

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ....................3, 13

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ....................18, 24

*Kane v. University of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024)....................12

*Katzberg v. Regents of Univ. of California*,
58 P.3d 339 (2002)....................23

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ....................8

*Kurowski v. Rush Sys. for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023)....................12

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025)....................17

*Lomeli v. Jackson Hewitt, Inc.*,
2018 WL 1010268 (C.D. Cal. Feb. 20, 2018)....................23

*Lonegan v. Hasty*,
436 F. Supp. 2d 419 (E.D.N.Y. 2006)............12

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012)............22

*Marden v. LMND Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024)............11

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D. Cal. Mar. 30, 2023)............18

*Mawardi v. Equilon Enters., LLC*,
34 F. App'x 533 (9th Cir. 2002)............24

*Mekhail v. N. Mem'l Health Care*,
2024 WL 1332260 (D. Minn. Mar. 28, 2024)............12

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023)............8

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024)............19

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)............4, 5

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)............10, 11, 15, 19

*R.S. v. Prime Healthcare Srvs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025)............10

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025)............11

*Robinson v. Managed Accounts Receivables Corp.*,
654 F. Supp. 2d 1051 (C.D. Cal. 2009)............24

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025)............6

*Rodriguez v. Brushfire Records*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025)............8

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) .......... 5

*S.D. v. Hytto Ltd.*,
2019 WL 8333519 (N.D. Cal. May 15, 2019) .......... 15

*Selby v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) .......... 5

*Shah v. Capital One Financial Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... passim

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......... 8, 19

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 21

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 9

*Tavernetti v. Superior Ct.*,
22 Cal. 3d 187 (1978) .......... 15

*Taylor v. ConverseNow Techs., Inc.*,
2025 WL 2308483 (N.D. Cal. Aug. 11, 2025) .......... 14

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 4

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 7, 17

*Washington Env't Council v. Bellon*,
732 F.3d 1131 (9th Cir. 2013) .......... 6

*WhatsApp Inc. v. NSO Grp. Techs., Ltd.*,
472 F. Supp. 3d 649 (N.D. Cal. 2020) .......... 15

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 18

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) .......... 7

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ............ 12, 13

**STATUTES**

15 U.S.C. § 6802(b) ............ 9

18 U.S.C. § 2511 ............ 1, 9

Cal. Const., Article I, Section 1 ............ 22

Cal. Fin. Code § 4050 ............ 2

Cal. Fin. Code § 4051 ............ 1, 10, 15

Cal. Fin. Code § 4053(b)(1) ............ 9

**RULES**

Fed. R. Civ. P. 8 ............ 6, 25

Fed. R. Civ. P. 9(b) ............ 25

**REGULATIONS**

16 C.F.R. § 313 ............ 1, 2, 15

## INTRODUCTION

Congress and the California legislature recognize the importance of maintaining the privacy of consumers' sensitive personal and financial information when applying for financial products and services. *See* 16 C.F.R. § 313; Cal. Fin. Code § 4051. California courts have refused to dismiss cases where, as here, consumers seek to enforce these protections. *See Shah v. Capital One Financial Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) (finding that the defendant financial institution violated the Electronic Communications Privacy Act, 18 U.S.C. 2511, *et seq*. ("ECPA") and the California Invasion of Privacy Act ("CIPA") §§ 631 and 632 by intercepting and unlawfully disclosing the plaintiffs' personal and financial information). The Capital Group Companies, Inc. ("Defendant") unlawfully intercepts and discloses its consumers' personal and financial information to a third party when consumers manage their financial accounts on www.capitalgroup.com (the "Website"). Such disclosures are not made for the benefit of consumers, but rather, for the benefit of Defendant and Google.

Plaintiff Nyotowidjojo is a resident of California and managed the funding of his employment sponsored retirement account on Defendant's Website. First Amended Class Action Complaint ¶ 5 (ECF No. 22) ("FAC"). Plaintiff Nguyen is a resident of California who also managed the funding of his employment sponsored retirement account on Defendant's Website. FAC ¶ 6. Unbeknownst to Plaintiffs, the confidential information they provided on the Website, including their contribution limits and asset selections, were intercepted by Defendant through its use of Google, LLC's ("Google") tracking pixel and SDK, and simultaneously disclosed to Google. *Id.* ¶¶ 5-8. This included private information related to Plaintiffs' identity and financial investment decisions. *Id.* ¶¶ 1-3, 66-71. These disclosures were not made to provide Plaintiffs with services but instead to bombard them with harassing targeted advertising. *Id.* ¶¶ 71, 74, 97. Defendant's conduct violates state and federal law.

When Defendant enabled Google to illegally intercept users' communications in violation of the CIPA and the ECPA, it enabled a third party to collect and use their private information, thus depriving users of the right to control same. FAC ¶¶ 1-3, 5-7, 58-59, 62-74. Defendant's conduct here was not an accident. Defendant deliberately employed Google to bolster its advertising revenue by allowing it to harvest information, build robust consumer profiles, and enable advertisers like Defendant to better target users for advertising purposes. *See id.* ¶¶ 7, 58, 73. The Ninth Circuit recognized the harm this conduct caused five years ago (*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020)), and that harm has only been amplified by the confidential nature of the financial information at issue here.

Rather than cure its privacy violations, Defendant moves to dismiss Plaintiffs' First Amended Complaint. *See* Defendant's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (ECF No. 23) ("Motion" or "MTD"). However, Defendant's arguments—all of which are nearly identical to those made in its first motion to dismiss—are without merit. Defendant's Motion should be denied.

## ARGUMENT

## I. PLAINTIFFS HAVE ESTABLISHED ARTICLE III STANDING

### A. Plaintiffs Suffered A Concrete Injury When Defendant Unlawfully Disclosed Their Private Financial Information

Defendant briefly argues that Plaintiffs lack standing because they "do not establish that [they] suffered ***any injury*** during their visits to the Website, let alone a concrete injury to their substantive privacy rights." MTD at 5 (emphasis in original). That is wrong.

