**BAKER & HOSTETLER LLP**
David H. Stern (SBN 196408)
Alex E. Spjute (SBN 229796)
Kamran B. Ahmadian (SBN 314566)
1900 Avenue of the Stars | Suite 2700
Los Angeles, CA 90067-4508
Telephone: 310.820.8800
Facsimile: 310.820.8859
*dstern@bakerlaw.com*
*aspjute@bakerlaw.com*
*kahmadian@bakerlaw.com*

*Attorneys for Defendant*
THE CAPITAL GROUP
COMPANIES, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

IWAN NYOTOWIDJOJO and VU NGUYEN, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

THE CAPITAL GROUP COMPANIES, INC.,

Defendant.

Case No.: 8:25-cv-01816-JWH-JDE

*[Assigned to Hon. John W. Holcomb]*

**DEFENDANT THE CAPITAL GROUP COMPANIES, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

| | |
|---|---|
| **Date:** | February 27, 2026 |
| **Time:** | 11:00 a.m. |
| **Dept:** | Courtroom 9D |
| | |
| Case Filed: | August 15, 2025 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Plaintiffs Lack Article III Standing. .......... 1

B. Plaintiffs' Federal Wiretap Act Claim Fails. .......... 4

1. Capital Group Did Not Intercept Plaintiffs' Communications for a Criminal or Tortious Purpose. .......... 4

2. Capital Group Did Not Intercept The "Contents" Of Plaintiffs' Communications. .......... 5

C. Plaintiffs' CIPA Claims Fail to Allege Requisite Intent .......... 6

D. Plaintiffs' CIPA Section 631(a) Claim Should be Dismissed .......... 7

1. Plaintiffs Cannot Establish a Predicate CIPA Violation .......... 7

2. Plaintiffs' "Aiding And Abetting" Claim Otherwise Fails .......... 8

E. Plaintiffs' CIPA Section 632 Claim Fails .......... 9

F. Plaintiffs Have Not Alleged an Invasion of Privacy Claim .......... 9

G. Plaintiffs' Class Allegations Should Be Stricken .......... 11

H. Plaintiffs Cannot Be Awarded Punitive Damages .......... 11

III. CONCLUSION .......... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274 (9th Cir. 2024) ........ 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 12

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ........ 12

*Bradshaw v. Lowe's Cos., Inc.*, 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ........ 3

*Brown v. Google, LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 5

*Brown v. Google, LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 9

*Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016 (S.D. Cal. 2000) ........ 11

*Clausing v. S.F. Unified Sch. Dist.*, 221 Cal. App. 3d 1224 (1990) ........ 10

*Doe 1 v. United Airlines, Inc.*, 2021 WL 4595766 (C.D. Cal. Apr. 22, 2021) ........ 12

*Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 6

*Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934 (S.D. Cal. 2024) ........ 10

*Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025) ........ 2

*Garcia v. Build.com, Inc. et al.*, 2023 WL 4535531 (S.D. Cal. July 13, 2023) ........ 7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014). .......... 5

*Grimberg v. United Airlines, Inc.*,
2023 WL 2628708 (C.D. Cal. Jan. 10, 2023).......... 12

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023).......... 8

*Hill v. Workday, Inc.*,
2024 WL 3012802 (N.D. Cal. June 14, 2024) .......... 11

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 11

*Katzberg v. Regents of Univ. of California*,
29 Cal. 4th 300 (2002).......... 10

*Kelley v. Corrs. Corp. of Am.*,
750 F. Supp. 2d 1132 (E. D. Cal. 2010).......... 12

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025).......... 3

*Krantz v. Old Copper Co., Inc.*,
794 F. Supp. 3d 724 (C.D. Cal. 2025).......... 11

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) .......... 8

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .......... 6

*Moore v. Rodriguez*,
2021 WL 2222590 (S.D. Cal. June 2, 2021) .......... 11

*Novel v. Los Angeles Cnty. Sheriff's Dep't*,
2019 WL 7940676 (C.D. Cal. July 23, 2019) .......... 10

*Omni King, Inc. v. Accelerant Specialty Ins. Co.*,
2023 WL 6881824 (C.D. Cal. Apr. 19, 2023).......... 12