Under state and federal law, financial service providers—including Defendant—are prohibited from disclosing nonpublic personal information to third parties. 16 C.F.R. § 313.3; Cal. Fin. Code § 4050, *et seq*. Courts have long recognized that consumers who have had their private information disclosed in violation of a privacy statute (including the CIPA) have suffered concrete harms actionable under law. *In re Facebook Internet Tracking Litig.*, 956 F.3d at 598 (violations of privacy

rights have long been actionable at common law and "encompass[] the individual's control of information concerning his or her person") (cleaned up); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117-19 (9th Cir. 2020) (The harms protected by [the ECPA and CIPA] bear a close relationship to ones that have traditionally been regarded as providing a basis for a lawsuit. . . and one of the several privacy torts historically recognized was unreasonable intrusion upon the seclusion of another.") (internal citations omitted); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023) (finding that "intrusions into privacy can constitute injury in fact"); *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *3 (S.D. Cal. July 13, 2023) ("Plaintiff responds that a CIPA violation is a violation of privacy rights and is a sufficiently concrete injury-in-fact. The Court agrees.").

This is because privacy statutes codify the common law right to privacy. "The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others." *Dep't of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763 n.15 (1989). To that end, the "right to privacy encompasses the individual's control of information concerning his or her person." *In re Facebook Internet Tracking Litig.*, 956 F.3d at 598 (cleaned up). And it is this privacy right that Defendant deprived Plaintiffs of by causing their private financial information to be intercepted by Google without their consent. *See Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 580 (N.D. Cal. 2025) ("Put in terms of standing, the loss of control over one's personal information is the 'concrete' harm, whether from stealing access to a personal diary in 1916 or obtaining user information in a healthcare app in 2016."); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 949 (N.D. Cal. 2023), *cert. denied*, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) (same). Indeed, "privacy torts do not always require additional consequences to be actionable." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017). For instance, in the tort of intrusion upon seclusion, "the intrusion itself makes the defendant liable." *Id.*

Here, Plaintiffs clearly allege a concrete harm that "bears a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit." MTD at 5 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)). Plaintiffs do not allege an injury stemming from a bare statutory violation, as Defendant claims. Rather, Plaintiffs specifically allege that they "managed their retirement accounts" through Defendant's Website, where they "set [] contribution limits and selected the assets to fund [their] retirement account." FAC ¶¶ 5-7. However, "[u]nbeknownst to Plaintiffs, Defendant disclosed their personally identifiable information ('PII') to Google—including communications that contained Plaintiffs' confidential, 'nonpublic personal information' as defined by the GLBA and CalFIPA. Neither Defendant nor Google procured Plaintiff's prior consent to share their private and protected information." *Id.* ¶ 8. Such disclosures were not made to facilitate their loan applications, but rather, were made for the purposes of targeted advertising without Plaintiffs' consent. *See id.* ¶¶ 64, 71, 97. Defendant deprived Plaintiffs of their right to control their private financial information, which "gives rise to a concrete injury sufficient to confer standing." *In re Facebook*, 956 F.3d at 598.

None of the aforementioned arguments are affected by *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), which did not disturb pre-existing Article III standing jurisprudence. *See DellaSala v. Samba TV, Inc.*, 2025 WL 3034069, at *2 (N.D. Cal. Oct. 30, 2025) ("*Popa* did not set forth a new rule of law…"); *see also Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *4 (C.D. Cal. Dec. 29, 2025) (explaining that "*Popa* did not disturb" prior Ninth Circuit caselaw). *Popa* simply reaffirmed the principle that "the violation of a statute" alone is not sufficient "to confer Article III standing." *Popa*, 153 F.4th at 792-93. But as noted below, *Popa* involved <u>anonymous</u> information that was used for technical troubleshooting. Thus, while the plaintiff in *Popa* claimed her privacy was invaded, she could not tie that invasion to any specific privacy harm that was actionable at common law. Here, Plaintiffs' allegations are

distinguishable because Defendant disclosed Plaintiffs' private financial information in an identifiable manner for targeted advertising purposes.

"The scope of the alleged tracking in this case is materially more invasive than the limited tracking at issue in" *Popa*. *Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *3 n.3 (N.D. Cal. Oct. 17, 2025). *Popa* involved "the tracking of plaintiff's non-sensitive interactions with a single website." *Id.* And all the information in *Popa* was anonymous because the website had configured the third party software to exclude the user's "street number and zip code." *Popa*, 153 F.4th at 787, 787 n.1. In addition, the only thing the third party did with the information in *Popa* was tell websites "which elements of a website have high user engagement, how far website users scrolled on the website, and the total clicks within a given area on the website." *Id.* at 786 (cleaned up). So, *Popa* boiled down to a third party collecting anonymous information that was used in a manner akin to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.* at 791. Unlike here, there was no linkage of personal information, such as the Plaintiffs' full legal name, date of birth, and gender (FAC ¶ 7), to non-anonymous financial account profiles, no sale of that information to advertisers, and no loss of control of personal information because personal information was not captured in *Popa*.

The remaining authority relied upon by Defendant is inapposite, as it also does not concern the disclosure of sensitive and protected information. *See Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *7-8 (S.D. Cal. Nov. 3, 2025) (dismissing case for lacking standing in part because the court found the plaintiff lacked a privacy interest in non-sensitive data such as her IP address, customer and/or loyalty IDs, cookies, device signature, etc.).

### B. Plaintiffs' Factual Allegations Of Their Harms Are Sufficient Under Fed. R. Civ. P. 8

Defendant next contends that Plaintiffs' allegations fail to establish a concrete injury to their substantive privacy rights because it claims that the FAC "is devoid of any explanation as to how [Plaintiffs' financial] information . . . could be attributable to Plaintiffs based solely on the information collected on the Website." MTD at 6. This argument both ignores Plaintiffs' allegations and overstates their burden at the pleadings stage. Plaintiffs' complaint contains sufficient detail to put Defendant on notice as to Plaintiffs' claims.