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025).......... 3

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 4, 5

*Shah v. Capital One Financial Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 4, 10

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999) .......... 5

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. May 24, 2023) .......... 7, 8

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 7

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 9

*Yockey v. Salesforce*, Inc.,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 8

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) .......... 6

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 9

**Statutes**

15 U.S.C. § 6802(b) .......... 1, 4, 9

Cal. Fin. Code § 4052 .......... 2, 4

California's Invasion of Privacy Act, Cal. Penal Code § 631 *et seq* .......... 6, 7, 8, 9, 11

**Other Authorities**

California Constitution Article I, Section 1 .......... 10, 11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## I. INTRODUCTION

Plaintiffs Iwan Nyotowidjojo's and Vu Nguyen's (collectively, "Plaintiffs") Opposition to Defendant The Capital Group Companies, Inc.'s ("Defendant" or "Capital Group") Motion to Dismiss and/or Strike ("Opposition" or "Opp.") is devoid of support that Capital Group's use of Google Analytics constitutes an illegal wiretap. Because Plaintiffs fail to overcome the factual and legal deficiencies in their First Amended Complaint ("FAC"), the Court should dismiss their claims in their entirety. If the FAC is not dismissed in its entirety, Plaintiffs' class allegations should be stricken due to the FAC's impermissibly broad, vague, and inapplicable class definitions. Also, given the lack of factual allegations to justify such an award, Plaintiffs' request for punitive damages should be dismissed.

## II. ARGUMENT

### A. Plaintiffs Lack Article III Standing.

Plaintiffs have not pleaded a concrete privacy injury sufficient to establish Article III standing. The arguments made in their Opposition all fail. As an initial matter, Plaintiffs' injury argument is premised on a blatant misrepresentation of the applicable law. Plaintiffs state without qualification that "[u]nder state and federal law [GLBA and CalFIPA], financial service providers—including Defendant—***are prohibited from disclosing nonpublic personal information to third parties***." (Opp. at 2:23–25) (citing 16 C.F.R. § 313.3; Cal. Fin. Code § 4050, *et seq*.) (emph. added). Plaintiffs' characterization of these statutes is, at best, incomplete and, at worst, grossly misleading. As Capital Group explained in its Motion, both statutes *expressly permit* the disclosure of nonpublic personal information by financial institutions when prior consent, notice, and/or an opportunity to opt out have been provided. (*See* Mot. at 9–10.) Plaintiffs rely on these statutes based only on vague, conclusory allegations (*see* FAC ¶ 4), and allege no facts showing that they fall within the statutes' protected scope—let alone facts establishing that any disclosure violated either statute. Indeed, Plaintiffs' own allegations that their accounts were



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

through an "employer sponsored retirement plan" (FAC ¶¶ 5–6) conclusively establish that CalFIPA would not apply. *See* Cal. Fin. Code § 4052(f) ("For purposes of this division, an individual is ***not a consumer*** of a financial institution solely because he or she is (1) a ***participant or beneficiary of an employee benefit plan*** that a financial institution administers or sponsors[.]").[1]

Regardless, Plaintiffs fail to identify any facts in the FAC establishing a concrete privacy harm traditionally recognized under common law and required for Article III standing. Plaintiffs cite allegations they "'managed [their] retirement account[s]' through Defendant's Website, where [they] 'set [their] contribution limits and selected the assets to fund [their] retirement account[s]'" and Defendant transmitted their personally identifiable information ("PII") to Google for the "purposes of targeted advertising." (Opp. at 4 (citing FAC ¶¶ 5-8, 64, 71, 97).) These assertions lack factual context necessary to support Plaintiffs' argument that they were injured because they were deprived of their right to control their private financial information. (Opp. at 3:15–23.)