The Federal Rules require that a complaint contain a "short and plain statement" of the facts showing that "the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quotation omitted). Courts "must accept the allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 925 (C.D. Cal. 2025) (quotation omitted). At the pleadings stage, plaintiffs' "general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing. *Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, at *2 (C.D. Cal. Jan. 30, 2025) (cleaned up); *see also Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) ("Moreover, there is no requirement that Byars specifically allege the exact contents of her communications with Goodyear."). It is not until summary judgment where a plaintiff must set forth more specific proof of injury. *See Washington Env't Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013).

Defendant's attempt to label Plaintiffs' First Amended Complaint as "vague and conclusory" fails for this reason. MTD at 6. Plaintiffs allege that Defendant utilized Google's pixel and SDK to share its account users' protected information, <u>including information related to the specific employer-sponsored account being accessed, their contribution rates, and the specific investments they select</u>. FAC ¶¶ 3, 5-7, 95-96 (emphasis added). These allegations clearly define Plaintiffs' activity within their

private investment accounts, which included "set[ting] [their] contribution limits and select[ing] the assets to fund [their] retirement account." *Id.* ¶¶ 5-6. Plaintiffs further describe how Google matches this data to its own account holders. *Id.* ¶¶ 7, 61. Plaintiffs even provide both visual and descriptive allegations that elaborate on the type of information being disclosed. *Id.* ¶¶ 62-74; Fig. 1-5. Plaintiffs also detail why the intercepted information is legally protected. *Id.* ¶¶ 21-35. These allegations more than satisfy the injury requirement for standing at this stage of litigation and provide sufficient factual context about Plaintiffs' interactions with Defendant's Website. *See Gaige*, 2025 WL 559719, at *2.

Defendant next argues that "[g]eneral allegations about what [Google] ***may be capable*** of collecting do not sufficiently establish what [Google] ***actually collected from*** Plaintiff (if anything) during their visits." MTD at 7 (emphasis in original). Defendant ignores that Figures 1-5 indeed show the information that Google collected. Regardless, this is not even required to state a plausible claim. *See, e.g.*, *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 977 (C.D. Cal. 2023) ("Although Valenzuela has not alleged specifically that she used the chat feature . . . this is not fatal to her claim . . . [it] is a plausible inference from her allegations."); *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 952 (N.D. Cal. 2024) ("Because Plaintiffs have properly alleged that Salesforce has the ability . . . the Court finds that Plaintiffs have alleged sufficient facts to meet the plausibility requirement."); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1199 (S.D. Cal. 2024) ("These allegations, when accepted as true, support a plausible inference that Plaintiffs used the chat feature within the relevant statutory time period.").

This is especially applicable to wiretapping cases, where relevant information is often unreachable prior to discovery. *See D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023) ("[A] pleading standard to the contrary would require the [wiretapping] plaintiff to engage in a one-sided guessing game because the

relevant information . . . typically resides uniquely in the custody and control of . . . defendant and its third-party recorder.”).

Accordingly, the facts here stand in stark contrast to the authority relied upon by Defendant, where the plaintiffs provided minimal (if any) information regarding their own activity. *See Rodriguez v. Brushfire Records*, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (“Plaintiff’s only allegation about her own interactions with defendant’s website is that she visited the website in the last year.”); *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024), *adopted*, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) (“Plaintiff does not allege any of the basic facts concerning her interaction with the Website, including when she visited it and what occurred during her visit.”); *Hartley v. Urb. Outfitters, Inc.*, 740 F. Supp. 3d 410, 422 (E.D. Pa. 2024) (allegations not specific enough to implicate privacy concerns); *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (same); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (same).

Here, Plaintiffs provide sufficient factual allegations describing how Defendant caused them a concrete harm through the disclosure of their private financial information. *See* FAC ¶¶ 3, 5-8, 95-96, 102. Accepting Defendant’s argument would require the Court to draw inferences against Plaintiffs, which is not permitted. *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1194 (N.D. Cal. 2024) (a court must “accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.”) (internal citations omitted).

## II. PLAINTIFFS STATE A CLAIM UNDER THE FEDERAL WIRETAP ACT

### A. Defendant Intercepted Plaintiffs’ Communications For A Criminal Or Tortious Purpose

Defendant contends that Plaintiffs’ ECPA claim fails because the ECPA is a one-party consent statute and the crime-tort exception is inapplicable. MTD at 8. However, as conceded by Defendant, the party exception does not apply if the “communication is intercepted for the purpose of committing any tortious or criminal

act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). In other words, if Defendant intercepted Plaintiffs' communications "for the purpose of committing any tortious or criminal act," it cannot escape liability. The crime-tort exception focuses on whether "the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (internal quotations and citations omitted).

*Shah v. Capital One Financial Corporation*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) is instructive. In *Shah*, the plaintiff alleged that the defendant installed third party tracking software, including tracking software from Google, that intercepted private, financial information. *Id.* at 1041. The court denied the defendant's motion to dismiss, holding the defendant's actions of intercepting and disclosing communications without consent were allegedly tortious. *Id.* at 1053. The same result is warranted here, where Plaintiffs allege Defendant disclosed their personally identifiable information and sensitive financial information in violation of the Gramm-Leach-Bliley Act ("GLBA") and California Financial Information Privacy Act ("CalFIPA"). *See* FAC ¶¶ 21-35.

Defendant further argues that Plaintiffs "have not plausibly alleged that Capital Group violated (or even intended to violate) the GLBA and CalFIPA." MTD at 9. To the contrary, Plaintiffs describe with particularity how Defendant violated the GLBA, CalFIPA, and committed an invasion of privacy, via the secret installation of computer code on its Website. *See* FAC ¶¶ 34-35, 37-40, 66-73, 100-103, 128-130, 135-141.