Plaintiffs' reliance on *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025), does not bolster their case. (Opp. at 3:20–23.) In *Frasco*, plaintiffs alleged that an ovulation tracker app disclosed highly personal information about their menstrual and reproductive cycles and sexual activity without their consent, despite representations by the app which said otherwise. 349 F.R.D. at 569–70 (citing consolidated amended complaint). Unlike Plaintiffs here, the *Frasco* plaintiffs provided critical factual context showing the incredibly sensitive nature of the information ***they actually*** disclosed, as well as Flo's commercial exploitation of that data. *Id.* at 572–73. Plaintiffs do not allege that they received targeted advertising as a result of their visits, and—as explained in the Motion and left unaddressed in

[1] Plaintiffs argue CalFIPA applies to them based on the unsupported theory that Cal. Fin. Code § 4052(f)'s definition of "consumer" excludes only "passive beneficiaries." (Opp. at 10 n.1.) But no reasonable reading of the statute supports that interpretation, and unsurprisingly, Plaintiffs do not cite to any case law in support of it.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

their Opposition—their vague allegations fail to identify what ***specific*** sensitive information was collected or how that information, standing alone, could be attributed to them. (*See* Mot. at 6:18–7:2.)

Plaintiffs' attempt to minimize or sidestep *Popa v. Microsoft Corp.*, 53 F.4th 784 (9th Cir. 2025), also fails. (*See* Opp. at 4:17–5:19.) Plaintiffs argue that *Popa* did not alter the Article III standing analysis and merely "reaffirmed the principle" that a statutory violation alone does not confer standing. (*Id.*) But *Popa* goes further. It confirms that Plaintiffs must allege facts identifying the specific data of theirs that was allegedly collected and how that alleged collection maps onto any of the "four discrete torts that protect[] specific kinds of privacy-related harms." *Popa*, 153 F.4th at 792. Plaintiffs do not meet that burden here. Instead of alleging facts about their ***own interactions*** with Capital Group's website, Plaintiffs rely on vague, speculative assertions about the types of financial information Google ***might be*** capable of collecting. (*See* FAC ¶¶ 55, 57, 64, 66–70.) These hypothetical allegations do not plausibly establish that Plaintiffs' financial information was collected and sent to Google, nor do they explain how Google could attribute any such information to Plaintiffs based on the data alone. *See Popa*, 153 F.4th at 791 (requiring plaintiffs to allege specific facts showing how ***their alleged injury*** is akin to the "highly offensive" intrusions or disclosures recognized under common law) (emph. added).[2]

Indeed, Plaintiffs do not allege that any "personal" identifying information—i.e., name, date of birth, and/or gender—was collected during their visit to the Capital Group's website. (Opp. at 5:15-19 (citing FAC ¶ 7).) Instead, Plaintiffs concede that they voluntarily provided this information to Google when they created

[2] Since *Popa*, district courts have consistently dismissed privacy claims for lack of Article III standing where allegations were similarly vague. *See, e.g.*, *Bradshaw v. Lowe's Cos., Inc.*, 2025 WL 3171740, at *4-6 (S.D. Cal. Nov. 12, 2025) (relying on *Popa* to find plaintiffs failed to establish Article III standing for their CIPA claim); *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) ("Absent specific allegations about the type of browsing and geolocation information disclosed, these categories of information are insufficient to support a concrete privacy injury."). The same reasoning applies here.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

their Gmail accounts. (*Id.*) Plaintiffs cannot manufacture a privacy harm against Capital Group based on Google's possession of personal identifying information that Plaintiffs themselves voluntarily disclosed.

Because Plaintiffs fail to allege facts plausibly establishing a privacy harm, they do not satisfy Article III's injury-in-fact requirement, and the Court must dismiss their claims.

**B. <u>Plaintiffs' Federal Wiretap Act Claim Fails.</u>**

***1. Capital Group Did Not Intercept Plaintiffs' Communications for a Criminal or Tortious Purpose.***

Plaintiffs' contention that the crime-tort exception applies (Opp. at 8–12), lacks merit.

*First*, although Plaintiffs invoke these statutes to allege a criminal or tortious purpose (*see id.* at 9:18–22), they fail to plausibly plead any violation of the GLBA, CalFIPA, or the common law. As outlined above, Plaintiffs' employer sponsored retirement accounts are not covered by CalFIPA. *See* Cal. Fin. Code § 4052(f). Even if the accounts fall within the GLBA's scope, Plaintiffs do not allege that Defendant failed to provide notice or denied them an opportunity to opt out—both essential elements of a GLBA claim. *See* 15 U.S.C. § 6802(b). Plaintiffs' burden-shifting arguments therefore fail. (*See* Opp. at 9:27–10:4.) Plaintiffs—not Defendant—bear the burden of pleading a plausible claim, which here requires facts showing a lack of consent. Merely alleging interception "without consent" does not suffice. (*Id.* at 10:4.) Plaintiffs thus fail to establish a criminal or tortious purpose.[3]