Additionally, Defendant claims the GLBA and the CalFIPA "***expressly permit*** the disclosure of nonpublic personal information under specific circumstances." MTD at 9 (emphasis in original). But as Defendant notes, that disclosure is only allowed if the financial institution provides sufficient notice and an opportunity to opt out to the consumer. *See* 15 U.S.C. § 6802(b); Cal. Fin. Code § 4053(b)(1). Rather than support this affirmative defense, Defendant seeks to shift its burden onto

Plaintiffs, arguing they "do not allege any facts about the notices or opt-out opportunities that Capital Group provided—or failed to provide." MTD at 10. Defendant ignores that Plaintiffs repeatedly allege Defendant intercepted and disclosed their private information without consent. FAC ¶¶ 8, 34, 104, 113, 116, 131. Nothing more is required of Plaintiffs. *See Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1217 (C.D. Cal. 2004) ("Federal pleading rules generally do not require a plaintiff to anticipate and plead around an affirmative defense."). At this stage, Plaintiffs plausibly allege that Defendant acted with the requisite criminal or tortious intent.[1] *See Shah*, 768 F. Supp. 3d at 1053 (finding that the party exemption did not apply when plaintiffs alleged that defendant intercepted contents "for an unauthorized purpose, which resulted in tortious acts"); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. 2024) (finding that plaintiffs stated a claim for invasion of privacy sufficient to plead defendant's tortious intent).

Defendant also argues that because its use of Google's pixel and SDK was motivated by marketing and advertising purposes, the crime-tort exception does not apply. MTD at 10. Not so. In the Ninth Circuit, "the crime-tort exception <u>may</u> nonetheless apply" where a defendant is primarily motivated by monetary gain. *R.C.*, 733 F. Supp. 3d at 901 (emphasis added); *see also R.S. v. Prime Healthcare Srvs., Inc.*,

---

[1] This is true even if the Court accepted Defendant's unsupported claim that the CalFIPA does not apply to Plaintiffs. First, Defendant's actions demonstrate a tortious intent to invade Plaintiffs' right to privacy. Second, Defendant has failed to provide any plausible argument that GLBA does not apply to Plaintiffs. Apart from this, the CalFIPA does apply to Plaintiffs. While Cal. Fin. Code § 4052(f) does not allow an individual to qualify as a consumer solely because they are "participant[s] or beneficiar[ies] of an employee benefit plan that a financial institution administers or sponsors . . . [,]" Plaintiffs do not act as passive beneficiaries. To the contrary, Plaintiffs actively manage their financial plan through Defendant's Website. *See* FAC ¶¶ 5-7. Given the broad definition of "consumer" and the California Legislature's intent to "afford persons greater privacy protections than those provided in the [GLBA][,]" Plaintiffs qualify for the protections under the CalFIPA. Cal. Fin. Code § 4051(b).

2025 WL 103488, at *7 (C.D. Cal. Jan. 13, 2025) ("The Court joins those courts that have held a monetary purpose does not insulate a party from liability under the ECPA."). Defendant's argument has been consistently critiqued and rejected by courts within this Circuit and across the country. *See, e.g.*, *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025) ("[T]his Court is not persuaded that commercially exploiting unlawfully obtained information is 'licit' merely because it is profitable."); *R.C.*, 733 F. Supp. 3d at 901 ("But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims.").

Defendant next claims that "[c]ourts consistently refuse to apply the crime-tort exception where, as here, the complaint alleges no intent to commit harm beyond the alleged 'interception' itself." MTD at 9. This is misguided. Numerous courts in this District have found "tortious intent sufficiently pled where 'Plaintiffs have alleged that Google intercepted their communications for the purpose of associating their data with preexisting user profiles' [,] that this 'association of their data with preexisting user profiles [allegedly] violated state law,'" and that the technology companies "benefited from this interception by using the information to sell ads to other third-party advertisers." *Marden v. LMND Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) (quoting *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021)); *see also Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 849 (E.D. Cal. 2025) ("Courts have applied the ECPA's crime-tort exception where the intentional *disclosure* of private information constituted a further impropriety independent and separate from [the] *interception* of private information.") (internal quotations omitted)*; In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (suggesting that in a motion to dismiss context, "[t]here is a not-insignificant chance ... that plaintiffs may be able to show that the crime-tort exception applies" where they allege that the defendant uses patient data for advertising);

*Kurowski v. Rush Sys. for Health* (*Kurowski III*), 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023); *Kane v. University of Rochester*, 2024 WL 1178340, at *7-8 (W.D.N.Y. Mar. 19, 2024); *Mekhail v. N. Mem'l Health Care*, 2024 WL 1332260, at *5 (D. Minn. Mar. 28, 2024); *Cooper v. Mount Sinai Health Sys., Inc.*, 2024 WL 3586357, at *8 (S.D.N.Y. July 30, 2024).

In sum, Defendant cannot shield itself from Plaintiffs' ECPA claim by relying on the party exemption; the crime-tort exception squarely applies.

### B. Defendant Intercepted The Contents Of Plaintiffs' Communications[2]

Defendant next argues that the FAC "alleges no facts showing that anyone intercepted or disclosed the substance or content of Plaintiff's communications—as opposed to mere metadata or transactional information." MTD at 11. That is wrong.

Courts interpret "content" under the CIPA and the ECPA as "the intended message conveyed by the communication . . . [not] includ[ing] record information regarding the characteristics of the message that is generated in the course of the communication." *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024) (internal citations omitted); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). Courts conduct a "case-specific" analysis to distinguish "content" from record information; this analysis focuses on "'how much information would be revealed' by the information's tracking and disclosure." *Yoon*, 2024 WL 5264041, at *5. Courts within the Ninth Circuit have agreed that "content" includes "the names of buttons clicked." *In re Meta Pixel Healthcare Litig.*, 647 F.

---

[2] Plaintiffs bring their ECPA claims against Defendant under a theory of direct liability. However, a "procurer" is also liable under the statute. *See In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132, 148 n. 2 (D. Conn. 2014) ("We do not intend our definition of aider and abettor to cover a 'procurer' as used in the statute.") (citing *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427-28 (E.D.N.Y. 2006) ("A procurer is not an aider and abettor but one who violates the statute directly")).