*Second*, Plaintiffs fail to allege any tortious act that was *separate* and

[3] *Shah v. Capital One Financial Corp.*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) and *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024) are distinguishable and otherwise unpersuasive. (*See* Opp. at 9–10.) In both cases, plaintiffs identified ***subsequent activity*** that they alleged caused them harm—i.e., that they received targeted advertising after visiting defendants' websites. Plaintiffs here do not allege any similar subsequent act outside of the alleged interception. *See Cap. One Fin. Corp.*, 768 F. Supp. 3d at 1041; *Walgreen Co.*, 733 F. Supp. 3d at 897-98.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*independent* of the interception itself, as required to invoke the crime-tort exception. Neither the Opposition nor the FAC addresses Capital Group's alleged purpose or motivation beyond the interception, and that omission is dispositive. As the Ninth Circuit has explained, "the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (cit. omitted). *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021)—the primary authority Plaintiffs rely on—illustrates this distinction. (*See* Opp. at 11.) In *Brown*, the plaintiffs alleged that Google intercepted their communications for the specific purpose of using the data in preexisting profiles in violation of state law. 525 F. Supp. 3d at 1067. Plaintiffs allege no comparable purpose here. Plaintiffs' vague allegations regarding Google's potential use for "targeting advertising" are insufficient to implicate the crime-tort exception. *See In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014).

*Third*, Plaintiffs argue that some district courts in this Circuit have applied the crime-tort exception even when a defendant acted primarily with a monetary motive. (Opp. at 10:16–11:10.) But those cases uniformly require plaintiffs to plausibly allege that the defendant's conduct violated state law, including state-law privacy claims. *See, e.g.*, *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024). Any disagreement in the case law over how courts should weigh commercial motivation is therefore immaterial since Plaintiffs fail to plausibly allege that Capital Group violated state law.

***2. Capital Group Did Not Intercept The "Contents" Of Plaintiffs' Communications.***

Plaintiffs fail to allege that the contents of any communication were intercepted because the FAC does not identify what specific data, if any, was collected during their visits to the Website. Plaintiffs only allege that during these visits they "set

[their] contribution limits" and "selected the assets to fund [their] retirement account[s]." (*See* FAC ¶¶ 5–6.) Moreover, the screenshots which Plaintiffs heavily rely upon are not tied to either Plaintiff's visit; they merely show data that could have been transmitted to Google via the GA Cookie on an unspecified date by an unidentified user. (*See* Opp. at 13 (citing FAC Figs. 4-5).) As such, any determination as to whether the data constitutes "contents" is purely speculative.

Plaintiffs' pleading deficiencies are highlighted by the cases they rely upon in support, all of which involve much more detailed allegations of data collection. (*See* Opp. at 12–13.) For instance, in *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987 (N.D. Cal. 2024), the plaintiffs specifically alleged that their financial information, including "form field information . . . contact information, filing status, gross income, dependents, social security numbers, and other tax filing and financial information" was collected by Meta. *Id.* at 1004 (quoting complaint). Likewise, in *Yoon v. Meta Platforms, Inc.,* 2024 WL 5264041 (N.D. Cal. Dec. 30, 2024), plaintiff alleged information including "the video's URL whenever a viewer access[ed] that webpage, the title of the video watched, when a view[er] started and finished the video's consent, and when the viewer started and finished the advertisement that plays before the video . . .[,] user's email, first name, last name, gender, phone number, city, state, and zip code." *Id.* at *2 (citing complaint).

For all of these reasons, Plaintiffs' Wiretap Act claim fails as a matter of law. And because these deficiencies were addressed in Capital Group's initial motion and were not addressed in Plaintiffs' amendment, it should be dismissed with prejudice.