Supp. 3d 778, 795 (N.D. Cal. 2022); *see also Yoon*, 2024 WL 5264041, at *6 ("[T]he button click data associated with . . . titles are contents."). In addition, "content" may also include "full-string, detailed URLs" that include "the particular document within a website that a person views[.]" *In re Facebook*, 956 F.3d at 605; *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) ("URLs (to the extent the URLs contain a user's search terms) implicate 'content' under the Wiretap Act.") (internal citations omitted).

Here, Defendant asserts that "the information depicted—URLs, HTTP requests, button clicks, and page-navigation data—constitutes record information, not communication contents." MTD at 11. This is misguided for two reasons.

*First*, as noted above, courts in this Circuit have found that button clicks and specific URLs *can be* considered "content" under the ECPA. *See James*, 701 F. Supp. 3d at 956 (finding contents were intercepted where "Plaintiffs have alleged that Oracle intercepted, e.g., information about the webpages they viewed and searches they conducted"); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1083 ("The parties agree that Plaintiffs' allegations that the Carrier IQ Software intercepted … URLs (to the extent the URLs contain a user's search terms) implicate 'content' under the Wiretap Act."); *see also* FAC Fig. 4 (showing URL which specifies that Plaintiff was on the dashboard page viewing his retirement income). Plaintiffs' allegations also describe the various button names disclosed to Google based on the user-generated responses within the Website. *See* FAC Figs. 4-5.

*Second*, Plaintiffs allege that Defendant disclosed more than just URLs and button clicks, but also specific private financial information input by Plaintiffs as they navigated Defendant's Website. *See* FAC Figs. 4-5; *see also In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1004 (N.D. Cal. 2024) (finding "contents" were intercepted where "[t]he financial information that was transmitted to Meta from the tax filing websites included form field information and/or information affirmatively provided by the website user to the website[.]"). This content allows Defendant to

discern Plaintiffs' identity, employment information, investment and retirement information, and other nonpublic personal information. This is "content" under the ECPA. *Shah*, 768 F. Supp. 3d at 1054 ("In the complaint, Plaintiffs state that the 'contents' of their communication included Plaintiffs' personal information, which is a content under CIPA."). Defendant's argument that Plaintiffs "provide no detail about how they performed these actions—whether they typed information, clicked buttons, or selected items from menus" (MTD at 11) is without merit. Plaintiffs' examples are sufficient to establish that Defendant intercepted the content of Plaintiffs' communications. *See* FAC Figs. 4-5.

## III. PLAINTIFFS STATE A CLAIM UNDER CIPA § 631 AND § 632

### A. Defendant's Conduct Was Intentional

Defendant argues that Plaintiffs' CIPA § 631 and § 632 claims fail because "Plaintiffs allege no facts—and cannot allege any—showing that Capital Group acted with such intent or knowledge" that Google would read or eavesdrop on Website visitors. MTD at 12. This is wrong and defies common sense. Indeed, the very purpose of the Google pixel and SDK are to intercept communications to help drive ad revenue. FAC ¶¶ 49, 55; *see In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1010 (accepting plaintiffs' allegations that "the Pixel's design renders it primarily useful for electronic eavesdropping.").

Under the CIPA, "intent" may be demonstrated where an interception is "purposeful" and "deliberate," and not "a result of accident or mistake." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020) (internal citations omitted). Furthermore, "interceptions may be considered intentional where a defendant is aware of the defect causing interception and takes no remedial action." *Id.* The meaning of "intentionality" within CIPA is identical to the meaning within ECPA. *Taylor v. ConverseNow Techs., Inc.*, 2025 WL 2308483, at *6 (N.D. Cal. Aug. 11, 2025); *see also Brodsky*, 445 F. Supp. 3d at 127 ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.") (quotation

omitted).

Here, Plaintiffs have alleged in depth that Defendant intentionally intercepted Plaintiffs' information because computer code does not get embedded on Defendant's Website by accident. *See* FAC ¶¶ 36, 95, 142. And courts in the Ninth Circuit repeatedly recognize that purposefully embedding code on a consumer's device to collect and compile their personally identifiable information and financial information is an intentional act. *See, e.g.*, *Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246, at *3 (C.D. Cal. Apr. 3, 2025) (finding the defendant's installation of the TikTok pixel was an intentional act); *WhatsApp Inc. v. NSO Grp. Techs., Ltd.*, 472 F. Supp. 3d 649, 661-62 (N.D. Cal. 2020) (sending code to servers and accessing them without authorization); *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *2-8 (N.D. Cal. May 15, 2019) (wiretapping); *Bergstein v. Parmar*, 2014 WL 12586073, at *3-4 (C.D. Cal. June 23, 2014) (telephone conversations).

Additionally, as the owner and operator of the Website, Plaintiffs have established that "Defendant <u>chose</u> to embed the Google Analytics wiretap on its Website[.]" FAC ¶ 9 (emphasis added). More importantly, the information unlawfully intercepted and disclosed by Defendant is protected by law. 16 C.F.R. § 313; Cal. Fin. Code § 4051. Therefore, as a financial institution, Defendant knew that it was unlawful to disclose Plaintiffs' protected information to a third party. *See Shah*, 768 F. Supp. 3d at 1053; *R.C.*, 733 F. Supp. 3d at 901-02. But even if Defendant did not originally intend to unlawfully intercept information, Defendant failed to take remedial action after becoming aware of the defect. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 815. That too is sufficient to show intent.

### B. Plaintiffs State A CIPA § 631 Claim

CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Plaintiffs allege that Google violated the second and third clauses of CIPA § 631(a) by "reading" or "learning the contents" of Plaintiffs' communications "in transit" (the second

clause) and using that information for their own purposes (the third clause). FAC ¶¶ 113-114. And Plaintiffs allege Defendant violated the fourth clause of CIPA § 631(a) by "aid[ing], agree[ing] with, employ[ing]" or otherwise enabling the third party's aforementioned CIPA violations. FAC ¶ 115.