### C. <u>Plaintiffs' CIPA Claims Fail to Allege Requisite Intent.</u>

Plaintiffs misconstrue the scienter element required to establish liability. (Opp. at 14-15.) Like the crime-tort exception, Plaintiffs fail to allege scienter because they have not—and cannot—allege Capital Group installed the GA Cookie ***with knowledge and intent that*** it read or eavesdropped on Website visitors. (Mot. at 12–13.) Thus, Plaintiffs' CIPA claims must be dismissed with prejudice. *See, e.g.*, *Doe*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024) ("CIPA liability only extends to willful or intentional conduct, so even if some private health information is inadvertently sent to Google—and subsequently gets integrated into the reports—the plaintiffs fail to plausibly allege Google is intentionally reading or learning the contents of the plaintiffs' private health communications.").

**D. <u>Plaintiffs' CIPA Section 631(a) Claim Should be Dismissed.</u>**

***1. Plaintiffs Cannot Establish a Predicate CIPA Violation.***

Plaintiffs' arguments that their allegations satisfy the "contents" and "in transit" elements of the second clause of Section 631(a) are without merit.[4]

*First*, for the very reasons Plaintiffs fail to allege sufficient facts showing the contents of their communications were intercepted or disclosed in violation of the Wiretap Act (*see* § II.B.2), they similarly fail to satisfy the "contents" requirement under CIPA.

*Second*, courts in the Ninth Circuit routinely find allegations like Plaintiffs' insufficient to plausibly allege a communication was intercepted "in transit." For example, *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751 (N.D. Cal. May 24, 2023) held allegations that website source code "allows the [third party] to secretly intercept in real time, eavesdrop upon and store transcripts of Defendant's chat communications" insufficient to allege real time interception. *Id.* at 758; *see also Garcia v. Build.com, Inc. et al.*, 2023 WL 4535531 (S.D. Cal. July 13, 2023) ("This claim fails because the Complaint does not plausibly allege the existence of a third-party eavesdropper."); *but see Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 979 (C.D. Cal. 2023) (finding allegations that provided factual detail regarding how real time interception occurred from the third party that embedded code into defendant's website and provided "[r]eal-time insights" and

[4] Plaintiffs fail to address Capital Group's argument that they cannot assert a predicate violation of Clause One because it does not apply to internet connections—only telephones and telegraphs. (*See* Opp. at 16–18.)



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

[d]ata from every use event *collected as it happens*" were sufficient to plausibly allege real time interception) (emph. in original).

Here, Plaintiffs allege nothing more than the GA Cookie "immediately intercepts a user's interaction with the webpage every time the user visits it." (FAC ¶ 55.) This allegation, just like those in *Keurig Green Mountain*, "does little more than restate the pleading requirement of real time interception." *Keurig Green Mountain*, 674 F. Supp. 3d at 758. Because Plaintiffs fail to sufficiently allege an underlying violation of § 631(a) as to the alleged third-party eavesdropper (Google), Plaintiffs' derivative aiding and abetting claim against Capital Group fails. Accordingly, Plaintiffs' CIPA § 631(a) claim should be dismissed with prejudice.

### ***2. Plaintiffs' "Aiding And Abetting" Claim Otherwise Fails.***

Plaintiffs argue their allegations the GA Cookie "improve[s] Google's own ad targeting capabilities" are sufficient to show the third-party vendor acted independently as opposed to as "an extension of the company." *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023). But similar allegations are routinely found to be conclusory. *See, e.g.*, *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1017 (C.D. Cal. 2023) ("In addition to storing the data for some later unspecified use of its own, Plaintiff alleges that Genesys 'shares the data it collects and stores with Taro.' . . . Many of these allegations are conclusory and do not allow for the inference that Genesys has the capability to use, as opposed to store, data for its own business model.").[5]

[5] Plaintiffs' conclusory statement does not satisfy the requirement under *Taro Pharms* that there must be some non-conclusory factual allegations showing the third-party software company functions less like a tape recorder and more like "an independent entity capable of using the recorded information for some other means." 709 F. Supp. 3d at 1017; *see also Yockey v. Salesforce*, *Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (Finding Plaintiffs' pleadings insufficient to allege Salesforce was capable of using communications for any purpose other than furnishing them to its customer when Plaintiffs alleged that chat communications are "routed through a Salesforce server," Salesforce "directly receives the electronic communications of visitors" and "analyzes the customer-support agent interactions in real time to create live transcripts of communications" and "supervisors can view transcripts in real time.")