*1. Plaintiffs Established A Predicate CIPA § 631(a) Claim*

Defendant contends that Plaintiffs fail to allege facts to satisfy the "contents" and "in transit" elements of the second clause of CIPA § 631(a). Thus, Defendant contends that because Plaintiffs cannot satisfy the "content" and "in transit" elements of the second clause of CIPA § 631(a), they cannot allege a claim against Defendant for a violation of CIPA § 631(a)'s fourth clause. MTD at 14. Defendant is wrong.

As an initial matter, Plaintiffs' allegations are sufficient to show that the contents of their communications were intercepted or disclosed under the ECPA *and* CIPA because they require the same analysis. *See Brodsky*, 445 F. Supp. at 127 ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). For the reasons stated *supra* § II.B, Plaintiffs sufficiently allege that Defendant intercepted the contents of their communications.

Defendant's argument that Plaintiffs fail to "plausibly allege that any interception occurred while the communication was in transit" is also misguided. MTD at 14. Plaintiffs detail how Google's tracking technology functions to intercept communications:

> Google Analytics is incorporated into third-party websites and apps, including the Website, by adding a small piece of JavaScript measurement code to each page on the site. This code immediately intercepts a user's interaction with the webpage every time the user visits it, including what pages they visit and what they click on. The code also collects PII, such as IP addresses and device information related to the specific computing device a consumer is using to access a website. The device information intercepted by Google includes the consumer's operating system, operating system version, browser, language, and screen resolution.

FAC ¶ 55. Plaintiffs even provide screenshots of Google's advertising technology intercepting the communications in real time. *Id.* Figs. 2-4. Courts in the Ninth Circuit routinely find similar allegations satisfy the "in-transit" requirement. *See Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d at 978 ("[Plaintiff] did not simply recite that there was real time interception, she added detail on how it occurs. . ."); *Shah*, 768 F. Supp. 3d at 1053-54 (same).

Defendant's remaining argument that Plaintiffs' allegations "foreclose any claim of interception in transit" merely because they note that Google's code "collects data, *then* packages and sends it to Google Analytics for later processing" so that Google can generate a report "*after* the data has been processed and stored" also fails. MTD at 15. While Google may continue to utilize the data it intercepts, that does not mean that it did not read and learn the meaning of the communications intercepted while they were in transit. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1082 (finding the plaintiff's allegations satisfied the "in transit" requirement and noting that "even if the Defendants are factually correct that the communications at issue in this case were in transitory storage . . . when the Carrier IQ Software operated on them, it is not at all apparent why there was no 'captur[ing] or redirect[ing]' of these communications contemporaneous with their transmission.").

Here, Plaintiffs' detailed allegations show their communications were intercepted "in transit" regardless of what Google does with the information after it is intercepted. The Complaint explains how the Google pixel and SDK work. *See* FAC ¶¶ 55-56. And the Complaint sets out the precise means and time by which the communications were intercepted while "in transit," prior to reaching their final destination. *See id.* ¶¶ 62-74. No additional allegations are required. *See, e.g.*, *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8; *Valenzuela*, 686 F. Supp. 3d at 978-79; *Byars*, 654 F. Supp. 3d at 1027.

Defendant's cases do not compel a different result. In *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025), the court found that "Plaintiffs

need not prove their theory of interception to survive dismissal, but they must 'provide fair notice to [LinkedIn] of when they believe [LinkedIn] intercepts their communications.'" The court in *Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) further supports this point, dismissing the plaintiff's case for failing to allege "what was intercepted, when the interception took place, and how the interception took place." Plaintiffs allege the information, time, and process of the interception with specificity, and therefore satisfy the "in transit" element of the second clause of CIPA § 631(a) at the pleadings stage.

*2. Plaintiffs Sufficiently Allege Defendant Aided Google*

Defendant claims that CIPA's party exemption applies to Google, and therefore Capital Group did not "aid" a third-party. MTD at 16. That is wrong. Defendant acknowledges that to "overcome this exemption, plaintiffs must allege specific, non-conclusory facts showing that the vendor acted independently and used the data for its own purposes." MTD at 16. Unlike the plaintiff in *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *12 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023), who "provide[d] no description of what the third-party vendor does, what its relationship to Sephora is, how it intercepts Sephora's chat communications, or what it does with that information[,]" Plaintiffs allege that Google's pixel and SDK both provide marketing and analytics services to the client (Defendant), but *also* improve Google's own ad targeting capabilities. *See* FAC ¶¶ 8-9, 49 54, 58, 71. This is sufficient to show that Defendant aided and employed a third-party eavesdropper in violation of CIPA § 631(a). *See Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972 (N.D. Cal. 2023) (noting that a plaintiff may satisfy the fourth prong of CIPA § 631(a) if he sufficiently alleges that a third-party software provider can use its records of the intercepted communications for any purpose other than providing them to the defendant); *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023) (finding that use of the third party is irrelevant); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1016 (C.D. Cal.

2023) (made finding on basis of "whether plaintiffs have alleged that the third-party had the *capability to use* the communications for any other purpose.").

**C. Plaintiffs State A CIPA § 632 Claim**

Defendant next argues that Plaintiffs fail to state a claim under CIPA § 632 for two reasons: (1) because Defendant failed to establish that Capital Group had the requisite knowledge or intent, and (2) because Plaintiffs fail to "plausibly allege that any communication on the Website was 'confidential.'" MTD at 17. Both arguments fail.

*First*, as noted *supra* § III.A, Plaintiffs have established that, as the owner of the Website, Defendant chose to install Google's pixel and SDK. FAC ¶ 9. As a financial institution, Defendant knew that it was unlawful to disclose Plaintiffs' protected information to third parties. This is sufficient to show that Defendant had intent to disclose Plaintiffs' private financial communications in violation of the statute, and also that it had knowledge that disclosing this private information was unlawful. *See Shah*, 768 F. Supp. 3d at 1054; *R.C.*, 733 F. Supp. 3d at 901-02.