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Likewise, Plaintiffs' vague assertion Google could use data for targeted marketing is insufficient to establish Google as a third-party eavesdropper. Accordingly, Plaintiffs' derivative CIPA claim fails and should be dismissed.

### E. Plaintiffs' CIPA Section 632 Claim Fails.

Plaintiffs' Opposition cites *Brown v. Google, LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023), in an attempt to argue around California's presumption against online confidentiality. (Opp. at 19:17–19.) *Brown* is not only distinguishable but ironically highlights the presumption Plaintiffs seek to avoid. In *Brown*, the plaintiff alleged that "[g]iven Google's portrayal of Incognito mode and its failure to explicitly notify users it would be among the third parties recording their communications with other websites, plaintiffs could have had a reasonable expectation of privacy over their private browsing." *Id.* at 939. Here, by contrast, the limited record information allegedly communicated to the Website by Plaintiffs is not confidential, even if the scope of confidentiality was based on applicable law, such as the definition of contents under the ECPA. *See, e.g.*, *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) (holding that a user's Facebook ID and address of the webpage from which the user's HTTP request to view another webpage was sent were not contents as defined by the ECPA).

### F. Plaintiffs Have Not Alleged an Invasion of Privacy Claim

Plaintiffs have not shown they have a reasonable expectation of privacy or that Defendant's alleged actions were highly offensive.

*First*, Plaintiffs cite to generic, hypothetical allegations regarding what information may be transmitted via the GA Cookie—not to any allegations regarding their own specific information. (Opp. at 20 (quoting FAC ¶ 71).) Thus, to the extent their assertions of a reasonable expectation of privacy in any "nonpublic personal information" are reliant on GLBA and CalFIPA, these assertions fail.

*Second*, Plaintiffs' argument that the collection of their information by Defendant constituted a highly offensive intrusion is unpersuasive. The cases cited

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

by Plaintiffs are distinguishable because they allege detailed and significant collection of personal information by defendants. *See, e.g.*, *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) (finding collection of "exceptionally vast array of information about [consumers'] digital identities and viewing histories" coupled with collection of information despite consumers' opting out was sufficient to allege a pattern of "highly offensive" conduct); *Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274, 1279 (9th Cir. 2024) (alleging collection of "keystrokes" and "mouse clicks" including "entry of PII").

By contrast, in *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024), also cited by Plaintiffs, the court dismissed claims for invasion of privacy and intrusion upon seclusion, finding plaintiff's allegations that defendant's software "allegedly captured, among other things, Plaintiff's 'personal details' and 'browsing history,' . . . and IP address . . . [was] insufficient to demonstrate that Defendant's conduct constituted a serious invasion of a protected privacy interest." Likewise, in *Shah v. Capital One Financial Corp.*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025), the court found the alleged disclosure of plaintiff's employment information, bank account information, and eligibility for preapproval or approval of a credit card "does not rise to the level of an 'egregious breach of social norms.'" *Id.* at 1047 (dismissing California Constitutional invasion of privacy claim).

Lastly, Plaintiffs' argument regarding their claim for monetary damages under Article I, Section 1 of the California Constitution (Opp. at 22–23), is without merit. In *Katzberg v. Regents of Univ. of California*, 29 Cal. 4th 300, 313 n.13 (2002), the California Supreme Court noted it had "no occasion to consider in the present case the circumstances under which the privacy clause of the state Constitution may support a cause of action for damages." Indeed, California courts routinely hold that monetary damages are ***not*** available under Article I, Section 1 of the California Constitution. *See, e.g.*, *Clausing v. S.F. Unified Sch. Dist.*, 221 Cal. App. 3d 1224 (1990). Courts within the Ninth Circuit agree. *See, e.g.*, *Novel v. Los Angeles Cnty.*

*Sheriff's Dep't*, 2019 WL 7940676, at *6-7 (C.D. Cal. July 23, 2019) (dismissing constitutional privacy claim to the extent it improperly seeks monetary damages); *Hill v. Workday, Inc.*, 2024 WL 3012802, at *15-16 (N.D. Cal. June 14, 2024) (dismissing constitutional privacy claim for improperly seeing monetary damages rather than injunctive relief); *Moore v. Rodriguez*, 2021 WL 2222590, (S.D. Cal. June 2, 2021) ("California's 'constitutional provision protecting the right of privacy . . . supports a cause of action for an injunction' but it does not confer on a litigant a private right of action for damages."). Accordingly, Plaintiffs' constitutional privacy claim should be dismissed.