*Second*, Plaintiffs clearly allege that their communications were "confidential." The "argument, that California courts have developed a presumption that users do not have an expectation of privacy over internet communications, fails on examination." *Brown v. Google, LLC*, 685 F. Supp. 3d 909, 937 (N.D. Cal. 2023). "[T]here is no requirement that Plaintiff[s] allege something 'unique' about [their] particular Internet communications in order to make them … confidential." *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, at *10 (C.D. Cal. Oct. 4, 2024), *adopted as modified*, 2024 WL 4474491 (C.D. Cal. Oct. 4, 2024).

In any event, courts have routinely recognized communications to be "confidential" under CIPA § 632 when shown to be sensitive under applicable laws, regulations, or industry norms. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799 (finding communications confidential when protected by federal law); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199-1200 (N.D. Cal. 2024) (finding

that "sensitive financial information submitted to a tax preparation website[]" was confidential under section 632); *Bernstein v. United Collection Bureau, Inc.*, 2013 WL 5945056, at *4 (S.D. Cal. Nov. 5, 2013) ("The conversation allegedly included discussions protected by the attorney-client privilege, … as well as highly personal and private financial information[.] … Plaintiff has sufficiently alleged that he had a reasonable expectation the conversation would not be recorded.") (cleaned up); *Ewing v. Flora*, 2015 WL 12564225, at *4 (S.D. Cal. Mar. 25, 2015) ("Plaintiff [] alleges that due to the personal and financial nature of the conversations with Defendants, Plaintiff had a reasonable expectation of privacy … Plaintiff has adequately stated a CIPA claim."). That is the case here, where the California Legislature and Congress codified the right to privacy in personal financial information, via the GLBA and CalFIPA.

"Bearing in mind that a person's objectively reasonable expectation of confidentiality is generally a question of fact" (*Gladstone v. Amazon Web. Servs., Inc.*, 739 F. Supp. 3d 846, 859 (W.D. Wash. 2024) (cleaned up)), these laws support Plaintiffs' reasonable expectation that Defendant, as an online financial service provider, would not enable an unknown third party to collect Plaintiff's private financial information for marketing and advertising without consent. *See* FAC ¶¶ 104, 130-131.

## IV. PLAINTIFFS STATE A CLAIM FOR INVASION OF PRIVACY

To state a claim for invasion of privacy under the California Constitution, plaintiffs must plead (1) a legally protected privacy interest, (2) a reasonable expectation for privacy, and (3) that the intrusion is so serious as to amount to an egregious breach of the social norms. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601 (citation omitted). Defendant argues that Plaintiffs have failed to "meet that standard for multiple reasons."[3] MTD at 18. That is wrong.

---

[3] Notably, Defendant does not make an argument challenging the first requirement for an invasion of privacy claim–whether Plaintiffs alleged a legally protected privacy interest.

*First*, Defendant argues that Plaintiffs have not adequately pled a reasonable expectation of privacy under the GLBA and CalFIPA because the Complaint does not allege that Plaintiffs' private financial data "was personally attributable to either Plaintiff." MTD at 18. This is false. Plaintiffs allege that "the information disclosed by Defendant allows Google to know the identities of specific individuals as well as information related to the private financial decisions they are making." FAC ¶ 71.[4]

*Second*, Defendant contends that Plaintiff's "claim still fails because they di bit allege any intrusion that is 'highly offensive.'" MTD at 19. This is also false. Although "routine collection of personally identifiable information as part of electronic communications" is unlikely to be highly offensive, the "collection of intimate or sensitive personally identifiable information may amount to a highly offensive intrusion." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017); *see also Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274, 1283 (C.D. Cal. 2024) (same); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (same). Even "routine data collection practices may be highly offensive if a defendant disregards consumers' privacy choices while simultaneously holding itself out as respecting them." *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d at 946 (cleaned up).

Whether a defendant has acted with a sufficient level of offensiveness requires a nuanced determination that courts are hesitant to make at the pleading stage. *See*, *e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606 ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3 (N.D. Cal. Apr. 4, 2025)

[4] Not only do Plaintiffs allege that Defendant allowed for the interception of private financial information that could be personally connected to them, but they further explain the process behind this. Plaintiffs allege "[d]ue to the vast network of consumer information held by Google, it is able to match the IP addresses, device information, and User-IDs it intercepts and link such information to an individual's specific identity." FAC ¶ 61.

(explaining open factual questions pertaining to the degree of offensiveness such as "the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive" should not be resolved in a motion to dismiss); *Ahringer*, 715 F. Supp. 3d at 1283 (stating the decision is "generally a factual matter best determined after the pleading stage"); *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1362 (S.D. Cal. 2024) (same).

Defendant's authority is unpersuasive as it concerns routine commercial behavior that is not legally protected (*see In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding that the disclosure of "unique device identifier number, personal data, and geolocation information" did not "constitute an egregious breach of social norms[]")) or cases that contain insufficient information as to what was allegedly disclosed. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. July 18, 2022) ("The lack of details as to how Google could attain the intimate information renders implausible what might otherwise be the strongest allegation of highly offensive conduct."); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (same).

In contrast, Defendant's disclosures here go beyond "routine commercial behavior" because Defendant surreptitiously shared confidential financial information with Google while Plaintiffs were managing their financial assets on Defendant's Website. Defendant intercepted communications including, at the least, Plaintiffs' employer's name, and private investment decisions and contribution amounts. FAC ¶¶ 68-70. Here, contemporary social norms are far more likely to render the disclosure of private investment decisions, financial status, and employer information as being highly offensive. *See* FAC ¶ 74 ("Such disclosures are an invasion of privacy"). At minimum, it is an issue of fact improper for determination at this stage.

Defendant also argues Plaintiffs' "request for monetary damages under Article I, Section 1 of the California Constitution fails as a matter of law." MTD at 19. Not

so. California courts have held that whether the state constitutional privacy provision can "also provide direct and sole support for a damages claim" is an "open question[.]" *Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1072 (2009) (citing *Katzberg v. Regents of Univ. of California*, 58 P.3d 339, 347 (2002)); *see also Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 602 (N.D. Cal. 2021) (recognizing that the "California Supreme Court has subsequently described the availability of damages as 'an open question[]'" and refusing to rule without adequate briefing of the issue under the framework set out in *Katzberg*).

## V. DEFENDANT'S ATTEMPT TO STRIKE CLASS ALLEGATIONS IS PREMATURE AND DISFAVORED

"While some courts strike class allegations when it is abundantly clear that the class mechanism will not work, it is the exception, not the rule." *Lomeli v. Jackson Hewitt, Inc.*, 2018 WL 1010268, at *10 (C.D. Cal. Feb. 20, 2018) (emphasis added); *see also Brown v. DIRECTV, LLC*, 2014 WL 12599363, at *2 (C.D. Cal. May 27, 2014) ("motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle . . .") (cleaned up); *Iniguez v. The CBE Grp.*, 969 F. Supp. 2d 1241, 1248 (E.D. Cal. 2013) ("Dismissing class allegations at the pleading stage, however, is rare because the parties have not yet engaged in discovery and the shape of a class action is often driven by the facts of a particular case."). When a court reviews a motion to strike class allegations, they must "view the pleading in the light most favorable to the nonmoving party." *Guardant Health, Inc. v. Natera, Inc.*, 580 F. Supp. 3d 691, 700 (N.D. Cal. 2022).

Defendant nonetheless contends that "Plaintiffs' nationwide class and California subclass definitions . . . should be stricken (or dismissed)." MTD at 20. *First*, Defendant argues the nationwide class should be dismissed because Plaintiff's ECPA claim should be dismissed. Not so. As argued herein, Plaintiffs sufficiently allege Defendant tortiously intercepted the contents of their communications.

*Second*, Defendant argues that Plaintiffs' class allegations are overbroad and

imprecise as they "fail to define the class period." MTD at 20. This is also wrong. Each cause of action has a statute of limitations. *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1082 (S.D. Cal. 2023) (citing *Brodsky*, 445 F. Supp. 3d at 134). Under California's discovery rule, the limitations period commences "when the plaintiff suspects, or should suspect, that his or her injury was caused by wrongdoing." *Mawardi v. Equilon Enters., LLC*, 34 F. App'x 533, 535 (9th Cir. 2002). The question of when a plaintiff actually discovered or should have discovered the wrongdoing is typically a "question of fact unless the evidence can support only one reasonable conclusion." *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d at 901. Thus, "[a]t this stage of the proceedings, the court cannot resolve questions regarding when putative class members would have (or should have) discovered" the interception of their private communications. *Fernandez v. CoreLogic Credco, LLC.*, 593 F. Supp. 3d 974, 997 (S.D. Cal. 2022). Defendant's attempt to strike class allegations should be denied.

## VI. PLAINTIFFS STATE A CLAIM FOR PUNITIVE DAMAGES

Defendant argues that Plaintiffs' request for punitive damages also must be dismissed and/or stricken from the Complaint because "conclusory allegations of malice, fraud, or oppression are insufficient to state a prayer for punitive damages." MTD at 21. Defendant again misstates pleading requirements.

While California courts may impose a heightened pleading requirement on claims for punitive damages, such a requirement conflicts with federal procedural law. *See Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1066 (C.D. Cal. 2009) (finding allegations that defendant acted with knowledge and intent to cause harm "more than meet the minimal requirement of conclusory assertions" required under federal law); *Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016, 1020 (S.D. Cal. 2000) (rejecting California's heightened pleading standard for punitive damages as a court sitting in diversity because the plaintiff's complaint "clearly requested punitive damages and made conclusory assertions of intentional and malicious misconduct."). And while some district courts have rejected the *Clark*

analysis after *Twombly* and *Iqbal* like Defendant suggests, "there continues to be a substantial and growing number of district courts that have refused to apply a heightened-pleading standard to requests for punitive damages in light of Federal Rules of Civil Procedure 8 and 9." *AV Builder Corp. v. Houston Cas. Co.*, 2021 WL 9474017, at *3 (S.D. Cal. Apr. 28, 2021). Thus, under federal law and Ninth Circuit precedent, Federal Rule of Civil Procedure 9(b) does "not require '*any* particularity in connection with an averment of intent, knowledge or conditions of mind.'" *Clark*, 106 F. Supp. 2d at 1019 (cleaned up) (emphasis in original).

Nevertheless, Plaintiffs sufficiently allege that Defendant acted with knowledge and intent to invade Plaintiffs' privacy interests under both pleading standards. *See* FAC ¶ 102 ("Defendant specifically used the tracking technology provided by Google to track and utilize Plaintiffs' and Class Members' PII for financial gain."); *see also id.* ¶ 139 ("Defendant's willful and intentional disclosure of Plaintiffs' and California Subclass members' PII constitutes an intentional interference with Plaintiffs' and California Subclass members' interest in solitude and/or seclusion[.]"); *id.* ¶ 141 ("Defendant failed to protect Plaintiffs' and California Subclass members' PII and financial information and acted knowingly when it installed the tracking technology onto the Website because the purpose of said technology is to track and disseminate users' communications on the Website for marketing and advertising."); *id.* ¶ 142 (Because Defendant intentionally and willfully incorporated the tracking technology onto the Website and encouraged individuals to use and interact with the Website and the services thereon, Defendant had notice and knew that this practice would cause injury to Plaintiffs and the California Subclass."). Thus, the Court should not strike Plaintiffs' claim for punitive damages at this stage.

## **<u>CONCLUSION</u>**

For the reasons set forth above, Defendant's Motion should be denied. If the Court dismisses any part of the Complaint, Plaintiffs respectfully request leave to amend to cure any such deficiencies.

Dated: February 6, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ *Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354765)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

*Attorney for Plaintiffs*