**G. Plaintiffs' Class Allegations Should Be Stricken.**

Plaintiffs appear to acknowledge that if their Federal Wiretap Act claim is dismissed, their nationwide class definition should be stricken (or dismissed). (Opp. at 23.) Because this claim should be dismissed, as discussed at length in Defendant's Motion and this Reply, the nationwide class definition should likewise be stricken. Moreover, Plaintiffs' argument that the discovery rule permits an undefined class period (Opp. at 23–24), is unavailing. Even if the Court were to determine the discovery rule extends CIPA's one-year statute of limitations (it should not), Plaintiffs have not adequately invoked the discovery rule here. *See, e.g.*, *Krantz v. Old Copper Co., Inc.*, 794 F. Supp. 3d 724, at 737-38 (C.D. Cal. 2025) (finding plaintiffs failed to "specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence" as is necessary to invoke the discovery rule); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 903 (N.D. Cal. 2023) (dismissing plaintiff's CIPA claim for failure to plead sufficient facts to invoke the delayed discovery rule).

**H. Plaintiffs Cannot Be Awarded Punitive Damages.**

Sidestepping Defendant's argument that CIPA does not explicitly authorize punitive damages (Mot. at 21–22), Plaintiffs focus instead on the pleading standard for their punitive damages claim. (Opp. at 24–25.) But Plaintiffs' citation to *Clark*



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016 (S.D. Cal. 2000), is unavailing. As Plaintiffs (and numerous courts) acknowledge, *Clark* was decided prior to the Supreme Court rulings in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic v. Twombly,* 550 U.S. 544 (2007). (*See* Opp. at 24–25.) Following *Iqbal* and *Twombly*, another district court in this Circuit determined the heightened pleading standard espoused in those cases applied to claims for punitive damages and rejected plaintiff's punitive damages claim for relying on conclusory allegations. *Kelley v. Corrs. Corp. of Am.*, 750 F. Supp. 2d 1132, 1147 (E. D. Cal. 2010). While district courts in California have been split on which pleading standard plaintiffs must meet to sufficiently state a claim for punitive damages, the majority, and correct view, is that the pleading standard set forth in *Iqbal* and *Twombly* applies. *See, e.g.*, *Omni King, Inc. v. Accelerant Speciality Ins. Co.*, 2023 WL 6881824, at *3 (C.D. Cal. Apr. 19, 2023) ("After reviewing the relevant case law, this Court joins what appears to be the majority view, that the pleading standard set forth in *Iqbal* and *Twombly* applies to Omni King's claim for punitive damages."); *Grimberg v. United Airlines, Inc.*, 2023 WL 2628708, at *3 (C.D. Cal. Jan. 10, 2023) ("[T]he Court agrees with what appears to be the majority of courts that allegations supporting a claim of punitive damages must be alleged with sufficient specificity to satisfy the *Iqbal*/*Twombly* standards, as there simply is no principled reason to depart with Supreme Court precedent on the issue."); *Doe 1 v. United Airlines, Inc.*, 2021 WL 4595766, at *6 (C.D. Cal. Apr. 22, 2021) ("The Court agrees that the pleading requirements set forth in *Twombly* and *Iqbal* apply to Plaintiffs' claim for punitive damages.").

Here too the Court should apply the *Iqbal* and *Twombly* standards and find Plaintiffs' allegations are insufficient to support a claim for punitive damages.

## III. CONCLUSION

For the foregoing reasons, Capital Group respectfully requests the Court dismiss Plaintiffs' FAC in its entirety with prejudice.

Dated: February 13, 2025

**BAKER & HOSTETLER LLP**

By: */s/ Kamran B. Ahmadian*

David H. Stern
Alex E. Spjute
Kamran B. Ahmadian

*Attorneys for Defendant*
THE CAPITAL GROUP COMPANIES, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES